```
 1                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
 2                       WESTERN DIVISION

 3   UNITED STATES OF AMERICA, -
                              -   Case No. 3:03CR739
 4        Plaintiff,         -   Toledo, Ohio
                              -   September 15, 2004
 5      -vs-                  -
                              -
 6   JAMES W. WHEELER, et al., -
                              -
 7        Defendants.        -
     - - - - - - - - - - - - - - - - - -

 8

 9                    TRANSCRIPT OF HEARING
                 BEFORE JUDGE DAVID A. KATZ
10

11   APPEARANCES:

12   For the Government:
                         JOSEPH R. WILSON, Esq.
13                       AVA M. ROTELL-DUSTIN, Esq.
                         Asst. U.S. Attorneys
14                       Four Seagate, Third Floor
                         Toledo, OH  43604
15                       (419) 259-6376

16   For Defendant James L. Wheeler:

17                       JEFFREY J. HELMICK, Esq.
                         1119 Adams Street, 2nd Floor
18                       Toledo, OH  43624-1508
                         (419) 243-3800
19
                         DAVID L.  DOUGHTEN
20                       4403 St. Clair Avenue
                         Cleveland, OH 44103-1125
21                       (216) 361-1112

22
     Court Reporter: Tracy L. Spore, CRR, RMR
23                       1716 Spielbusch Avenue
                         Toledo, Ohio 43624
24                       (419) 243-3607

25   Proceedings recorded by mechanical stenography.
     Transcript produced by computer-aided transcription.
```

14:12:30  1              (Commenced at 2:12 p.m.)

14:12:32  2              THE COURT:  As you know, I've asked you to

14:12:34  3      appear today to make my job easier for once by

14:12:38  4      articulating some of the issues which I keyed in on.  I

14:12:50  5      can see already by a reading of the last memoranda that

14:12:56  6      one of those has already been resolved as between the

14:13:00  7      parties, and that is that there's a single enterprise.

14:13:06  8      And the issue, it seems to me -- let me restate that; a

14:13:12  9      significant issue then, it seems to me, is:  Does a

14:13:22  10     single enterprise create the possibility of multiple

14:13:32  11     conspiracies, and is it the issue of multiple

14:13:40  12     conspiracies, or is it a single conspiracy, or single

14:13:48  13     conspiracies in areas of violation, RICO, RICO

14:13:54  14     conspiracy, narcotics, guns, comprise the multiple acts

14:14:06  15     of various actors who are a part of the conspiracy?

14:14:12  16              Now, I know that's not very artfully

14:14:16  17     articulated, but the brilliance of those in attendance

14:14:24  18     should quickly germinate some responses.  How much time

14:14:34  19     do you need, both sides -- each side?

14:14:36  20              MR. DOUGHTEN:  Your Honor, I'm sure the

14:14:38  21     Court doesn't want us to regurgitate what we already

14:14:40  22     provided the Court.  Additionally, any points we want

14:14:44  23     to make, minutes.  I don't think it's a lot.  I think

14:14:48  24     we're down to --

14:14:48  25              THE COURT:  Each of you can have a half

14:14:50   1   hour.

14:14:52   2                   MR. DOUGHTEN:  That would be plenty.

14:14:54   3                   THE COURT:  Since you are the movant --

14:15:02   4                   MR. DOUGHTEN:  Sure.  A couple points we

14:15:04   5   want to make.  The Court's aware of the issues in the

14:15:08   6   indictment.  The government dismissed Count 3, which was

14:15:12   7   a drug conspiracy; however, racketeering act 17

14:15:14   8   essentially had the exact same language, in addition to

14:15:18   9   racketeering act 7.  That's what we're talking about

14:15:20   10  today.  One of the things on whether this is separate

14:15:24   11  agreements or separate conspiracies within the RICO,

14:15:26   12  which would have it avoid the jeopardy problem, I'd like

14:15:32   13  to note for the record that clearly no one has treated

14:15:36   14  it as a separate conspiracy.  I notice in the PSI the

14:15:42   15  drug amounts are aggregated as if they were one act, one

14:15:46   16  conspiracy.  So that clearly if there were separate and

14:15:50   17  distinct conspiracies within the RICO, I guess, only the

14:15:56   18  amounts that could be attributed to that separate and

14:16:02   19  distinct conspiracy could aggregate.  Clearly the

14:16:06   20  government is going to -- I and I don't know, because I

14:16:08   21  haven't spoken to them about this, but if the government

14:16:12   22  is arguing for each defendant that they're responsible

14:16:14   23  for the total amount of drugs that each member of the

14:16:20   24  enterprise or all the enterprise accounted for, clearly

14:16:26   25  they're treating this as if there's one conspiracy, and

14:16:30 1    they have the same purpose, and that is to sell drugs.

14:16:34 2          The case that I want to address, we came up

14:16:36 3    with an additional case, Judge, for the record the case

14:16:40 4    is United States versus Montel Humphrey; the cite is 287

14:16:48 5    F.3d 422.   This is a Sixth Circuit case decided in

14:16:52 6    2002.   And I think it has one of the better

14:16:56 7    definitions.   This is not a RICO case.   In Humphrey

14:16:58 8    the government argued that if charged for distinct

14:17:04 9    conspiracies -- Judge, you can turn to page 13.

14:17:08 10         THE COURT:  Judge Moore had to write this

14:17:12 11   opinion.

14:17:14 12         MR. DOUGHTEN:  Page 13.   This case is not

14:17:16 13   generated as part of the case.

14:17:18 14         The government tried to argue that there

14:17:18 15   were distinct conspiracies in that case.   And I think

14:17:22 16   what's important about that is the Sixth Circuit cited

14:17:24 17   other cases, which I won't cite here, stating that the

14:17:38 18   key to establishing whether distinct subagreements are

14:17:42 19   to encompass within a single conspiracy, it is to

14:17:46 20   determine whether the different subgroups are acting in

14:17:48 21   furtherance of one overarching point.

