UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES L. "FRANK" WHEELER, | : | CASE NO.  3:03CR739 |
| | : | (3:10CV821) |
| Defendant/Petitioner, | : | |
| | : | JUDGE DAVID A. KATZ |
| v. | : | |
| | : | **GOVERNMENT'S RESPONSE IN** |
| UNITED STATES OF AMERICA, | : | **OPPOSITION TO MOTION FILED** |
| | : | <u>**UNDER 28 U.S.C. § 2255**</u> |
| Plaintiff/Respondent. | : | |

Introduction

Petitioner James L. "Frank' Wheeler, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, alleging he received ineffective assistance of counsel.

Statement of the Case

In 1997, the Federal Bureau of Investigation and state law enforcement agencies began an investigation into the Green region of the Outlaw Motorcycle Club ["OMC"], which consists of chapters in Dayton, Ohio; Fort Wayne, Indiana; Louisville, Kentucky; Indianapolis, Indiana; and Oklahoma City, Oklahoma. As a result of the investigation, a grand jury in the Northern District of Ohio returned a 40-count indictment in 2003 charging the defendants with various federal offenses, including Racketeer Influenced and Corrupt Organizations Act ["RICO"[, drug trafficking, and firearms offenses.

Defendant James L. "Frank" Wheeler was formerly the head of the Indianapolis chapter and Green region of the OMC. Wheeler later served as president of the entire international OMC organization. Wheeler was charged in Count 1 with racketeering (RICO), in violation of 18 U.S.C. § 1962(c); Count 2 with RICO conspiracy, in violation of 18 U.S.C. § 1962(d); Count 3 with drug trafficking conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and Count 4 with conspiracy to carry or use firearms in relation to drug trafficking or in crimes of violence, in violation of 18 U.S.C. § 924(o). On March 5, 2004, the government filed a 21 U.S.C. § 851(a) information for a sentencing enhancement based upon two prior felony drug convictions, pursuant to 21 U.S.C. § 841(b)(1)A). (R.916 Information).

Wheeler was found guilty on Counts 1, 2 and 3 (substantive RICO, RICO conspiracy, and conspiracy to possess with intent to distribute narcotics), with a Special Verdict as to the drug quantities of 5 kilograms or more of cocaine, and 100 kilograms but less than 1000 kilograms of marijuana, and a Special Verdict as to Racketeering Acts committed: 1A, 12, 13, 14, & 15. He was found not guilty of Count 4, the conspiracy to carry or use firearms during and in relation to drug trafficking or in crimes of violence. (R.1161 Verdict).

On January 5, 2005, Wheeler was sentenced to life imprisonment on the substantive RICO and drug conspiracy counts, to run concurrently, and to 20 years' imprisonment on the RICO conspiracy count, to run consecutively. He filed an appeal on January 14, 2005. (R.1699 Notice).

On appeal, Wheeler raised two issues on appeal: first, that his indictment for the substantive RICO, RICO conspiracy, and drug conspiracy offenses violated the Double Jeopardy Clause because of an earlier prosecution in Florida; and second that his sentence was improperly imposed for various reasons. The Sixth Circuit held: (1) Wheeler's subsequent prosecution in Ohio for substantive RICO

2

and RICO conspiracy offenses violated the Double Jeopardy Clause; (2) the successive indictment for the drug conspiracy did not constitute a double jeopardy violation; (3) the overlap between conspirators and time periods charged for each drug conspiracy did not constitute a double jeopardy violation as to the subsequent indictment; and (4) any Booker, Sixth Amendment, or reasonableness error in sentencing Wheeler was harmless.  Thus the appellate court reversed Wheeler's convictions and sentences for the substantive RICO and RICO conspiracy offenses, and affirmed Wheeler's conviction and sentence for the drug conspiracy.  United States v. Wheeler, 535 F.3d 446 (6th Cir. 2008).  The U.S. Supreme Court denied Wheeler's petition for a writ of certiorari on April 20, 2009.  Wheeler v. United States, 129 S.Ct. 2030, 173 L.Ed.2d 1117 (2009).