14:17:52 22         What struck me about this language is the

14:17:56 23   whole purpose of an enterprise, and its mention in the

14:18:00 24   indictments in both the Tampa case and the Toledo case,

14:18:04 25   is the purpose, and the means and method to accomplish

14:18:08   1    the purpose.    And clearly the purpose in both

14:18:12   2    indictments is the overarching plan.    The enterprise

14:18:16   3    is, in fact, the overarching plan.    So that what

14:18:20   4    Humphrey indicates is that the government can't make out

14:18:26   5    separate charges and separate counts because in this

14:18:28   6    case the government tried to distinguish -- and I

14:18:32   7    haven't seen these terms before -- between a hub

14:18:34   8    conspiracy and a chain conspiracy.    And basically the

14:18:38   9    Sixth Circuit indicated that you can't do that.    If you

14:18:40  10    can show that there's one overarching plan, then, in

14:18:44  11    fact, there is one conspiracy.    That emerged in that

14:18:50  12    particular case.

14:18:50  13            THE COURT:  Let me interrupt for just a

14:18:52  14    minute.   When I have a question, I don't like to

14:18:56  15    interrupt.   I'll just hold up my hand, and when you

14:19:00  16    come to a normal natural stopping place, stop, and I'll

14:19:06  17    ask you the question.

14:19:08  18            MR. DOUGHTEN:   Okay.  I'm at a normal

14:19:14  19    stopping place right now.

14:19:16  20            THE COURT:  I didn't read this case, which

14:19:20  21    was written by Judge Cole, but it seems to me that what

14:19:28  22    is being said -- who else was on this panel?

14:19:48  23            What I was struck with, not the hub type of

14:19:52  24    thing; I articulated it differently.   What has the

14:20:00  25    defendant been charged with?   The defendant has been

14:20:06  1    charged with a conspiracy.   It is the conspiracy which

14:20:12  2    is the violation.   And the evidence of violation are

14:20:16  3    multiple acts by various co-conspirators.   Now, I

14:20:22  4    believe what you are saying, and maybe what this case is

14:20:28  5    saying that you are citing to, is that you can't say,

14:20:34  6    all right, we're going to take these acts and these

14:20:40  7    co-conspirators and use them in Tampa for the single

14:20:48  8    defendant, Mr. Wheeler.   And we'll take these

14:20:52  9    co-conspirators, and some but mostly different acts, and

14:21:00  10   convict him of the same conspiracy.   Is that basically

14:21:04  11   what you're saying?

14:21:06  12            MR. DOUGHTEN:   If it wasn't, it is now.

14:21:10  13   Yes.   One of the points about that is that if the

14:21:16  14   government would be allowed to do this, the whole

14:21:18  15   purpose of double jeopardy is to not put Mr. Wheeler and

14:21:22  16   people like him through the same trial essentially, same

14:21:28  17   witnesses, indefinitely.   If the government's position

14:21:30  18   is correct, Judge, they could have limited the

14:21:34  19   racketeering acts to the northeast -- this district, the

14:21:38  20   Northern District of Ohio.   They can try him again in

14:21:42  21   Indianapolis with separate actions, arguably again in

14:21:46  22   Milwaukee.   There would be no stop to the number of

14:21:50  23   trials that they could put Mr. Wheeler through.   It

14:21:54  24   would be totally based on discretion of which overt acts

14:21:58  25   the government left within the indictment.   Because you

14:22:00  1    could always fashion an indictment to cover the 1980s,

14:22:06  2    late 1980s, early 1900s.

14:22:10  3                THE COURT:  Well, he's not that old.

14:22:14  4                MR. DOUGHTEN:  1990s.   I'm sorry.  1990s.

14:22:18  5                In what the government is terming as

14:22:22  6    separate and distinct conspiracies, you could have the

14:22:24  7    same enterprise, and clearly there are acts within each

14:22:28  8    conspiracy by the conspirators, and there would be no

14:22:32  9    limit to the number of RICO actions which could be taken

14:22:34  10   on the same defendants, not just Mr. Wheeler, but any of

14:22:38  11   them.   Again, I think double jeopardy is designed to

14:22:40  12   stop that.   That is where the one plan, the one

14:22:44  13   overarching plan comes in, because that is the

14:22:46  14   enterprise.   That's the purpose of the conspiracy.

14:22:50  15   We're talking about a RICO conspiracy.   And always in

14:22:52  16   any RICO there is going to be separate and distinct acts

14:22:56  17   by separate and distinct members of the enterprise.

14:22:58  18   That's the purpose for the statute.   Again, I think

14:23:04  19   under Humphrey, in the cases cited by the Sixth Circuit,

14:23:10  20   that's the only protection Mr. Wheeler would have for,

14:23:12  21   again, being reindicted in another location.   And

14:23:16  22   arguably they could still do it because, as the Court is

14:23:20  23   aware, the number of witnesses who testified in Florida,

14:23:24  24   who testified here, if that's not a bar, there could be

14:23:26  25   another enterprise action taken in another location.

14:23:30 1 There was -- for instance, I know there was a lot of

14:23:34 2 argument that other acts were use in this case which

14:23:36 3 were admissible to show the purpose of the enterprise,

14:23:40 4 but what's to stop the government from charging with

14:23:42 5 another RICO and using the other acts that weren't part

14:23:44 6 of the racketeering acts here in another location?  And

14:23:48 7 again, the only protection that Mr. Wheeler and people

14:23:52 8 in his stead have is that, this purpose.  It's got to be

14:24:04 9 protected.

14:24:06 10          THE COURT:  What's really bothering me is if

14:24:08 11 we assume, as the government asserted, that there was a

14:24:16 12 single enterprise, and it was OMC, then is that the

14:24:26 13 position with which the government is stuck on counts 1

14:24:30 14 and 2, RICO; and Counts 3 and 4, narcotics and firearms

14:24:40 15 conspiracy?  Or are those subconspiracies within the

14:24:54 16 same enterprise?  It doesn't seem like that should be a

14:25:00 17 logical step or conclusion.

14:25:06 18          MR. DOUGHTEN:  My answer is obviously yes.