On April 20, 2010, Wheeler filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (See R.2123 § 2255 Motion, Criminal Case No. 3:03CR739; also docketed as R.1 § 2255 Motion, Civil Case No. 3:10CV821).  It was timely filed on the last day of the one-year statute of limitations.  In this motion, Wheeler raises three claims of ineffective assistance, relating to his claim that the Ohio drug trafficking conspiracy indictment violated the Double Jeopardy Clause because the conspiracy overlapped an earlier drug conspiracy indictment brought in Florida, and that the predicate felony convictions relied upon to enhance his sentence to life imprisonment were improperly applied.

Statement of the Law

**1.   § 2255 Claims, in General.**

To obtain relief under 28 U.S.C. § 2255 on the basis of a nonconstitutional error, a defendant must show a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.  Reed v. Farley, 512 U.S. 339, 353 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993).

Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors result in something akin to a denial of due process. Grant v. United States, 72 F.3d 503 (6th Cir. 1996).

To obtain relief on the basis of a constitutional error, the record must reflect an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); United States v. Ross, 40 F.3d 144, 146 (7th Cir. 1994).

Claims that could have been raised in a direct appeal, but were not, are barred from further review. These claims are reviewed only upon a showing of cause and prejudice for failing to raise them. United States v. Frady, 456 U.S. 152, 159 (1982); Ratliff v. United States, 999 F.2d 1023, 1025 (6th Cir. 1993). The failure to raise an issue at an earlier opportunity constitutes a waiver of the claim. United States v. Walsh, 733 F.2d 31, 34-35 (6th Cir. 1984).

In a petition for collateral review pursuant to § 2255 seeking to vacate a sentence, a prisoner must clear a significantly higher hurdle than would exist on direct appeal. McNeil v. United States, 72 F. Supp. 2d 801, 803 (N.D. Ohio 1999). The petitioner has the burden of sustaining his contentions by a preponderance of the evidence. Id. As stated by the Sixth Circuit, to prevail under § 2255, a petitioner ". . . must show a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990), citing, Hill v. United States, 368 U.S. 424, 428 (1968).

2. **Ineffective Assistance of Counsel Claims.**

Ineffective assistance of counsel claims are guided by the now familiar two-element test set

4

forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). First, a petitioner must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.  To establish deficient performance, a petitioner must demonstrate that the counsel's representation fell below an objective standard of reasonableness under prevailing professional norms by identifying acts that were "outside the wide range of professionally competent assistance." Id. at 688, 690.  Judicial scrutiny of counsel's performance must be highly deferential; indeed, the court must presume that the challenged action might be considered sound trial strategy.  Michel v. Louisiana, 350 U.S. 91, 101 (1955).  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

Second, a petitioner must show that counsel's deficient performance prejudiced the petitioner.  A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Id. at 687.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.  Therefore a petitioner must demonstrate that there exists a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. Id. at 694.  The focus should be whether counsel's errors have

5

undermined the reliability of and confidence in the result, *i.e.*, can one confidently say that the trial reached a fair and just result. Lockhart v. Fretwell, 506 U.S. 364 (1993).

Argument

Wheeler raises three claims of ineffective assistance of counsel. First, he contends that had his attorneys engaged in objectively reasonable efforts to demonstrate the causal connection between the Florida and Toledo prosecutions, his Count 3 drug conviction for Conspiracy to Possess With Intent to Distribute ["PWID"] would have been vacated on double jeopardy grounds, and he would have been spared a life sentence. Second, he argues that even if the Court accepts the validity of the Sixth Circuit's holding that jeopardy did not reach the Count 3 drug conspiracy, Wheeler was deprived of his right to fair trial because his attorneys failed to get the two RICO counts dismissed on double jeopardy grounds prior to trial. Therefore, because Wheeler was named in the two RICO counts and joined with similarly-charged codefendants in the first trial, rather than with non-RICO codefendants in the second trial, he claims he suffered prejudice. Third, he argues that his attorneys ineffectively consented to him receiving a mandatory life sentence based upon the Florida RICO conviction and two prior 1971 Indiana conviction as qualifying predicate offenses under 21 U.S.C. § 841(b)(1)(A), and the government's 21 U.S.C. § 851 enhancement information.