14:25:08 19 And let me clarify the position.  I think one of the

14:25:10 20 reasons that we addressed the means and methods of the

14:25:14 21 indictments, although understandably those are not

14:25:18 22 elements, but the reason they were addressed in the

14:25:20 23 briefs, and the reason why this was important is because

14:25:24 24 I think that they're almost identical.  And I think

14:25:28 25 that is the proof, if you will, that it's the same

14:25:34  1  enterprise with the same purpose.   The conspiracies,

14:25:36  2  whether singularly or independently, are all there to

14:25:42  3  fulfill the purpose of the enterprise.   That's --

14:25:46  4  again, that's the purpose of the RICO statute.   And so

14:25:48  5  to allow the government to use RICO, to gather in

14:25:54  6  everybody within the OMC as a group, and then allow them

14:26:02  7  to charge independently for the subconspiracies, seems

14:26:08  8  to fly in the face of the purpose of the double jeopardy

14:26:12  9  protections and the double jeopardy clause.

14:26:18  10         I'm sure the Court's aware the firearms

14:26:22  11  conspiracy is not relevant.

14:26:24  12         THE COURT:  Not in this case.

14:26:26  13         MR. DOUGHTEN:  But for purposes of the

14:26:28  14  double jeopardy.

14:26:28  15         THE COURT:  It's the argument I was looking

14:26:30  16  at.  Because my recollection is that Mr. Wheeler was

14:26:32  17  found not guilty.

14:26:36  18         MR. DOUGHTEN:  The firearms, yes.

14:26:36  19         THE COURT:  On Count 4?

14:26:38  20         MR. DOUGHTEN:  Correct.  Essentially, Your

14:26:44  21  Honor, that's the argument.  I think it's clear.

14:26:46  22  Again, I think just to sum it up again, the conspiracies

14:26:52  23  are the actions of the enterprise -- of the enterprise

14:26:56  24  member to fulfill the purpose of the enterprise.  The

14:27:00  25  means and methods of doing so are the actions which,

14:27:04  1  according to the government, if I'm reading it

14:27:08  2  correctly, are the actions which are the separate and

14:27:10  3  distinct conspiracy.

14:27:12  4          THE COURT:  Thank you.

14:27:14  5          MR. WILSON:  I think with all due respect

14:27:18  6  that thus far the analysis has gone somewhat astray in

14:27:22  7  this respect We are ignoring to a certain extent the

14:27:28  8  way in which the RICO statute works, and we are ignoring

14:27:34  9  to a certain extent the way in which Congress intended

14:27:36  10  the RICO statute to work.  We have to a certain extent

14:27:42  11  focused upon the conspiracy charge and the consent of

14:27:46  12  conspiracy, without fully identifying what RICO means

14:27:50  13  and what the RICO statute provides for.  And I think

14:27:54  14  that's fundamentally what is at issue here.  I believe

14:27:56  15  that the motion, of course, challenges all three counts,

14:28:00  16  Counts 1, substantive RICO; Count 2, RICO conspiracy;

14:28:04  17  and Count 3, the drug conspiracy.

14:28:06  18          Let me first look at the RICO charges, and

14:28:10  19  let's leave aside the drug conspiracy just for the sake

14:28:12  20  of argument at the moment.

14:28:14  21          With regard to RICO, the defense is

14:28:18  22  contending in essence that the identity of the

14:28:20  23  enterprise in effect pollutes both indictments in that

14:28:26  24  because the racketeering acts were committed by persons

14:28:32  25  to fulfill the objectives of the enterprise, that

therefore we must be talking about the same offense.    I think that's a fair reading of the argument that has been made here today.    That is a complete misunderstanding, however, of the enterprise context in RICO generally and specifically in this particular case. The enterprise in this particular case is a lawful organization, the Outlaw Motorcycle Club.    No contention has ever been made otherwise.    No statement by the government has ever suggested otherwise.

The racketeering acts, far from having the effect of perpetuating the enterprise, in some respects were counter to the lawful purposes of that enterprise which we presume is to be a motorcycle club and engage in otherwise lawful activities.    And this illustrates a very important point under RICO.  All the enterprise element does is establish the legal umbrella, if you will, that binds the various defendants together.    And that's the only purpose that it serves.    I would acknowledge we might be in an entirely different situation if we were talking about an enterprise where the sole purpose of that enterprise was illegal activity.    And, in fact, the Court has seen cases, we've cited cases, they've cited cases such as the Patriarch crime family, which exists allegedly for the sole reason of perpetrating violent acts.    It's

different here in that even though the government in

Florida and the government in Toledo sets forth the

enterprise as the Outlaws, it does not claim that the

Outlaws as a group do nothing but or have no identify

extrinsic from the legal aspect of it.  This is really

important when we look at what the cases have said with

regard to how we view double jeopardy because the cases

clearly state that even where the identity is the same,

even where the enterprise is the same in substance,

excessive RICO prosecutions, we look to the racketeering

acts to determine whether they, in fact, are the same.

And that makes perfectly good sense because there could

conceivably be RICO actions filed in multiple

jurisdictions across the country involving the Outlaws.

Under the reasoning that the defense has offered, would

those particular -- would all of those be considered one

prosecution subject to double jeopardy if, in fact,

there were common defendants in each of those in

different areas of the country, even if one -- a RICO

charged in California, let's say, alleged a specific

pattern of racketeering which was distinct from a

pattern of racketeering that was in New York?  There

seems to be no reason why that should be.  And indeed,

if you look at the legislative history that's cited in

one of the cases that the defense presents, United

14:31:42  1    States v. Dean, you see a pretty clear explanation of

14:31:46  2    exactly what RICO means.   And some of the legislative

14:31:50  3    history that they cite in that particular case is quite

14:31:54  4    illustrative of what the statute actually means.   In

14:32:00  5    that case the Court states, I'm quoting, "We still

14:32:06  6    perceive an unmistakable congressional purpose to allow

14:32:08  7    a separate unit of RICO prosecution for each distinct

14:32:12  8    pattern of racketeering activity."