1. **Double Jeopardy and the Drug Trafficking Conspiracy.**

In his first claim, Wheeler states both his trial and appellate counsel were ineffective for failing to adequately present the factual basis to support his double jeopardy claim, that the Count 3 drug trafficking conspiracy charged in Ohio was drawn from the same interrelated facts as the conduct underlying his Florida prosecution. (R.2132 Memo in Support at 8-10). He contends that had counsel: (i) filed a more detailed motion to dismiss earlier, (ii) not allowed the Court to defer

6

ruling on the motion until after the jury returned a verdict, and (iii) pursued an interlocutory appeal before the Sixth Circuit, Count 3 would have been dismissed as successive prosecution, in violation of the Double Jeopardy Clause.

There was no overlap between the conspiracy to PWID charged in Ohio and the conspiracy to charged in Florida. The sole narcotics conspiracy count in the Florida indictment which went to verdict was Count 3, covering the time period January 2002 to the date of the Florida indictment (September 2002). This short-duration conspiracy involved Wheeler and Dennis Pelligrini, a.k.a, "TA," and is factually unrelated to the extensive "Green" region conspiracy set forth in Count 3 of the Toledo indictment. As such, there was no factual overlap between the two indictments, and double jeopardy does not bar prosecution of Wheeler for a factually different drug conspiracy in the Toledo indictment.

The Sixth Circuit agreed, finding Wheeler's successive indictment for drug conspiracy, did not constitute a double jeopardy violation. United States v. Wheeler, 535 F.3d 446, 456 (6th Cir. 2008). It applied the United States v. Sinito, 723 F.2d 1250, 1256 (6th Cir. 1983) "totality of the circumstances" test, and determined that although the conspiracies were charged under the same statute (21 U.S.C. § 846), and the statutory offense underlying each conspiracy charge was the same (21 U.S.C. § 841(a)), the factors nonetheless indicate that Wheeler was charged in Ohio for an agreement separate from the agreements charged in the Florida indictment.

> First, the time covered by both conspiracies differs significantly. The Florida indictment charged a conspiracy beginning in 2002, while the Ohio indictment charged conduct beginning in 1990 and carrying through the time of the indictment, April 2003. The Ohio indictment thus charged Wheeler with participation in a drug conspiracy that endured for a much longer period of time than the conspiracy charged in Count 3 of the Florida indictment. Second, the charged conspiracies involved different participants. For purposes of Count 3 of the Florida indictment, the government named as Wheeler's co-conspirators Dennis Pelligrini, Greg Driver, and

> Roy Eugene Edwards. In the Ohio indictment, the government alleged thirty-four co-conspirators in the drug conspiracy count, and only Driver was alleged to have participated in both conspiracies. With respect to the fourth and *most significant factor, the scope and nature of the conduct charged in each count is dissimilar*. Count 3 of the Florida indictment charges a limited drug conspiracy between Wheeler and two others that involved only cocaine. The Ohio conspiracy charges a wide-ranging conspiracy between Wheeler and thirty-four other persons, with almost 300 overt acts charged. Moreover, in addition to cocaine, the Ohio conspiracy involved the distribution of methamphetamine, LSD, marijuana, ecstasy, and valium. Regarding the fifth factor, each indictment charges conduct that occurred in different places. Count 3 of the Florida indictment involved conduct that occurred mainly in Florida and Michigan, while the Ohio indictment alleged conduct that generally occurred in Ohio, Kentucky, and Indiana (though a few of the overt acts listed allegedly occurred in Florida and Michigan as well). In combination, these factors indicate that Count 3 of the Florida indictment charged a conspiracy separate from the conspiracy charged in the Ohio indictment.