14:32:16  9             The Court went on --

14:32:18  10            THE COURT:  Let me interrupt because maybe

14:32:20  11   you're going to do it.   Well, I understand that.   But

14:32:26  12   is the pattern conspiracy to commit one class of crimes,

14:32:36  13   conspiracy to commit the second class, et cetera?

14:32:40  14            MR. WILSON:  Now we get into the five step

14:32:42  15   test that the Courts have looked into.   I think that's

14:32:44  16   really the nub of it.   The defense argument, as I

14:32:48  17   understood it, continuously referred us back to the

14:32:52  18   enterprise, the similarities of the enterprise between

14:32:54  19   the Florida and Toledo indictments.   Our point is that

14:33:00  20   tells us nothing.   That doesn't advance the inquiry.

14:33:02  21   Instead we're left to look at the actual patterns of

14:33:06  22   racketeering activity.   Here the Courts are pretty

14:33:08  23   consistent with regard to how the Courts should look at

14:33:12  24   the patterns of racketeering activity at each

14:33:14  25   indictment.

14:33:16   1          And I would note that with regard to the
14:33:16   2   similarity of the enterprise, we have made the
14:33:20   3   distinction that the Outlaws in this case are a legal
14:33:22   4   entity.   That diminishes the importance of the
14:33:26   5   enterprise as being a limiter in some fashion in double
14:33:30   6   jeopardy, and in many other cases, including Dean, the
14:33:34   7   enterprise has been an illegal activity, and yet the
14:33:38   8   Courts have still permitted successive prosecutions
14:33:42   9   where it was shown that the patterns of racketeering
14:33:44  10   activity were, in fact, different.
14:33:48  11          So the Courts really make no distinction
14:33:50  12   between the legal or illegal enterprise.   It
14:33:52  13   strengthens our position that, in fact, it is a legal
14:33:56  14   enterprise.
14:34:00  15          THE COURT:  So are the Courts telling us,
14:34:02  16   other Courts, that OMC is a legal enterprise through
14:34:12  17   which illegal activity was used in violation of RICO,
14:34:18  18   and that the acts which are charged create the
14:34:32  19   separate -- the right of separate and successive
14:34:38  20   prosecutions?
14:34:38  21          MR. WILSON:  That is precisely what the
14:34:42  22   Courts are saying.   The Dean case is particularly
14:34:44  23   illustrative of that.   After reading it, after looking
14:34:48  24   at the defense brief, here you have a situation where
14:34:50  25   you have a county court and county judge, I believe, who

14:34:52  1  was taking bribes in connection with some events, I

14:34:56  2  can't recall exactly what they were.  We had successive

14:34:58  3  RICO prosecutions.   In the first prosecution we had two

14:35:04  4  or three bribes in a conviction under RICO.   The

14:35:08  5  successive prosecution was other bribes in a somewhat

14:35:12  6  related timeframe, again involving the same enterprise,

14:35:16  7  i.e. this judge using his county judgeship as a

14:35:18  8  racketeering activity.   So you had what amounts to and

14:35:24  9  what could arguably be called one common scheme,

14:35:28  10  certainly a common enterprise.   Yet when the Court

14:35:30  11  focused, as the law requires it to do, upon the

14:35:34  12  racketeering acts, the Court had no trouble finding that

14:35:38  13  this set of racketeering acts involved a different

14:35:42  14  crime, at least for double jeopardy purposes.  Because

14:35:46  15  of the fact, the Courts have long recognized that RICO

14:35:48  16  is a separate animal in that stage which always focuses

14:35:54  17  upon the racketeering acts and not the enterprise for

14:35:56  18  that precise purpose.   So we look to the criminality

14:36:00  19  that's set forth in the racketeering acts exclusively to

14:36:04  20  determine whether or not we have a double jeopardy

14:36:06  21  issue.   And on this point, the courts are unanimously

14:36:10  22  clear, I think, that the -- there must be a virtually

14:36:16  23  identical overlap with respect to the racketeering

14:36:20  24  activities.  If you reach that point, I think cases are

14:36:24  25  abundantly clear, we have to be dealing with essentially

| | |
|---|---|
| 14:36:30 | 1 |
| 14:36:34 | 2 |
| 14:36:38 | 3 |
| 14:36:42 | 4 |
| 14:36:44 | 5 |
| 14:36:48 | 6 |
| 14:36:52 | 7 |
| 14:36:56 | 8 |
| 14:37:00 | 9 |
| 14:37:06 | 10 |
| 14:37:12 | 11 |
| 14:37:16 | 12 |
| 14:37:20 | 13 |
| 14:37:20 | 14 |
| 14:37:22 | 15 |
| 14:37:28 | 16 |
| 14:37:36 | 17 |
| 14:37:40 | 18 |
| 14:37:48 | 19 |
| 14:37:52 | 20 |
| 14:37:54 | 21 |
| 14:38:00 | 22 |
| 14:38:04 | 23 |
| 14:38:06 | 24 |
| 14:38:08 | 25 |

the same racketeering acts in order for double jeopardy
to apply.   The fact that one particular enterprise
gives rise to multiple prosecutions means nothing.   In
fact, Congress intended it.   The only question is:  Has
the government taken the same bite at the apple by
charging the defendants with essentially the same
racketeering acts, and taken another bite at the apple?

THE COURT:  So if we approach it as <u>Dean</u>
did, as you've articulated <u>Dean</u> did, then double
jeopardy bars only successive RICO charges involving
both the same enterprise -- we have that here -- and the
same pattern of racketeering activity?

MR. WILSON:  That's correct.

THE COURT:  And then the determination of
what is the same pattern of racketeering activity you
leave to the Court, which means I have to determine
various factors which include, according to the First
Circuit, the nature, the time, the place, the people,
and the nature and scope of the activities involved in
each indictment.

And here is where Messrs. Doughten and
Helmick say it's basically the same, Judge.

MR. WILSON:  And that's why you have to look
carefully at the Florida indictment and the Toledo
indictments, because when you do that analysis, and of

14:38:12  1    course for double jeopardy purposes we focus upon the

14:38:14  2    charging instruments, and I think it's very clear that

14:38:18  3    that's what we look to.   If you look at what Mr.