Wheeler, 535 F.3d at 456 (emphasis added). Petitioner argues that the Sixth Circuit's ultimate conclusion minimized the significance of the connection between the two cases, and the only reasonable explanation is that counsel failed to properly illustrate the connection between the two. However a second reasonable explanation exists – the two conspiracies were indeed separate and distinct. This short-duration conspiracy involved Wheeler and the "Black" region boss, Dennis Pelligrini, and not any of the codefendants or co-conspirators involved in the Toledo indictment. Even if trial counsel had submitted a more detailed analysis in Wheeler's motion to dismiss, the facts would not have changed, and therefore neither error or prejudice occurred.

Regarding the drug trafficking conspiracy charged in Count 4 of the Florida indictment, the government states this count was dismissed before the trial began and before jeopardy attached. The U.S. Supreme Court said, "In the case of a jury trial, jeopardy attaches when a jury is impaneled and sworn. In a non-jury trial, jeopardy attaches when the court begins to hear evidence. The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a

8

jury or a judge.'" Serfass v. United States, 420 U.S. 377, 388 (1975).

According to the docket in District Court Case No. 8:02-CR-362 for the Middle District of Florida, the government filed its motion to dismiss Count 4 on August 8, 2003. (R.89). The district court held a hearing on August 18, 2004, on the government's motion for leave to file dismissal, as well as motions to strike surplusage in the indictment and for an anonymous jury. (R.104). The docket is unclear at what point on August 18, 2003, the jury was sworn, but it states that Day 1 of the jury trial "resumed from jury selection 8/18/03." (R.105). Opening statements commenced on August 19, 2003. (R.2134 Wheeler's § 2255 Exhibit B: Florida Transcript). Logic dictates that motions to strike surplusage in the indictment, to dismiss Count 4 in its entirety, and to keep the jury anonymous, would have been heard and resolved *before* the jury was impaneled and sworn in. Moreover, anticipating the double jeopardy issue, Assistant U.S. Attorney Joseph R. Wilson was in contact with the AUSA prosecuting the Florida case, and it is AUSA Wilson's recollection that Florida's Count 4 alleging the larger drug trafficking conspiracy was indeed dismissed prior to trial. Based upon the above, the government asserts that the Florida conspiracy charged in Count 4 was dismissed prior to trial, and jeopardy never attached.

In any event, the Sixth Circuit made separate determinations whether the conspiracies charged in Florida's Count 3 and Count 4 were separate from the drug conspiracy charged in the Ohio indictment. It concluded that Count 4, although a closer call than Count 3, was also a separate conspiracy. Wheeler, 535 F.3d at 456-57. The opinion did not rule that jeopardy had attached, but only assumed so for the purpose of the Court's analysis.

> Count 4 of the Florida indictment was dismissed and thus not tried to verdict. Wheeler asserts, however, that Count 4 was not dismissed until after jeopardy attached. The record is not clear on this point and the government offers no response in its brief. We therefore assume for purposes of our analysis that jeopardy attached

9

to Count 4 prior to its dismissal.

<u>Id.</u> at 547, footnote 4.  With respect to Count 4, the Sixth Circuit held though there was some overlap between the co-conspirators allegedly involved in each conspiracy, the conduct that the government sought to punish in the Ohio indictment was of a scope and nature different from the conduct charged in the Florida indictment, and the Ohio conspiracy was of a longer duration and generally implicated different geographical locations.  "These factors indicate that the Ohio indictment charged Wheeler with an agreement separate from those alleged in the Florida indictment."  <u>Id.</u> at 457-58.

The government asserts that first, jeopardy never attached to Florida Count 4, and second, it was a separate conspiracy than that charged as Count 3 in the Ohio indictment.  For these reasons, defense counsel's assistance in Wheeler's motion to dismiss Ohio Count 3 for violating double jeopardy, was not so deficient as to fall below an objective standard of reasonableness under prevailing professional norms. Nor can Petitioner demonstrate that absent counsel's unprofessional errors, the results of the proceeding would have been different.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  <u>Strickland</u>, 466 U.S. at 691.  Wheeler is unable to demonstrate the two prongs, error and prejudice, required to sustain a claim of ineffective assistance of counsel.  Accordingly, this claim should be denied.