14:38:20  4    Wheeler was charged with down in Florida and compare it

14:38:22  5    to what he was charged with up here, you find a

14:38:24  6    substantial dissimilarity.   But I believe that this

14:38:28  7    really does state the differences between the parties.

14:38:32  8    Their contention is if you look at the totality of the

14:38:34  9    circumstances, it is the same pattern of racketeering.

14:38:38  10   We believe very clearly when you look at the

14:38:40  11   racketeering activities, they are substantially

14:38:44  12   dissimilar.   And we've laid out in our brief our claim

14:38:46  13   of dissimilarity.   The vast majority of the indictment

14:38:50  14   down in Florida involved a series of bombings that took

14:38:54  15   place down there.   And originally Harry Bowman was

14:38:58  16   charged with those bombings.   Subsequently they charged

14:39:02  17   Mr. Wheeler.   And all of those particular events are

14:39:06  18   completely unrelated.

14:39:10  19          There is some similarity, we would grant,

14:39:14  20   between types of charges, but the underlying facts

14:39:18  21   supporting those charges are completely dissimilar.   We

14:39:20  22   have one drug conspiracy charge that was left in that

14:39:26  23   indictment; the other drug conspiracy charge was

14:39:28  24   dismissed.   That drug conspiracy charge involved a

14:39:32  25   relatively short period of time in 2002 wherein Mr.

14:39:38  1    Wheeler and Mr. Pellegrini allegedly were involved in a

14:39:40  2    drug trafficking conspiracy, Pellegrini being the

14:39:44  3    Detroit boss of the Outlaws.   Again, throughout

14:39:48  4    dissimilar, nothing that was ever brought up in the

14:39:50  5    course of this trial even, so that one clearly is a

14:39:54  6    matter which is dissimilar to this particular case.

14:39:56  7    There was an allegation of a drug conspiracy in earlier

14:40:00  8    years that remained in the RICO charge as one of the

14:40:04  9    racketeering activities.   There may very well be some

14:40:10  10   overlapping testimony.   But the Court will look at the

14:40:12  11   drug conspiracy charged in this case, it is abundantly

14:40:16  12   clear that Count 3, Racketeering Act 1A in this

14:40:20  13   indictment, focused upon the drug activities in the

14:40:24  14   Green Region, the Green Region only, whereas the Florida

14:40:28  15   indictment involved allegations, some of which are

14:40:32  16   specifically listed in that indictment, of drug

14:40:34  17   activities involving Mr. Wheeler in Florida.

14:40:36  18          So here you have our case for dissimilarity

14:40:42  19   is simply this:  Yes, there is overlap with respect both

14:40:50  20   to allegations and evidence pertaining to the

14:40:52  21   enterprise, but that tells us nothing because even if

14:40:56  22   the enterprises are the same, double jeopardy is not

14:41:00  23   necessarily violated.  We have to look to the

14:41:02  24   racketeering acts themselves.   If you focused on the

14:41:04  25   racketeering acts themselves, you see a complete

14:41:08  1   dissimilarity.  In Florida you see an indictment which

14:41:12  2   basically is based mostly upon the bombings, the

14:41:16  3   allegation that Mr. Wheeler hid Mr. Bowman during some

14:41:18  4   period of time, and obstruction of justice that related

14:41:22  5   to that, the Pellegrini situation up in Detroit, and

14:41:26  6   some drug conspiracy involving some acts down in Florida

14:41:28  7   during that time period.

14:41:30  8           If you look at the Toledo indictment, you

14:41:32  9   see a completely different conspiracy.

14:41:34  10          I think it's absolutely clear -- and again,

14:41:38  11  the Court has heard the evidence.  We do stick with the

14:41:40  12  charges in the indictment, but both the indictment and

14:41:42  13  trial testimony made it abundantly clear that our drug

14:41:46  14  conspiracy was the Green Region distribution.  Now,

14:41:50  15  true, it is true that some witnesses such as Ronnie

14:41:52  16  Talmadge, who testified both in Florida and here, talked

14:41:58  17  about the supply side of the drugs getting to Mr.

14:42:00  18  Wheeler.  But our testimony focused on distribution

14:42:02  19  activities in the Green Region.

14:42:06  20          And double jeopardy is not offended in this

14:42:08  21  situation precisely for the legislative history as set

14:42:12  22  out in Dean in that Congress clearly anticipated that

14:42:16  23  there can be multiple prosecutions involving the same

14:42:20  24  enterprise where it is shown that that enterprise

14:42:22  25  engages in different courses of conduct in different

14:42:26  1    places at different times.   And how could they draw an

14:42:32  2    organized crime statute that intended otherwise?   And

14:42:36  3    the very nature of the statute presumes that there would

14:42:40  4    be multiple prosecutions of large-scale criminal

14:42:44  5    enterprises wherein the allegation in the enterprise is

14:42:48  6    absolutely identical, because the allegation is that the

14:42:52  7    enterprise over various periods of time has engaged in

14:42:56  8    illegal conduct in different places involving different

14:42:58  9    people and involving different kinds of criminality.

14:43:04  10   That is the essence of our argument here.

14:43:06  11        The Florida indictment focuses on Florida

14:43:08  12   activities and its substantial effect.   The Toledo

14:43:12  13   indictment focuses on Toledo activities.   The overlap

14:43:16  14   that has been cited by the defense, one aspect of that

14:43:22  15   is the so-called Sons of Silence bombing.   In Florida,

14:43:26  16   because of the pattern of bombings that they had in

14:43:28  17   Florida, also chose to include an allegation that Frank

14:43:32  18   Wheeler was involved in the Sons of Silence bombing.

14:43:38  19   This indictment had the Sons of Silence bombing but did

14:43:40  20   not charge Frank Wheeler in it.   So how can he be said

14:43:44  21   on that racketeering act to have been put in jeopardy

14:43:48  22   again up here?   The allegation was against David Mays,

14:43:50  23   not Frank Wheeler.   There is no allegation in the

14:43:54  24   Toledo indictment which mirrors or repeats the Florida

14:44:02  25   racketeering acts, and as such they stand as independent

14:44:08   1   racketeering acts, and whatever slight overlap there is,

14:44:12   2   I think it is abundantly clear if the Court looks at

14:44:16   3   both indictments that they are substantially different

14:44:20   4   with regard to the racketeering acts.