**2.** **<u>Fair Trial Not Denied Because of Joinder with RICO Defendants.</u>**

In his second claim, Wheeler contends he was denied a fair trial because he was improperly joined in the first trial of defendants whose charges included RICO and RICO conspiracy, rather than the second trial of defendants who were not named in the RICO counts.  He asserts he was

10

prejudiced because the RICO charges and evidence in support of the charges were presented to the jury. The Sixth Circuit later determined that Wheeler's prosecution in Ohio for substantive RICO and RICO conspiracy offenses (in contrast to the drug trafficking conspiracy) violated double jeopardy because Wheeler was indicted in Ohio for the same pattern of racketeering activity that he was previously indicted for in Florida. Wheeler contends that his trial counsel was ineffective because, if counsel had gotten the RICO charges dismissed for double jeopardy earlier, either in the district court or through an interlocutory appeal, he would never have been joined in the first trial, and no Ohio jury would had heard evidence or rendered a verdict on the RICO counts. Because of counsel's alleged ineffective assistance, Wheeler concludes he "suffered an absolutely inconceivable amount of prejudice." (R.2132 Memo in Support at 24).

In contrast, the government maintains that Wheeler suffered no prejudice. For example, in United States v. Tocco, 200 F.3d 401 (6th Cir. 2000), the defendant was convicted of RICO conspiracy and conspiracy to interfere with commerce by extortion in violation of Hobbs Act. He claimed on appeal that his trial should have been severed from that of his codefendants, and that the evidence unfairly prejudiced his case. Id. at 413. The Court stated, "We must presume that juries are capable of sorting out the evidence and considering the case of each defendant separately. The fact that the jurors in this case found Tocco *not guilty on ten counts and acquitted co-defendants on other counts* is some indication that the jury was able to sort out the issues and follow the court's instructions with respect to each defendant separately." Id. (internal citation omitted)(emphasis added).

Similarly, in United States v. Moreno, 933 F.2d 362 (6th Cir.), cert. denied, 502 U.S. 895 (1991), defendant Morris sought unsuccessfully to have his trial severed from his codefendants. On appeal he claimed that the "spillover effect" from the joint trial unfairly prejudiced him, denying him

11

a fair trial. The Court stated that in order to prevail on this theory, the defendant

> must show an inability by the jury to separate and to treat distinctively the evidence that is relevant to each particular defendant on trial. United States v. Gallo, 763 F.2d 1504, 1525-26 (6th Cir. 1985), cert. denied, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986). "[T]here is a presumption that the jury will be able to sort out the evidence applicable to each defendant and render its verdict accordingly." United States v. Horton, 847 F.2d 313, 317 (6th Cir. 1988).

Moreno, 933 F.2d at 370. The Court ruled that Morris failed to satisfy the burden of showing prejudice, because "[t]he jury's acquittal of Morris on Count 1 is a strong indication of its ability to separately evaluate each defendant's guilt with respect to each count of the indictment." Id. (internal citation omitted). Finally, in United States. v. Worthington, 145 F.3d 1335, 1998 WL 279379 (6th Cir. 1998) No. 96-1597, the Sixth Circuit affirmed the denial of Jones's motion for severance. It found no basis in the record to conclude that Jones was prejudiced at all, let alone sufficiently to merit severance of trial, because the district court and jury showed themselves quite able to sort through the evidence when they dismissed several charges against defendants, acquitted on others, and let one defendant go free altogether. Id. at *5-*6.

Applying the foregoing case law to Wheeler, it is apparent there was no "spillover effect" for his trial being joined with the RICO defendants. The jury was able to sort through the evidence as it applied to each defendant and each charge. For example, the jury acquitted Wheeler and four other codefendants on Count 4 (the firearms conspiracy), while returning guilty verdicts on that same count for Gary Hohn, Jason Fowler, and David Mays. In addition, the jury found Wheeler and others guilty on Count 3 (the drug trafficking conspiracy), but acquitted Patrick Puttick on that same count. Jack Lee was acquitted entirely. There is no evidence that, having heard evidence against Wheeler on the RICO counts, the jury was tainted and their ability to consider each count separately was compromised. The fact that the jury returned mixed verdicts clearly indicated that Wheeler did not

12

suffer from a "spillover effect."