14:44:20   5           And the Courts have not required there to be

14:44:24   6   total exclusion, one to the other.   There are cases in

14:44:26   7   which there is the overlap in terms of people, places,

14:44:30   8   and even time, and that sort of thing.   So it's not a

14:44:34   9   situation where there must be a complete divergence of

14:44:38  10   racketeering acts.   The question I think this Court

14:44:40  11   must determine and the sole question under double

14:44:42  12   jeopardy under Counts 1 and 2 is whether the Florida

14:44:50  13   racketeering acts are substantially the same as the

14:44:52  14   Toledo racketeering acts.   I think the conclusion is

14:44:56  15   that they are not.

14:44:56  16           THE COURT:  Thank you, Mr. Wilson.

14:44:58  17           Mr. Doughten.

14:44:58  18           MR. DOUGHTEN:  Part of the fear of these

14:45:00  19   arguments, it exposes my ignorance, and I'll confess of

14:45:04  20   ignorance now.   I did not know that Congress could

14:45:06  21   legislate out double jeopardy protections.   And I guess

14:45:10  22   the point is, I don't know how the intent of Congress

14:45:14  23   can somehow change the analysis of whether Mr. Wheeler

14:45:22  24   has twice faced jeopardy for the same charges.   The

14:45:24  25   intent of Congress was relevant to this particular

analysis.  The question here is:  Did he face the same charge twice, in essence?  And it's nice to hear Mr. Wilson talk about that the enterprise is a legal enterprise, which is not disputed; but clearly, again, that's why I think the wording of the indictments and the wording of the means and methods and purpose in both indictments is very important.  And let me indicate to the Court what I mean.  Under the means and methods, this is identical language in both indictments; it's indicated "to accomplish some of the purposes of the enterprise, the defendant and others known and unknown to the grand jury, among others, used the following means and methods," then went through a number of criminal acts.  Clearly the government is indicating that the purpose of the enterprise for the purpose of the indictment was to commit criminal activity, part of which was drug conspiracy.  And I think a factor which is small but shouldn't be overlooked is the Tampa indictment, in talking about the drug conspiracy, said, "In this district and elsewhere."  The indictment specifically noted "and elsewhere." It did not limit the activities of the enterprise members to Florida alone. It specifically said, "And elsewhere."  Now, what "and elsewhere" means to the grand jury, I don't know, but I am presuming because they had all this testimony of a

Canadian supply, it came out in both trials, Canadian supply, Milwaukee supplied to the enterprise, and Joliet supplied to the enterprise.  "And elsewhere" would include total activities of the OMC.  This is, again, particularly important when the overt acts were to fulfill the purpose of the enterprise, which clearly was being charged, the members were being charged as well with a pattern of corrupt activity.  So again, I don't think the intent matters; it's whether he faces the same charges.

Again, this is essentially the same time period.  The Toledo indictment charges from 1988, I think, through 2002; that encompasses the same period of time in Florida.  And I think it's important to note in Florida clearly I think the inference can be made that the prosecutor dismissed Count 3 because of fear of double jeopardy.  The whole reason Count 3 was dismissed is so it wouldn't cause double jeopardy problems in Toledo.  Ironically, Racketeering Act 17 was left in the Toledo indictment.  And the wording of racketeering act -- I'm sorry, was left in the Florida indictment -- is exactly the same.  Is exactly the same.  It's within the same time period.  The characters are the same.  Again, Mr. Wilson is correct in that the Courts universally are essentially the same; the disagreement

14:48:28  1  between the parties is the Court's analysis of was it

14:48:32  2  the same time period, the same actors, was it

14:48:36  3  essentially the same purpose?  In going through the test

14:48:38  4  we just have an honest disagreement as to whether those

14:48:42  5  tests are met or not.   And I think it's important,

14:48:44  6  there's a warning in one of the cases that we cited in

14:48:48  7  our memorandum in response, and I'm not -- it's United

14:48:54  8  States v. Ciancaglini.  In that case the Third Circuit

14:49:04  9  indicates in discussing RICO jeopardy what cannot be

14:49:08  10  permitted is a prosecutor purpose of tactically bringing

14:49:14  11  successive RICO prosecutions against one enterprise in

14:49:16  12  and around the same location and in the same timeframe.

14:49:20  13  So the question is:  What is the same location?  If

14:49:24  14  you're going to say city to city or district to

14:49:26  15  district, or are you're going to go by region?  What's

14:49:28  16  interesting in this case is the OMC is a regional

14:49:32  17  organization.   Well, an international organization.

14:49:38  18  So what is location?  I would submit to the Court when

14:49:40  19  you're talking about all the players being members of

14:49:42  20  the enterprise, that they're called forth as witnesses

14:49:46  21  for the same purposes in both regions, that they're

14:49:50  22  called forth to testify as to the means and methods.

14:49:54  23  Again, in this case I do think it's significant that

14:49:56  24  numerous times there was other act evidence which was

14:50:00  25  admittedly admissible because it went to the means and

14:50:04  1   methods and purposes of the enterprise.   It was

14:50:06  2   relevant for that purpose.   On that same analysis, each

14:50:10  3   act by an enterprise was for the same purpose.   Are

14:50:16  4   they distinct groups?   No, it's all part of the

14:50:20  5   enterprise.   Unfortunately, the United States Supreme

14:50:22  6   Court has not addressed this issue yet.   So we're kind

14:50:26  7   of left out here to be in part circuit opinions.

14:50:30  8            THE COURT:  Are you saying -- maybe I'm

14:50:32  9   misreading what you're saying, missing the analysis --

14:50:40  10  that multiple acts by members of the same enterprise or

14:50:46  11  conspiratorial group are merely the acts which give rise

14:50:58  12  to the violation as charged against the conspiracy?