Indeed, this Circuit has rejected similar arguments raised by Wheeler's codefendants. In Rex Deitz's appeal, he argued that regardless of whether the joinder of the narcotics and firearm conspiracies was proper initially, he was unfairly prejudiced by "retroactive misjoinder" and the resulting "spillover" of otherwise inadmissible evidence. Deitz asserted that the government used the firearms conspiracy count as its justification for introducing a plethora of testimony and exhibits regarding firearms which would not otherwise have been admissible in a drug conspiracy prosecution. United States v. Deitz, 577 F.3d 672, 693 (6th Cir. 2009). The Sixth Circuit rejected the claim, stating:

> "Retroactive misjoinder" occurs where "joinder was proper initially because of a conspiracy allegation, but where later developments, such as the district court's decision in [the] case months later to set aside [a defendant's] conspiracy conviction, appear to render the initial joinder improper." United States v. Warner, 690 F.2d 545, 553 (6th Cir. 1982). We have previously noted that "retroactive misjoinder" cases are governed by the same standards as are applied in any case of prejudicial joinder. Id. (citing Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960) (holding that the propriety of a joint trial is governed by the same standards as applied in any case in which prejudicial joinder is alleged)). Further, we have explained that "*[c]laims of prejudicial misjoinder only succeed when 'the defendant makes a showing of compelling prejudice' or 'the prosecutor acted in bad faith in bringing the initial conspiracy charge'*... The burden of showing prejudice is 'very heavy.' " Goldsby v. United States, 152 Fed.Appx. 431, 439 (6th Cir. 2005) (quoting Warner, 690 F.2d at 554) (holding that defendant failed to meet his burden of demonstrating prejudicial misjoinder where he "merely allege[d] that 'the jury could have easily lost its way ...'"). *Deitz's undeveloped argument that he was prejudiced by the admission of testimony about the Outlaws' use of firearms is insufficient to meet his heavy burden of demonstrating "compelling prejudice" where we found that there is sufficient evidence to sustain Deitz's conviction on the narcotics conspiracy count.* See United States v. Bowker, 372 F.3d 365, 385 (6th Cir. 2004) (holding that "non-specific assertions of prejudice are insufficient to warrant severance"). We therefore reject Deitz's misjoinder claims.

Id. at 693-94 (emphasis added). Wheeler now makes the same argument, but substitutes the RICO conspiracy rather than the firearm conspiracy as the source of the supposedly prejudicial evidence.

13

The Sixth Circuit also rejected codefendant Gregory Driver's similar argument. It held in the prosecution for the substantive RICO and RICO conspiracy violations, and the conspiracy to possess with intent to distribute narcotics, Driver failed to establish compelling, specific, and actual prejudice as a result of being tried with his codefendants, as required for a defendant to be entitled to severance of his case from that of codefendants. United States v. Driver, 535 F.3d 424, 427 (6th Cir. 2008). The Court found no showing that the jury was unable to heed the district court's instruction to consider separately the evidence against each defendant, and Driver failed to establish that a specific trial right was compromised as a result of the joint trial. The Court said, "Before deliberations, the district court specifically admonished the jury that it was their duty to consider separately the evidence against, and the guilt of, each defendant. Furthermore, a defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him. ... The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases." Id. (internal citations omitted).

Because Wheeler has presented no evidence of compelling, specific, and actual prejudice suffered as a result of his attorney's unsuccessful attempt to remove Wheeler from the RICO to the non-RICO trial, he fails to meet the Strickland two-prong test. Therefore this ineffective assistance of counsel claim should be denied.