14:51:04  13           MR. DOUGHTEN:  That's part of it.   The

14:51:08  14  other part of it clearly -- Mr. Wilson's right -- is

14:51:12  15  whether, in fact, it's the same acts.   I agree with

14:51:14  16  that.   And I think part of the determination of whether

14:51:18  17  it's the same act, albeit with a different charge,

14:51:22  18  whether it's the same activity and the same acts that

14:51:24  19  are being punished is -- and I think the Court can

14:51:28  20  consider the relevance of the purpose of the acts.

14:51:34  21           THE COURT:  Thank you.  I'd like, Mr.

14:51:34  22  Wilson, if you would comment please -- and this is

14:51:42  23  raised in defendant's briefs -- on the inclusion in the

14:51:50  24  Florida indictment of the recitation of the Florida, the

14:51:58  25  Green region, Oklahoma, et cetera, and in the beginning

14:52:06 1  of each of the charges, as referred to just now by Mr.

14:52:10 2  Doughten, the commission of these violations in the

14:52:16 3  "Middle District of Florida and elsewhere."  Does the

14:52:24 4  fact that, one, the Green Region was mentioned; and two,

14:52:32 5  "and elsewhere" is utilized, I guess how does that

14:52:38 6  impact our decision here?

14:52:42 7           MR. WILSON:  It shouldn't make any

14:52:44 8  difference at all.  If you want to analogize, let's say

14:52:48 9  a group of executives from General Motors using General

14:52:52 10 Motors as an enterprise perpetrating fraud scheme.  And

14:52:56 11 let's presume that one aspect of fraud occurs in San

14:53:00 12 Francisco; the other part occurs in New York.  We would

14:53:02 13 describe General Motors the same way; we would say

14:53:04 14 General Motors is a company which deals with and sells

14:53:08 15 cars in California, New York and elsewhere.

14:53:12 16          THE COURT:  So in other words, the precatory

14:53:18 17 language, if you will, at the beginning of the

14:53:20 18 indictment in both cases which recites the places in

14:53:24 19 which the enterprise operated, is just that, precatory;

14:53:30 20 and it's not until you get to the specific charges that

14:53:36 21 we look to the action?

14:53:40 22          MR. WILSON:  Another precise reason why the

14:53:42 23 cases universally say, you look at the racketeering acts

14:53:46 24 themselves.  The enterprise can be absolutely the same.

14:53:50 25 The language in this, the charging document, can be

14:53:54  1  absolutely the same.   The analogy I gave, they describe

14:53:56  2  General Motors the same way; they're called an

14:53:58  3  international company doing business here, there,

14:54:02  4  everywhere.   It would read exactly the same.   And our

14:54:06  5  only question then, getting back to the issue, would be:

14:54:08  6  Look at the racketeering acts and see if, in fact, they

14:54:10  7  are charging different events, the substance of the

14:54:14  8  racketeering events.

14:54:16  9        Again, not to belabor the point that we have

14:54:20  10 made, in Dean there is an undeniable similarity between

14:54:24  11 the patterns of activities under these two RICO counts;

14:54:28  12 however, the similarity alone does not mean all the acts

14:54:34  13 charged are part of a single act.   The mere fact is not

14:54:38  14 enough.   The real question is looking at the

14:54:40  15 racketeering acts in Florida versus Toledo, can the

14:54:42  16 Courts say that we are looking at the same acts?  And

14:54:48  17 all the Courts seem to imply that it's a substantial

14:54:54  18 recitation, both of being the same thing, not just some

14:54:56  19 similarity, not just overlap.   Is the Florida charge

14:55:02  20 essentially the same racketeering acts as in the Toledo

14:55:04  21 charge?  And then and only then does double jeopardy

14:55:08  22 preclude prosecution.

14:55:10  23        THE COURT:  I thank you gentlemen.  Did you

14:55:16  24 have something you wanted to add.

14:55:18  25        MR. DOUGHTEN:  One last response.   In

14:55:20  1   relation to, "And elsewhere."   Now we're interpreting

14:55:24  2   what the grand jury meant.

14:55:24  3            THE COURT:  I understand.

14:55:26  4            MR. DOUGHTEN:  The "and elsewhere," if we're

14:55:28  5   talking about location, which all courts have done that,

14:55:32  6   I think that's an important factor.   I think it's a

14:55:34  7   very important factor.   And when the grand jury

14:55:38  8   obviously considered the extent and breadth of the OMC,

14:55:42  9   it included all territories, including this district, in

14:55:48  10  their consideration of what the enterprise was, and

14:55:50  11  where their operation was, and what the purpose was, and

14:55:54  12  what acts were done to fulfill the purpose within those

14:55:56  13  locations.   I think that's very important language.   I

14:56:00  14  don't think we can dismiss it as surplusage.

14:56:08  15           THE COURT:  Gentlemen, I must tell you it is

14:56:10  16  always exhilarating to participate in, to listen to good

14:56:20  17  arguments which follow good briefs, and I appreciate

14:56:22  18  that.   I am going to be out the balance of the week,

14:56:28  19  until Friday of next week.   It ain't vacation, but I

14:56:38  20  will be at a district court meeting, and I will take

14:56:42  21  this material with me, together with a transcript of

14:56:44  22  your discussion, and try to reach, at least in my own

14:56:50  23  mind, a conclusion.   Clearly Mr. Wheeler will not be

14:56:56  24  sentenced or even scheduled for sentencing until this is

14:56:58  25  disposed of.

14:57:02  1          I would like now to focus on Mr. Wheeler's

14:57:06  2   letter of August 23, which I have held until today, and

14:57:14  3   which copies were directed to both defense counsel here

14:57:18  4   and Mr. Wilson.   Are you aware of this letter?  Do you

14:57:26  5   have a copy in front of you?

14:57:28  6          MR. DOUGHTEN:  Yes, we were both served with

14:57:30  7   the letter, Your Honor.