### 3. **Life Sentence was Not Illegally Imposed as a Result of Ineffective Assistance.**

In his last claim, Wheeler states his counsel was ineffective for stipulating that his conviction for Conspiracy to PWID carried a mandatory minimum life sentence. (R.2312 Memo in Support at 26). He states that he did not qualify for a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) because the 21 U.S.C. § 851 information filed by the government was inadequate for three reasons.

First, Wheeler states his Florida RICO conviction cannot serve as a qualifying predicate because it was on direct appeal, and therefore not a "final" conviction in terms of § 841. Second, the Florida conviction was not listed in the government's information. Third, the two predicates listed in the § 851 motion were two counts (one for marijuana and one for LSD) from a single 1972 Indiana case. Indeed, this Court in reviewing Wheeler's PSR, paragraph 92, considered the two counts as only one predicate act. (R.1793 Sentencing Transcript at TR 15-16). In addition, Wheeler posits that the quantity of drugs attributed to him (5 kilograms) was based in part on the relevant conduct that was also part of the Florida charges, and therefore is barred by double jeopardy. Had his counsel successfully argued this issue, Wheeler believes that his mandatory minimum sentence would have been 120 months, and not life imprisonment. (R.2132 Memo in Support at 31-32).

In response to the latter issue of the 5 kilogram amount, counsel did raise this issue at sentencing. (R.1793 Sentencing Transcript at TR 16-17). The Court interrupted, stating: "I only used for sentencing the jury's finding of five kilograms or more of cocaine. I did not use any finding of quantity in the Florida case as relevant conduct, if you will." (R.1793 Sentencing Transcript at TR 16). When counsel repeated that the amount of drugs attributed to Wheeler for sentencing in Florida were also being attributed to him for a separate conviction in Toledo, the Court reiterated:

> I'm assured that is far from correct because the only attribution was the one found by the jury sitting in Toledo, Ohio in this federal court. And I am looking now, as I did earlier, at the special verdict drug quantities which were found by the jury as I previously placed on the record, five kilograms or more of cocaine, and 100 kilograms but less that 1,000 kilograms of marijuana. And it is my belief that the activities between Dayton, Fort Wayne, and Indianapolis alone justified that conclusion.

(Id. at TR 17). The government agrees that the Court did not consider any Florida quantities. (Id. at TR 18). The government also recalls trial testimony that "Rotten Ronnie" Talmadge delivered

15

perhaps ten times that amount of cocaine from the Illinois/Wisconsin area, wholly separate from Florida.  Clearly, counsel was not ineffective for challenging – unsuccessfully – that the 5 kilogram quantity of cocaine attributed to Wheeler in the Ohio case included Florida drugs.  Therefore this claim should be denied.

Next is the issue of the predicate convictions listed in the government's § 851 information notifying the defendant of its intention to seek the § 841(b)(1)(A) mandatory sentencing enhancement.  The government concedes that the two 1972 Indiana charges for possession of marijuana and possession of LSD, constituted a single predicate act.  This Court found thusly, when reviewing Wheeler's presentence report: "[Paragraph] 92 is only one predicate act, if you will.  And the other one, I believe is paragraph 103 [the Florida conviction]." (R.1793 Sentencing Transcript at TR 15).

The government also agrees that Wheeler's 2004 Florida conviction was not listed in the § 851 information, and therefore is not eligible to be counted as prior conviction for § 841(b)(1)(A) enhancement purposes.  At sentencing, the Court took notice of Wheeler's Florida conviction (Id. at TR 13, 15), and said, "because of the enhancements and notifications with regard to prior criminal activity were afforded to the defendant under Section 851 of Title 21, it would therefore appear that a sentencing of life is mandatory."  (Id. at TR 20; see also, TR 14).  However in its next sentence, the Court said that even if Wheeler were a Guideline of 36 and criminal history of two, it would sentence him to 262 months on Counts 1 and 3 to be served consecutively, and 20 years consecutively on Count 2 –  a total in excess of 63 years.  (Id.).