14:57:32  8          THE COURT:  Do you wish to address the

14:57:34  9   letter now or have Mr. Wheeler address it?   Now, he

14:57:44  10  denies that he is a trained lawyer, but it doesn't

14:57:52  11  appear to be so reflected in his letter.   Better than

14:57:56  12  average lawyer work.

14:58:08  13         I don't care about the first page.   I don't

14:58:12  14  care about the Brady violation at this juncture.   I

14:58:18  15  care about the third issue to request and discharge my

14:58:24  16  present counselor and have new counsel appointed to

14:58:28  17  represent my interests.   My present counsel should be

14:58:34  18  permitted to proceed with any motions, et cetera.

14:58:42  19         Unless there is a better reason than

14:58:46  20  articulated in this letter, I will not through

14:58:50  21  sentencing replace counsel which has served and served

14:58:56  22  well to this point, including trial and post-trial

14:59:02  23  motions.   And it will be up to the Court of Appeals to

14:59:10  24  appoint counsel for an appeal, which I presume will be

14:59:16  25  taken in these cases.   Is there a reason for appointing

14:59:28  1   new counsel prior to completion of sentencing?

14:59:56  2              (Discussion had off the record.)

14:59:56  3              MR. DOUGHTEN:  Your Honor, I think what Mr.

14:59:58  4   Wheeler wants is a third party to discuss, I think,

15:00:04  5   whether this is better to pursue 2255, or he just wants

15:00:10  6   to talk to somebody to get another opinion.

15:00:12  7              MR. HELMICK:  Somebody disinterested, I

15:00:16  8   think.  Mr. Wheeler has suggested, for example, Your

15:00:28  9   Honor, if there is someone that could be made available

15:00:32  10  from one of the federal public defender's offices, for

15:00:36  11  example, perhaps just to give him independent, general

15:00:38  12  independent consult with regard to where he is right now

15:00:42  13  in light of what's occurred.  In other words, he's

15:00:44  14  almost looking for advisory counsel.

15:00:46  15             THE COURT:  On whether or not he should

15:00:48  16  appeal or wait for a 2255?

15:00:50  17             MR. HELMICK:  I don't think there's any

15:00:52  18  question that if the Court doesn't grant his double

15:00:56  19  jeopardy motion in toto, that Mr. Wheeler will be

15:01:00  20  appealing.  I don't think there's any doubt about that,

15:01:04  21  that an appeal will be pursued.  But with regard to

15:01:06  22  other issues about performance of counsel, about

15:01:10  23  information or newly discovered evidence or other things

15:01:12  24  that may have come up that may be generally referred to

15:01:16  25  in that letter, Judge, I think you saw some of the

15:01:18    1    references that were in there.  I think his request is
15:01:22    2    more along that line, and that's consistent, Judge, with
15:01:24    3    where he goes on to say, Well, could we stay on
15:01:28    4    basically through motion practice and things in the case
15:01:30    5    and perhaps work with his new counsel.  I understand
15:01:34    6    the Court may not be willing to do that at this
15:01:38    7    juncture, but if somehow someone knowledgeable could be
15:01:40    8    made available to him to answer some questions in this
15:01:44    9    regard.  I think I'm correct in relating his request at
15:01:48   10    this point.
15:01:50   11            (Discussion had off the record between Mr.
15:01:52   12    Wheeler and Mr. Helmick.)
15:01:56   13            MR. HELMICK:   And the other kind of related
15:01:58   14    problem he's experiencing is with access to the law
15:02:02   15    library at Milan.  He has requested additional time.
15:02:06   16            THE COURT:  I would suggest -- I cannot
15:02:06   17    accept this as a motion under our court rules which
15:02:14   18    require all motions be filed by counsel of record.  My
15:02:20   19    suggestion is to file the motion.  I will tell you, I
15:02:28   20    cannot appoint another counsel.  I'm prohibited from
15:02:30   21    doing so by Circuit rule.  However, I will, once your
15:02:40   22    motion is filed, I'll take under consideration the issue
15:02:46   23    of the law library.  I don't know how that's to be
15:02:50   24    articulated, but I will fax a copy of it to the public
15:02:58   25    defender in Cleveland and ask him for input with respect

15:03:06  1    to the request.   That, I will do.

15:03:10  2                 MR. HELMICK:   Very good, Your Honor.

15:03:10  3                 THE COURT:  Anything further?

15:03:12  4                 MR. HELMICK:   Judge, I don't know if

15:03:14  5    there's -- I understand the problem with districts.   I

15:03:18  6    don't know if Detroit would be easier in terms of

15:03:20  7    proximity or if it's simply easier --

15:03:24  8                 THE COURT:  I don't think I can do that.   I

15:03:26  9    can't go out of district.

15:03:26  10                 MR. HELMICK:   All right.   I just thought

15:03:30  11   in light of the fact he's at Milan, Detroit's a whole

15:03:32  12   lot closer.

15:03:34  13                 THE COURT:  They may suggest it.   If they

15:03:34  14   work it between two districts, that's something else.

15:03:38  15   I agree with that.

15:03:38  16                 MR. HELMICK:   The only other matter is Mr.

15:03:42  17   Wheeler is experiencing some health problems that

15:03:44  18   requires some medication and testing.   I already

15:03:48  19   related to the Marshals our urgent request he be

15:03:52  20   returned to Milan as soon as possible.   He's obviously

15:03:56  21   not going to get it at the bullpen of the county jail.

15:03:58  22                 THE COURT:  Very good.   I would hope that

15:04:02  23   will be accomplished as soon as possible.   This week

15:04:06  24   hopefully.

15:04:14  25                 THE MARSHAL:   We'll see what we can do,

15:04:18   1   Judge.

15:04:18   2                  THE COURT:  Anything further?    Thanks

15:04:20   3   again.

15:04:28   4                  (Concluded at 3:04 p.m.)

           5                          -  -  -

           6

           7                  **C E R T I F I C A T E**

           8

           9      I certify that the foregoing is a correct transcript

          10   from the record of proceedings in the above-entitled

          11   matter.

          12

          13   /s Tracy L. Spore_____            _____

          14   Tracy L. Spore, RMR, CRR                 Date

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25