Despite its reference to the § 851 information leaving only a life sentence as a choice (Id. at TR 14), the Court did *not* impose Wheeler's sentence based upon the erroneous assumption that two qualifying predicate convictions triggered the § 841(b) mandatory life sentence.  Instead of applying

16

a statutory limits to determine Wheeler's sentence, the Court relied upon the Sentencing Guidelines and the 18 U.S.C. § 3553(a) factors. It stated:

> [I]t seems to me that *under the guidelines*, most of this *doesn't make any difference.* It would appear to me, for instance, even if Mr. Wheeler were a criminal history category 36 – or a 2, and an offense level of 36, that the maximum under there is 262 months under Counts 1 and 3. And if I followed that, I will tell you, *I would impose them consecutively.* That's 524 months, or 43 years plus.
> We then come to Count 2, which is 20 years consecutive.
> So whether it's a 37 plus four [for leadership role], and a mandatory 360 years to life as a criminal history category six, or a 36 with a criminal history of category two, *the sentence is going to be tantamount to life. I want to make that very clear.*

(R.1793 Sentencing Transcript at TR 12)(emphasis added). The Court then discussed the statutory minimum and maximum sentences. Based upon 5 or more kilograms of cocaine and 100 but less than 1,000 kilograms of marijuana, 21 U.S.C.§ 841(b)(1)(A) requires a sentence of a minimum of ten years, up to life. "At a maximum, *if* there are two or more prior convictions for felony drug offenses, the 1971 offense and the 2003 offense in Florida, ... a mandatory sentence of life imprisonment without release." (Id. at TR 13). Thus, the Court stated the minimum and maximum possible sentences.

The Court then determined that Wheeler's guideline range for a criminal offense level of 41 and criminal history category VI corresponded to a sentencing range of 360 months to life. (Id. at TR 20). Counsels for both parties and Wheeler himself addressed the Court. (Id. at TR 20-27). The Court next considered the 18 U.S.C. § 3553(a) factors, but could find no valid reason for a downward departure. (Id. at TR 28-30). Finally, the Court imposed a sentence of life imprisonment. (Id. at TR 29). The sentence is within Wheeler's Sentencing Guideline range of 360 month to life, albeit at the high end.

The government asserts Wheeler's life sentence was based upon the Sentencing Guidelines and the Court's consideration of the § 3553(a) sentencing factors, and not upon the § 841(b)(1)(A) mandatory

17

requirement of life imprisonment without release for a defendant having two or more prior felony drug convictions. In the alternative, the government states that Wheeler suffered no prejudice, because the Court made it clear that Wheeler's sentence would be tantamount to life imprisonment. Therefore, even if counsel had argued that there was only one prior conviction from Indiana, and the 2004 Florida conviction did not apply, and the record clearly reflected that the Court had disregarded the § 851 information, the result of Wheeler's sentencing would not have changed. This final claim of ineffective assistance (i.e., the alleged stipulation to a mandatory life sentence) would have not altered the sentence imposed. For this reason, Wheeler's third claim should be dismissed because he fails to satisfy the <u>Strickland</u> prong that he suffered prejudice as a result of a grievous error by counsel.

Conclusion

For all the above reasons, this Court should deny Petitioner James L. "Frank" Wheeler's Motion to Vacate Sentence filed pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

STEVEN M. DETTELBACH
UNITED STATES ATTORNEY

<u>/s/ Joseph R. Wilson</u>
Joseph R. Wilson
Assistant United States Attorney
Reg. No. 0028297
Four Seagate, Suite 308
Toledo, Ohio 43604
(419) 259-6376 - Phone
(419) 259-6360 - Fax
Joseph.Wilson@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on July  20th  , 2010, the foregoing Response in Opposition to Motion to Vacate Sentence under 28 U.S.C. § 2255 was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Andrew P. Hart
Assistant Federal Public Defender
617 Adams Street, 2nd Floor
Toledo, OH 43604
 Attorney for Petitioner James "Frank" Wheeler

             /s/ Joseph R. Wilson
             Joseph R. Wilson
             Assistant United States Attorney