```
 1                    UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF OHIO
 2                          WESTERN DIVISION

 3   UNITED STATES OF AMERICA,  -    Case No. 3:03-CR-739
                                -
 4        Plaintiff            -    Toledo, Ohio
                                -    December 20, 2004
 5   -vs-                       -    Sentencing
                                -
 6   JAMES W. WHEELER,          -
                                -
 7        Defendant.            -
     - - - - - - - - - - - - - - - - - - -

 8
                     TRANSCRIPT OF SENTENCING HEARING
 9                  BEFORE JUDGE DAVID A. KATZ

10
     APPEARANCES:
11
     For the Government:
12                        JOSEPH R. WILSON, Esq.
                          AVA M. ROTELL-DUSTIN, Esq.
13                        Asst. U.S. Attorneys
                          Four Seagate, Third Floor
14                        Toledo, OH  43604
                          (419) 259-6376
15
     For Defendant James L. Wheeler:
16
17                        JEFFREY J. HELMICK, Esq.
                          1119 Adams Street, 2nd Floor
                          Toledo, OH  43624-1508
18                        (419) 243-3800

19                        DAVID L. DOUGHTEN, Esq.
                          4402 St. Clair Avenue
20                        Cleveland, OH  44103-1125
                          (216) 361-1112
21
     Court Reporter:  Tracy L. Spore, CRR, RMR
22                    1716 Spielbusch Avenue
                      Toledo, Ohio 43624
23

24
            Proceedings recorded by mechanical stenography.
10:12:10 25 Transcript produced by computer-aided transcription.
```

<u>Exhibit A, p. 1</u>

| | | |
|---|---|---|
| 10:12:10 | 1 | (Commenced at 12:22 p.m.) |
| 12:22:38 | 2 | MR. WILSON:  The next matter is the |
| 12:22:40 | 3 | sentencing of Mr. James Wheeler pursuant to the trial |
| 12:22:44 | 4 | conviction last June.  The defendant was referred for a |
| 12:22:48 | 5 | presentence investigation.  They have prepared that |
| 12:22:50 | 6 | report.  The government has reviewed that report, finds |
| 12:22:52 | 7 | no inaccuracies either as to the factual content or the |
| 12:22:56 | 8 | guideline calculations.  We're prepared to proceed with |
| 12:22:58 | 9 | sentencing. |
| 12:23:00 | 10 | THE COURT:  Thank you.  I know that there |
| 12:23:06 | 11 | are several issues to be discussed by both the |
| 12:23:10 | 12 | government and addressed by the defendants on behalf of |
| 12:23:14 | 13 | Mr. Wheeler.  I think that there are three or four |
| 12:23:26 | 14 | issues at least.  I would like to suggest that |
| 12:23:32 | 15 | logically they be considered and discussed in the |
| 12:23:36 | 16 | following order:  First, the criminal history; second, |
| 12:23:42 | 17 | the implication of Section 841(b); third, role in the |
| 12:23:52 | 18 | offense; and fourth, Section 851 and the necessity or |
| 12:24:02 | 19 | the lack thereof with respect to prior convictions. |
| 12:24:10 | 20 | Any objection to handling these matters in |
| 12:24:12 | 21 | that fashion? |
| 12:24:14 | 22 | MR. WILSON:  No, Your Honor. |
| 12:24:16 | 23 | MR. DOUGHTEN:  No, Your Honor. |
| 12:24:18 | 24 | THE COURT:  I'd like the government first to |
| 12:24:18 | 25 | address the criminal history issues. |

Exhibit A, p. 2

| | | |
|---|---|---|
| 12:24:22 | 1 | MS. DUSTIN:  Yes, Your Honor.   In looking |
| 12:24:24 | 2 | at the report, as it sets forth, the defendant's |
| 12:24:28 | 3 | criminal history category, at paragraph 11, 111, on page |
| 12:24:36 | 4 | 26 of the report, the report states that the defendant |
| 12:24:40 | 5 | has a total criminal history points of three, and |
| 12:24:44 | 6 | therefore is a criminal history category 2.   The |
| 12:24:46 | 7 | government disagrees in certain respects with that |
| 12:24:50 | 8 | computation.   First, looking at paragraph 92, the |
| 12:24:54 | 9 | defendant was convicted of possession of marijuana and |
| 12:24:58 | 10 | possession of LSD in 1972 and was released from parole, |
| 12:25:02 | 11 | after serving a sentence, in 1975. |
| 12:25:08 | 12 | THE COURT:  Excuse me.   Do I have the same |
| 12:25:12 | 13 | report as you? |
| 12:25:16 | 14 | MS. DUSTIN:  I'm looking at the report that |
| 12:25:18 | 15 | was dated December 9. |
| 12:25:28 | 16 | THE COURT:  I'm looking at a report dated |
| 12:25:30 | 17 | August 26.   The pagination is different. |
| 12:25:56 | 18 | Excuse me. |
| 12:25:58 | 19 | MS. DUSTIN:  I can use the August report if |
| 12:26:00 | 20 | you prefer. |
| 12:26:04 | 21 | THE COURT:  I have the other ones. |
| 12:26:06 | 22 | Mr. Sturdivant, were there any revisions |
| 12:26:08 | 23 | which would implicate the issues I just stated that are |
| 12:26:12 | 24 | necessary? |
| 12:26:12 | 25 | MR. STURDIVANT:  Yes, Your Honor.   Let me |

Exhibit A, p. 3

| | | |
|---|---|---|
| 12:26:18 | 1 | point them out to you. |
| 12:26:26 | 2 | THE COURT:  Excuse us just a minute. |
| 12:26:28 | 3 | (Discussion had off the record.) |
| 12:27:26 | 4 | THE COURT:  The paragraph numbers are |
| 12:27:28 | 5 | different, and the conclusion with regard to criminal |
| 12:27:30 | 6 | history is where we had discussed in chambers with all |
| 12:27:34 | 7 | counsel present, and that conclusion was that it was |
| 12:27:38 | 8 | criminal history six.  I couldn't understand a prior |
| 12:27:42 | 9 | draft showing a criminal history two.  Please now |
| 12:27:46 | 10 | proceed. |
| 12:27:50 | 11 | MS. DUSTIN:  At paragraph 92 the report |
| 12:27:52 | 12 | assesses zero criminal history points for the |
| 12:27:54 | 13 | defendant's conviction of possession of marijuana and |
| 12:27:56 | 14 | possession of LSD in 1972. |
| 12:27:58 | 15 | It's the government's position the defendant |
| 12:28:02 | 16 | should be assessed three criminal history points for |
| 12:28:04 | 17 | this conviction because the conviction would actually be |
| 12:28:08 | 18 | within 15 years of the defendant's conduct in the |
| 12:28:14 | 19 | instant case since Gus Macropoulos testified that the |
| 12:28:18 | 20 | defendant's drug distribution with him began in 1989. |
| 12:28:22 | 21 | Therefore, counting 15 years from 1975 would place this |
| 12:28:28 | 22 | conviction within the 15-year window. |
| 12:28:34 | 23 | Turning to the criminal history conviction |
| 12:28:38 | 24 | at paragraph 97, the defendant's conviction in 1982 for |
| 12:28:42 | 25 | a violation of the firearms act.  The report assesses |

Exhibit A, p. 4

12:28:46  1   zero criminal history points for that conviction.   It's

12:28:48  2   the government's position that the defendant should

12:28:52  3   actually receive two criminal history points for that

12:28:56  4   conviction because that also would fall within the

12:28:58  5   15-year window required under the sentencing guidelines.

12:29:02  6   The defendant was released from prison in 1982.

12:29:04  7   Counting 15 years from that date would place that into

12:29:08  8   1998, well within his offense conduct in this instant

12:29:12  9   case.

12:29:14  10          Next, looking at paragraph 103, that

12:29:16  11  paragraph assesses zero criminal history points for the

12:29:20  12  defendant's convictions in Florida in 2004 for RICO,

12:29:26  13  RICO conspiracy, and obstruction of justice.   The

12:29:28  14  government presumes that the report writer did not count

12:29:32  15  that conviction feeling that it might be similar

12:29:38  16  conduct, relevant conduct to the instant offense.   But

12:29:40  17  as this Court has heard, that conduct in that case was

12:29:44  18  completely separate from what the defendant was charged

12:29:48  19  with in this case, the fact this Court found that there

12:29:52  20  was no double jeopardy between the two offenses and two

12:29:56  21  cases; therefore, it's the government's position the

12:29:58  22  defendant should be assessed three criminal history

12:30:00  23  points for his conviction in Florida.

12:30:02  24          Adding all the criminal history points

12:30:04  25  together, the defendant would actually score out at 11

Exhibit A, p. 5

| | |
|---|---|
| 12:30:10 | 1 |
| 12:30:14 | 2 |
| 12:30:20 | 3 |
| 12:30:24 | 4 |
| 12:30:48 | 5 |
| 12:30:50 | 6 |
| 12:30:54 | 7 |
| 12:30:56 | 8 |
| 12:30:58 | 9 |
| 12:31:00 | 10 |
| 12:31:02 | 11 |
| 12:31:06 | 12 |
| 12:31:10 | 13 |
| 12:31:12 | 14 |
| 12:31:16 | 15 |
| 12:31:18 | 16 |
| 12:31:22 | 17 |
| 12:31:28 | 18 |
| 12:31:32 | 19 |
| 12:31:36 | 20 |
| 12:31:40 | 21 |
| 12:31:44 | 22 |
| 12:31:46 | 23 |
| 12:31:50 | 24 |
| 12:31:52 | 25 |

points and be a criminal history category five, just
looking at his convictions.  However, it's still -- I'm
sorry, Your Honor; did you have a question?

THE COURT:  Yes.  I presume you're going to
address the career issue?

MS. DUSTIN:  The career offender issue.
Just looking at the points themselves, the defendant
scores out at a criminal history five.

It's the government's position the defendant
is actually a career offender and therefore should be
treated as a criminal history category six.  The
defendant does, in fact, have a prior conviction for a
drug offense, possession of marijuana, and possession of
LSD from 1971 that when you look at the 15-year window,
it now counts towards the criminal history.  And also
looking at the defendant's convictions in Florida from
2004, he was convicted of RICO and RICO conspiracy.  A
number of predicate acts that were charged in the RICO
case concern bombings.  The defendant was, in fact,
found guilty of those predicate acts; and therefore,
this Court should treat that conviction as an offense of
violence.  He would therefore have both predicate acts
required under the guidelines and should be treated as a
career offender, which would start his base offense
level at, rather than a base offense level of 36, a base

Exhibit A, p. 6

12:31:58  1  offense level of 37.  Adding four levels to that for

12:32:02  2  leader or organizer would bring him to a base offense

12:32:06  3  level of 41, and a criminal history category of six,

12:32:10  4  scoring out at a total of 360 months to life under the

12:32:14  5  sentencing table.

12:32:54  6             THE COURT:  Mr. Doughten or Mr. Helmick?

12:32:56  7             MR. HELMICK:  Your Honor, with regard to

12:32:58  8  these issues, taken in the order discussed, first with

12:33:02  9  regard to 92, Your Honor, that enhancement.  With

12:33:06 10 regard to all these, Judge, I guess we'd pose a general

12:33:08 11 objection based upon Blakely and its progeny and just

12:33:14 12 simply indicate in our argument at this point the

12:33:18 13 Supreme Court hasn't specifically addressed this, that

12:33:20 14 such enhancements for sentencing for criminal

12:33:24 15 convictions should be decided by a jury.  So we put that

12:33:28 16 on the record after any enhancements of this nature

12:33:30 17 discussed by the government.

12:33:30 18            With regard to Number 92, I offer to the

12:33:34 19 Court, I think the testimony was less than clear in

12:33:36 20 terms of the time line of initiation of the conspiracy

12:33:40 21 testimony from this case.  And accordingly, since the

12:33:44 22 defendant was released from parole in March of 1975,

12:33:48 23 it's simply too close, and that the Court ought to give

12:33:52 24 the defendant the benefit of the doubt by not imposing

12:33:54 25 the assessment with regard to paragraph 92.

12:33:58  1          Judge, with regard to paragraph 97, we have

12:34:00  2   nothing other than our general objection based on

12:34:02  3   Blakely and our right to jury determination.

12:34:06  4          With regard to the Florida conviction, Your

12:34:08  5   Honor, paragraph 103, I suppose we'd offer, in addition

12:34:14  6   to the general objection, just because the Court found

12:34:18  7   that there was no constitutional bar under the Fifth

12:34:22  8   Amendment to secondary prosecution does not mean there

12:34:24  9   was not overlap in conduct and events between Florida

12:34:28  10  and here.  In fact, I think we know there was.  So I

12:34:32  11  respect the Court's determination with regard to double

12:34:34  12  jeopardy; I'd suggest to the Court for purposes of

12:34:38  13  enhancement that the Court ought to consider Florida and

12:34:42  14  the similarity and events and conduct and overlapping

12:34:46  15  conduct between the two.  I think it would be

12:34:48  16  inappropriate to assess any additional criminal history

12:34:52  17  points with regard to paragraph 103 and the defendant's

12:34:54  18  conviction in Florida.

12:35:00  19          That's all we have at this time, Your Honor.

12:35:04  20          THE COURT:  Thank you very much.  I'd like

12:35:06  21  to rearrange my order and address role in the offense

12:35:12  22  next.

12:35:16  23          MS. DUSTIN:  Your Honor, the report

12:35:16  24  recommends an assessment of four levels with regard to

12:35:20  25  Mr. Wheeler.  We believe that that is commanded by the

Exhibit A, p. 8

12:35:24  1    terms of the guidelines and the reference in the

12:35:28  2    guidelines to assessing an additional four levels for

12:35:32  3    those persons who can clearly be shown to have managed,

12:35:36  4    to have led, and to have otherwise supervised five or

12:35:40  5    more persons.    It is very clear within the scope of the

12:35:42  6    drug operation alone that Mr. Wheeler was involved in

12:35:46  7    there were over five people involved in that.    And

12:35:48  8    there is no question that Mr. Wheeler stood in a

12:35:50  9    supervisory capacity.    In that particular sense, the

12:35:56  10   Court may well recall numerous members of the Outlaws

12:35:58  11   who came in here and testified that had -- at Mr.

12:36:02  12   Wheeler's direction they obtained drugs from Mr.

12:36:04  13   Wheeler, transported those drugs to other communities

12:36:06  14   such as Sandusky, Ohio.  We can recall the testimony of

12:36:10  15   Mr. Wheeler in attempting to recruit Mr. Dilts to take

12:36:12  16   part in alcohol-related -- drug trafficking activities.

12:36:16  17   So clearly and totally in the sense of a drug operation

12:36:20  18   alone, there is no question, Mr. Wheeler was a

12:36:22  19   supervisor within the context and within the meaning of

12:36:26  20   the guidelines.

12:36:26  21           Also, with respect to the enterprise itself

12:36:28  22   in this case, it is also true that Mr. Wheeler was a

12:36:32  23   manager.  He occupied the position of international

12:36:34  24   president of the Outlaws.    And it is also instructive

12:36:40  25   and interesting to note that within the scope of the

| | | |
|---|---|---|
| 12:36:44 | 1 | Outlaws, and within the scope of Mr. Wheeler's |
| 12:36:46 | 2 | leadership of the Outlaws, that on numerous occasions |
| 12:36:48 | 3 | they dealt with issues that concerned the drug |
| 12:36:52 | 4 | distribution activities of members of the Outlaws. |
| 12:36:54 | 5 | There was the infamous Cancun meeting wherein it was -- |
| 12:37:00 | 6 | the issue was raised whether members in Canada would be |
| 12:37:02 | 7 | permitted to distribute certain kinds of drugs.  And Mr. |
| 12:37:06 | 8 | Wheeler brought that issue to the table.  Then, of |
| 12:37:08 | 9 | course, there was the ongoing discussion with regard to |
| 12:37:12 | 10 | methamphetamine sales, and we had tape recordings that |
| 12:37:14 | 11 | were played in which Mr. Wheeler indicated that that had |
| 12:37:16 | 12 | been discussed on the national level, and expressed some |
| 12:37:20 | 13 | anger with Mr. Puttick for not having taken that back to |
| 12:37:24 | 14 | the regions.  There being more than five individual |
| 12:37:26 | 15 | chapters in the county, it would seem to be clear that |
| 12:37:32 | 16 | Mr. Wheeler supervised five or more persons.  Clearly |
| 12:37:36 | 17 | within those chapters there were any number of members |
| 12:37:40 | 18 | as well. |
| 12:37:40 | 19 | Taking this all together, if there were ever |
| 12:37:42 | 20 | a case for the increase in four levels with regard to an |
| 12:37:46 | 21 | individual, this would be it. |
| 12:37:50 | 22 | MR. HELMICK:  Your Honor, briefly, a general |
| 12:37:52 | 23 | objection based on Blakely.  I think this is exactly |
| 12:37:56 | 24 | the type of enhancement for which the Supreme Court has |
| 12:38:00 | 25 | described that ought to be delivered or considered by a |

Exhibit A, p. 10

| | | |
|---|---|---|
| 12:38:04 | 1 | jury.  That was not done in the case.  There was not a |
| 12:38:08 | 2 | specific finding by the jury in the case with regard to |
| 12:38:10 | 3 | Mr. Wheeler's leadership role or lack thereof in the |
| 12:38:14 | 4 | offense.  We'll put that on the record first. |
| 12:38:16 | 5 | Factually, having sat here with the Court |
| 12:38:18 | 6 | and heard the evidence for so long, I do not have to put |
| 12:38:20 | 7 | out that despite various titles, this was, by way of |
| 12:38:26 | 8 | leadership, this struck me as disorganized crime, not |
| 12:38:30 | 9 | organized crime, Your Honor.  And that even the Cancun |
| 12:38:36 | 10 | meeting and other things it is apparent that to the |
| 12:38:40 | 11 | extent that the Court believes the government has |
| 12:38:42 | 12 | established criminal conduct by Mr. Wheeler, that there |
| 12:38:44 | 13 | were people making side deals, cross deals, ignoring |
| 12:38:50 | 14 | things.  And I guess I'd point out to the Court there |
| 12:38:58 | 15 | are probably cases where it's clear, but it ain't so |
| 12:39:02 | 16 | clear in this one.  Thank you. |
| 12:39:14 | 17 | THE COURT:  Well, with regard to that, with |
| 12:39:16 | 18 | regard to this, it would be an absolutely impossible |
| 12:39:24 | 19 | conclusion for me and an offense to my common sense, |
| 12:39:32 | 20 | after sitting through 11 weeks of trial, to conclude |
| 12:39:40 | 21 | that Mr. Wheeler was anything but a leader, and at that, |
| 12:39:50 | 22 | an ironfisted leader. |
| 12:39:58 | 23 | I've said this before, but after sitting |
| 12:40:02 | 24 | through these trials and listening to these members of |
| 12:40:06 | 25 | the OMC in these chapters, it reminds me of my |

| | |
|---|---|
| 12:40:12 | 1 |
| 12:40:20 | 2 |
| 12:40:26 | 3 |
| 12:40:32 | 4 |
| 12:40:38 | 5 |
| 12:40:48 | 6 |
| 12:40:54 | 7 |
| 12:40:58 | 8 |

childhood, and the old cowboy movies.  These folks remind me of people like the Hole in the Wall Gang or other gangs of outlaws in the west as depicted in those class B movies.  But they took it too far; they took this seriously and imposed it on our society.  I cannot for the life of me find how anyone, having sat through the trial, could conclude Mr. Wheeler was other than a leader.

Now, having said this, it seems to me that under the guidelines, most of this doesn't make any difference.  It would appear to me, for instance, even if Mr. Wheeler were a criminal history category 36 -- or a 2, and an offense level of 36, that the maximum under there is 262 months under Counts 1 and 3.  And if I followed that, I will tell you, I would impose them consecutively.  That's 524 months, or 43 years plus.

We then come to Count 2, which is 20 years consecutive.

So whether it's a 37 plus four, and a mandatory 360 years to life as a criminal history category six, or a 36 with a criminal history of category two, the sentence is going to be tantamount to life.  I want to make that very clear.

Could you give me but a moment.

(Discussion had off the record.)

Exhibit A, p. 12

|           |    |                                                                  |
|-----------|----|------------------------------------------------------------------|
| 12:43:06  | 1  | THE COURT:  I'd like next to discuss the                         |
| 12:43:08  | 2  | implications of Section 841(b) of Title 21.  It would            |
| 12:43:18  | 3  | appear to me under that section that the jury, having            |
| 12:43:36  | 4  | found that Mr. Wheeler was responsible for five                  |
| 12:43:42  | 5  | kilograms or more of cocaine, and 100 kilograms but less         |
| 12:43:50  | 6  | than 1,000 kilograms of marijuana, that five kilograms           |
| 12:44:00  | 7  | of cocaine requires under Section 841(b)(1)(A) to be             |
| 12:44:20  | 8  | sentenced at a minimum of ten years to life.  At a               |
| 12:44:34  | 9  | maximum, if there are two or more prior convictions for          |
| 12:44:44  | 10 | felony drug offenses, the 1971 offense and the 2003              |
| 12:44:52  | 11 | offense in Florida, such person shall be sentenced to a          |
| 12:44:58  | 12 | mandatory sentence of life imprisonment without release.         |
| 12:45:08  | 13 | I'd like comment on the applicability of 841(b)(1)(A).           |
| 12:45:20  | 14 | MR. WILSON:  I know this requires us to jump                     |
| 12:45:22  | 15 | a little bit ahead of the arguments scheduled, but we            |
| 12:45:26  | 16 | did file a notice pursuant to Section 851 based upon two         |
| 12:45:32  | 17 | prior drug penalties that Mr. Wheeler had in 1971.               |
| 12:45:36  | 18 | Those prior two drug felonies are sufficient to trigger          |
| 12:45:40  | 19 | the applicability of Section 841(b)(1)(A), and thus, the         |
| 12:45:46  | 20 | only sentence available is a mandatory term of life              |
| 12:45:50  | 21 | without parole.                                                  |
| 12:45:52  | 22 | The Court has also indicated that the                            |
| 12:45:54  | 23 | conviction in Florida adds an additional conviction, and         |
| 12:45:58  | 24 | indeed it does because there was a drug offense involved         |
| 12:46:02  | 25 | in his conviction down there.  But we have provided              |

Exhibit A, p. 13

| | |
|---|---|
| 12:46:04 | 1 |
| 12:46:08 | 2 |
| 12:46:12 | 3 |

notice under Section 851 with respect to two earlier

convictions, and those will do it, as well as the

additional conviction which the Court just referenced.

We do agree with the Court's analysis as to

where this leads us in terms of a maximum and only

sentence available in this case.

THE COURT:  It would further seem to me that

notice having been filed utilizing prior convictions,

even though by some stretch those convictions were not

considered for criminal history category, those

convictions would be considered under 841(b)(1)(A); and

therefore, since the provisions of Section 851 of Title

21 of the United States Code were complied with, that it

leaves the Court with only a life sentence.

MR. DOUGHTEN:  Your Honor, to repeat, we

filed some objections.  I'm just going to go over those

for the record.  First of all, we did get notice of the

enhancements.  And we understand as it currently stands

that there is no requirement for the government to have

to prove prior convictions to a jury.  There is a case

before the United States Supreme Court currently that is

United States versus Shepard.  It is not exactly on

point; I don't want to mislead the Court.  However, it

is addressing that issue peripherally.  So we're

objecting obviously to keep that issue alive.

| | | |
|---|---|---|
| 12:47:52 | 1 | Second of all, Your Honor, I think paragraph |
| 12:47:54 | 2 | 92, I think there's one conviction.  They're both -- |
| 12:48:02 | 3 | THE COURT:  There was only one conviction. |
| 12:48:04 | 4 | MR. DOUGHTEN:  Right.  I'm not sure. |
| 12:48:08 | 5 | THE COURT:  But there were counts within |
| 12:48:10 | 6 | that. |
| 12:48:12 | 7 | MR. DOUGHTEN:  That's correct. |
| 12:48:12 | 8 | THE COURT:  I only addressed it as one |
| 12:48:16 | 9 | conviction.  I believe Mr. Sturdivant agrees there's |
| 12:48:18 | 10 | only one conviction entitled to criminal history |
| 12:48:22 | 11 | category points.  Am I correct? |
| 12:48:26 | 12 | MR. STURDIVANT:  Correct. |
| 12:48:30 | 13 | MR. DOUGHTEN:  For 814 are you considering |
| 12:48:32 | 14 | that two prior drug offenses for life or one? |
| 12:48:46 | 15 | THE COURT:  I think that one, under |
| 12:48:48 | 16 | paragraph 103, former paragraph 92, is one.  I'm |
| 12:49:06 | 17 | looking at the wrong -- I'm sorry.  I'm looking at the |
| 12:49:10 | 18 | wrong paragraph.  I am looking at 92.  92 is only one |
| 12:49:22 | 19 | predicate act, if you will.  And the other one, I |
| 12:49:28 | 20 | believe, is paragraph 103. |
| 12:49:40 | 21 | MR. DOUGHTEN:  Yes, Your Honor.  I just |
| 12:49:42 | 22 | wanted to make clear.  Obviously we're removing our |
| 12:49:46 | 23 | double jeopardy argument for the -- |
| 12:49:48 | 24 | THE COURT:  I understand. |
| 12:49:48 | 25 | MR. DOUGHTEN:  One final thing.  When it |

Exhibit A, p. 15

| | | |
|---|---|---|
| 12:49:50 | 1 | goes to amounts charged, this is kind of novel.  I wish |
| 12:49:54 | 2 | I had some case law to defend it, but I don't.  But I |
| 12:49:58 | 3 | want to put it on the record since we're kind of at a |
| 12:50:00 | 4 | new frontier on all these sentencing issues.  Our |
| 12:50:04 | 5 | double jeopardy argument, I think the Court concluded |
| 12:50:06 | 6 | that these were separate acts.  And I guess our |
| 12:50:10 | 7 | position I want to make is it's improper to aggregate |
| 12:50:14 | 8 | the amounts for the purposes of sentencing when, in |
| 12:50:18 | 9 | fact, the acts were found to be separate incidents for |
| 12:50:22 | 10 | the purpose of double jeopardy.  So we're arguing the |
| 12:50:26 | 11 | amounts attributable to Mr. Wheeler have been inflated |
| 12:50:30 | 12 | basically for -- |
| 12:50:32 | 13 | THE COURT:  I interrupted because I only |
| 12:50:34 | 14 | used for sentencing the jury's finding of five kilograms |
| 12:50:38 | 15 | or more of cocaine.  I did not use any findings of |
| 12:50:46 | 16 | quantity in the Florida case as relevant conduct, if you |
| 12:50:52 | 17 | will. |
| 12:50:52 | 18 | MR. DOUGHTEN:  All right.  Then again, |
| 12:50:54 | 19 | we'll just reiterate the double jeopardy issue which we |
| 12:50:58 | 20 | think applies in both situations.  Thank you. |
| 12:51:02 | 21 | MR. HELMICK:  I'm sorry, Judge.  May we have |
| 12:51:04 | 22 | just one moment? |
| 12:51:04 | 23 | (Discussion had off the record.) |
| 12:51:28 | 24 | MR. DOUGHTEN:  Mr. Wheeler wants me to |
| 12:51:30 | 25 | clarify.  I think it's appropriate that I do.  His |

12:51:32   1   concern is -- the problem is it's agreed that a number

12:51:36   2   of witnesses who testified in Tampa, Florida also

12:51:38   3   testified here, and they testified, the argument is,

12:51:42   4   about similar instances and similar acts of conspiracy,

12:51:46   5   that there's a double counting going on, that the amount

12:51:48   6   of drugs attributed to Mr. Wheeler for sentencing

12:51:52   7   purposes in Florida are also being attributed to him for

12:51:56   8   a separate conviction here in Toledo.

12:52:00   9            THE COURT:  I'm assured that is far from

12:52:04  10   correct because the only attribution was the one found

12:52:08  11   by the jury sitting in Toledo, Ohio in this federal

12:52:12  12   court.   And I am looking now, as I did earlier, at the

12:52:18  13   special verdict drug quantities which were found by the

12:52:22  14   jury as I previously placed on the record, five

12:52:26  15   kilograms or more of cocaine, and 100 kilograms but less

12:52:30  16   than 1,000 kilograms of marijuana.   And it is my belief

12:52:36  17   that the activities between Dayton, Fort Wayne, and

12:52:46  18   Indianapolis alone justified that conclusion.

12:52:54  19            MR. WILSON:  I would also note that the drug

12:52:56  20   charges that form the basis of the Florida charges were

12:53:00  21   different than those which were involved here.  They

12:53:02  22   involved -- there may have been an overlap of witnesses

12:53:06  23   who established the enterprise and Mr. Wheeler's

12:53:08  24   connection with the enterprise, but the drug conspiracy

12:53:12  25   charges in Florida were much more limited, and involved

Exhibit A, p. 17

| | | |
|---|---|---|
| 12:53:14 | 1 | Mr. Wheeler and his association with Mr. Pellegrini from |
| 12:53:18 | 2 | Detroit, as opposed to the Green Region allegations |
| 12:53:22 | 3 | which form the basis of this indictment. |
| 12:53:24 | 4 | So I know the Court has not considered any |
| 12:53:26 | 5 | quantities from Florida, and there is no legal way to do |
| 12:53:28 | 6 | so given the difference between the charges in Florida |
| 12:53:32 | 7 | and the charges here in Toledo. |
| 12:53:40 | 8 | THE COURT:  Thank you.  I'll now ask Mr. |
| 12:53:44 | 9 | Wheeler, subject to all the objections which have been |
| 12:53:52 | 10 | aired and reserved by your counsel, both in writing as |
| 12:53:58 | 11 | filed previously with this Court, and orally today, and |
| 12:54:02 | 12 | at the hearing which was held with respect to the double |
| 12:54:08 | 13 | jeopardy issue -- have you read your presentence report |
| 12:54:16 | 14 | and discussed it with your counsel? |
| 12:54:18 | 15 | THE DEFENDANT:  I have. |
| 12:54:22 | 16 | THE COURT:  Do either counsel or you, Mr. |
| 12:54:24 | 17 | Wheeler, have any objections to the form and content of |
| 12:54:30 | 18 | the presentence report except as articulated either |
| 12:54:34 | 19 | orally or in writing up through this hour? |
| 12:55:08 | 20 | THE DEFENDANT:  No, I don't have any now. |
| 12:55:10 | 21 | THE COURT:  Counsel? |
| 12:55:12 | 22 | MR. HELMICK:  Correct, nothing beyond what |
| 12:55:14 | 23 | we've said here today or previously filed in the case. |
| 12:55:16 | 24 | THE COURT:  Government? |
| 12:55:18 | 25 | MR. WILSON:  Your Honor, I know we have no |

Exhibit A, p. 18

12:55:18  1   further objections to be made.  We have a few other

12:55:22  2   comments prior to the imposition of sentence.

12:55:24  3              THE COURT:  I understand.  This is only with

12:55:26  4   respect to the report.

12:55:26  5              I'd like to order that the report be placed

12:55:28  6   in the record under seal.  Should an appeal be taken in

12:55:34  7   this case, as we all anticipate it will be, then I'll

12:55:38  8   order that counsel on appeal shall be permitted access

12:55:40  9   to the presentence report except the recommendations

12:55:48  10  section, which will remain sealed.

12:56:34  11             I want to articulate again my conclusions

12:56:38  12  with respect to the guideline range and with respect to

12:56:48  13  the criminal history category.  I agree with the

12:57:00  14  government's conclusions with respect to paragraphs 92

12:57:08  15  and 97 of the presentence report and the implications

12:57:36  16  that those conclusions have on the guideline range.

12:57:44  17  That would drive it from a 36 to a 37.  It is clear to

12:57:52  18  me that Mr. Wheeler was established and held himself out

12:58:02  19  as the leader of at least the Green Region, but surely

12:58:08  20  from everything that was brought forth at trial, of the

12:58:14  21  international organization known as the Outlaw

12:58:22  22  Motorcycle Club.

12:58:22  23             He would be a criminal history category six

12:58:30  24  with a guideline range of 41.  As a result of four

12:58:36  25  levels for leader of the enterprise, that results in a

Exhibit A, p. 19

| | | |
|---|---|---|
| 12:58:42 | 1 | sentencing window of 360 months to life. |
| 12:58:52 | 2 | It appears as a result of our discussions |
| 12:58:56 | 3 | with regard to criminal history category that the |
| 12:59:06 | 4 | defendant, James Wheeler, would be classified under the |
| 12:59:16 | 5 | guidelines, the exact section being 4B1.1, as a career |
| 12:59:32 | 6 | offender, therefore resulting in a criminal history |
| 12:59:38 | 7 | category of six.  As a career offender at a criminal |
| 12:59:50 | 8 | history category of six, I believe that's 360 to life on |
| 13:00:04 | 9 | Counts 1 and 3 of the indictment, and on Count 2 of the |
| 13:00:12 | 10 | indictment, 20 years. |
| 13:00:22 | 11 | Having said that, because the enhancements |
| 13:00:30 | 12 | and notifications with regard to prior criminal activity |
| 13:00:40 | 13 | were afforded to the defendant under Section 851 of |
| 13:00:48 | 14 | Title 21, it would therefore appear that a sentencing of |
| 13:00:58 | 15 | life is mandatory. |
| 13:01:02 | 16 | I also believe that it is clear to this |
| 13:01:06 | 17 | judge that even if Mr. Wheeler were a guideline of 36 |
| 13:01:16 | 18 | and a criminal history of two, this Court would sentence |
| 13:01:22 | 19 | Mr. Wheeler to 262 months on Counts 1 and 3 to be served |
| 13:01:28 | 20 | consecutively, and 20 years consecutively on Count 2. |
| 13:01:44 | 21 | That's a total of in excess of 63 years. |
| 13:01:56 | 22 | I'll listen to both counsel for the |
| 13:01:58 | 23 | government, but first to counsel for Mr. Wheeler before |
| 13:02:02 | 24 | sentencing. |
| 13:02:20 | 25 | MR. HELMICK:  Thank you, Your Honor. |

Exhibit A, p. 20

13:02:22  1  Judge, I hate to keep renewing objections, but I guess I

13:02:28  2  will.  As well as with any discussion of possible

13:02:30  3  sentences and offense levels, the Court might impose a

13:02:38  4  second sentence, and under Blakely, just to preserve the

13:02:40  5  record on that.

13:02:42  6          Judge, I'd ask the Court to consider by way

13:02:44  7  of mitigation what we believe to be the same or

13:02:48  8  substantially the same conduct overlapping from the

13:02:50  9  state of Florida from which Mr. Wheeler received a 16

13:02:54  10  and a half year sentence.

13:02:54  11          I'd ask the Court to consider some of the

13:02:58  12  health problems he's experienced more recently at his

13:03:02  13  current age of 62 years.  I'd like the Court to

13:03:06  14  consider the fact that he served at times something of a

13:03:12  15  role as a peacemaker in attempting to bring rival

13:03:16  16  motorcycle clubs together to at least in some instances

13:03:20  17  be successful in reaching truces.  With regard to

13:03:26  18  further activities or aggression or violence, as the

13:03:30  19  Court heard both in this case as well as what came forth

13:03:36  20  in the testimony in the Florida case.

13:03:36  21          And, Judge, I want to point out,

13:03:40  22  incidentally, and the record supports, that he has been

13:03:44  23  a good husband to Stephanie and a good father to his 13

13:03:48  24  year old son Justin.  I mention that as well.

13:03:52  25          Judge, this may be premature, but I would

13:03:54   1   request a recommendation to the Bureau of Prisons for a

13:03:58   2   placement in Florida, because I believe that's where his

13:04:02   3   wife and son will be residing.   And they would like to

13:04:04   4   be close to him.   He, of course, would like to be close

13:04:08   5   to them.

13:04:10   6            He continues, as the Court knows, to assert

13:04:12   7   his innocence, and intends to appeal.   And, Judge, we'd

13:04:18   8   like the Court to appoint, if possible, attorney Gary

13:04:22   9   Crim, C-r-i-m, out of Dayton or make a recommendation to

13:04:28  10   the Sixth Circuit.   Frankly, Judge, I think the only way

13:04:30  11   to assure his appointment is probably for the Court to

13:04:34  12   do it.   I'd ask the Court to consider doing that in

13:04:36  13   terms of a replacement for us, and then asking Mr. Crim

13:04:40  14   to file a notice of appeal.

13:04:44  15            THE COURT:  Any objection to that, Mr.

13:04:46  16   Wheeler?

13:04:48  17            THE DEFENDANT:  No, not to that particular

13:04:50  18   part of the case.

13:04:52  19            MR. HELMICK:  May I have one moment, Your

13:04:56  20   Honor?

13:04:56  21            (Discussion had off the record.)

13:05:06  22            MR. HELMICK:  Judge, that's all I have at

13:05:08  23   this time.

13:05:08  24            THE COURT:  Mr. Wheeler, this is your

13:05:10  25   opportunity to address the Court on your own behalf if

Exhibit A, p. 22

| | | |
|---|---|---|
| 13:05:12 | 1 | you wish to do so. |
| 13:05:14 | 2 | THE DEFENDANT: The only thing that I would |
| 13:05:14 | 3 | like to do is I filed a pro se motion with the Court, |
| 13:05:20 | 4 | and in that motion I asked to be able to speak to a |
| 13:05:24 | 5 | public -- preferably a federal public defender because I |
| 13:05:28 | 6 | have issues and questions, and I don't feel that I'm |
| 13:05:32 | 7 | getting the answers that I need from the people that |
| 13:05:34 | 8 | I've been represented by or by the Court. So you |
| 13:05:38 | 9 | mentioned about getting a hold of Cleveland because you |
| 13:05:40 | 10 | didn't think they could come to Milan and talk to me. |
| 13:05:42 | 11 | I still would request that I be able to talk to a |
| 13:05:46 | 12 | federal public defender. I've got issues, and I'd like |
| 13:05:50 | 13 | to have some answers. |
| 13:05:54 | 14 | Other than that, I don't have anything. |
| 13:05:56 | 15 | This is beyond me. |
| 13:05:56 | 16 | THE COURT: I'm going to appoint Mr. Crim to |
| 13:06:00 | 17 | represent you on appeal, and he will be in touch with |
| 13:06:02 | 18 | you. And if he can't provide you the answers -- they |
| 13:06:04 | 19 | may not be the answers that you'd like to hear, but if |
| 13:06:06 | 20 | he can't provide you, then you will have an opportunity |
| 13:06:10 | 21 | discuss that further. |
| 13:06:12 | 22 | Government? |
| 13:06:12 | 23 | MR. WILSON: It's obviously, I think, very |
| 13:06:16 | 24 | clear from the evidence Mr. Wheeler operated at the |
| 13:06:18 | 25 | highest level of the Outlaws. It was his direct |

Exhibit A, p. 23

13:06:22   1   participation and his decisions which led this

13:06:26   2   organization in so many different ways.

13:06:30   3           In looking at this particular case, it has

13:06:32   4   been said that perhaps they can't shoot straight.  They

13:06:36   5   shot straight in Anderson, Indiana.   They darn-near

13:06:38   6   killed a young man who was completely innocent at that

13:06:42   7   particular location.   They tried to blow up a clubhouse

13:06:46   8   in Indianapolis, Indiana.  There is evidence Mr. Wheeler

13:06:48   9   was directly involved in that.

13:06:50  10           They sold drugs on a massive scale which

13:06:52  11   were distributed throughout the region, and by region

13:06:54  12   now we mean the midwest, including this area.

13:06:58  13           What better fit could there be in this case

13:07:02  14   between the facts that were presented in this trial and

13:07:04  15   the RICO violation for which Mr. Wheeler was convicted,

13:07:08  16   among others?  And who could be more deserving of the

13:07:12  17   ultimate penalties than somebody who used their club

13:07:16  18   affiliation, as Mr. Wheeler did in this case?  And

13:07:18  19   motorcycle clubs are common, there are hundreds of them

13:07:22  20   across this country, and most of them are no more

13:07:26  21   harmful than a garden club, but in this case he chose to

13:07:30  22   use his particular club to intimidate and control others

13:07:34  23   as a way to distribute hundreds of kilograms of cocaine,

13:07:38  24   marijuana, and many other drugs.

13:07:40  25           It is interesting, and you may have seen on

13:07:44  1  their own website that the Outlaws have chosen to

13:07:46  2  say, and I quote, "The government has labelled the

13:07:48  3  Outlaws Motorcycle Club a criminal organization and all

13:07:54  4  its members as criminals simply because they are

13:07:56  5  members."  How untrue.  We spoke to this jury in

13:08:00  6  opening statement and in closing argument, and I don't

13:08:04  7  know how many other times, and we say now that

13:08:06  8  membership in the Outlaws or any other club is not

13:08:08  9  against the law.  It's your conduct in using that club

13:08:12  10  and what you choose to do with it that may violate the

13:08:16  11  law.  And the evidence in this case showed that Mr.

13:08:20  12  Wheeler in his conduct with the Outlaws very, very

13:08:22  13  clearly used his association with the club to violate

13:08:26  14  the laws and to distribute drugs on a massive scale.

13:08:30  15  He was a man of criminal leadership in this enterprise,

13:08:34  16  and he ran it in a very hands-on way.  He was aware of

13:08:36  17  what was going on, both within his club and without it.

13:08:40  18          And while it might seem sophomoric that so

13:08:44  19  much of their time was directed toward what rival clubs

13:08:46  20  were doing and who might be taking over this area, who

13:08:50  21  might be involved in another area, they ended up being

13:08:54  22  matters of dead seriousness to those particular

13:08:56  23  communities because on many occasions violence resulted.

13:09:00  24  And on certain occasions shown in this particular case,

13:09:02  25  we saw innocent people that got in the way of that

Exhibit A, p. 25

13:09:06   1   particular violence.

13:09:08   2            One can only look at the indictment against

13:09:12   3   Mr. Wheeler's good friend and close associate, Harry

13:09:16   4   Bowman, and some of the allegations in his charge which

13:09:20   5   Mr. Wheeler was convicted of in Florida.   The

13:09:22   6   consequences of this biker warfare were shown with great

13:09:28   7   effect where we had bombings and killings in Florida

13:09:30   8   that involved the Outlaws and other clubs.

13:09:34   9            The fact of the matter is, Your Honor, that

13:09:36   10  rather than biking and brotherhood, what we really saw

13:09:40   11  here was that Mr. Wheeler ran the Outlaws in terms of

13:09:44   12  drugs and domination.   Those were the operative phrases

13:09:46   13  in terms of how he ran his particular club.

13:09:50   14           Based upon evidence in this case -- and I

13:09:52   15  believe it was fair to say that the trial in the case

13:09:54   16  was thorough, this Court gave every opportunity to the

13:09:58   17  defendant to present any fact that may bear upon this,

13:10:02   18  Mr. Wheeler had a fair trial, and now the question is,

13:10:04   19  what is a fair penalty for Mr. Wheeler's conduct?  The

13:10:10   20  most serious penalty available to this particular

13:10:14   21  conduct, save, of course, capital punishment, saved for

13:10:18   22  a whole separate category of offense, next to that the

13:10:22   23  most serious penalty is life without parole.   How can

13:10:24   24  that not be a fair penalty for someone who has chosen to

13:10:28   25  lead a life of crime, who has chosen through their life

| | | |
|---|---|---|
| 13:10:32 | 1 | to lead an organization in the manner that he has here |
| 13:10:34 | 2 | and perpetuate at every opportunity the selling of |
| 13:10:40 | 3 | drugs, and the dispensing of pain across the midwest. |
| 13:10:44 | 4 | In other words, Your Honor, we submit to the |
| 13:10:46 | 5 | Court that the life sentence, a life sentence in this |
| 13:10:48 | 6 | case is fair and appropriate for Mr. Wheeler.  It is a |
| 13:10:52 | 7 | punishment that he is very much deserving of by virtue |
| 13:10:56 | 8 | of his conduct and his conduct only.  It's not about |
| 13:10:58 | 9 | the Outlaws or any other group.  Just an individual. |
| 13:11:02 | 10 | In this case the jury looked at each individual |
| 13:11:06 | 11 | defendant on trail, all 14 of them, and acquitted two of |
| 13:11:08 | 12 | them.  They clearly understood what we are telling |
| 13:11:12 | 13 | them, that it wasn't about the club; it was about the |
| 13:11:14 | 14 | person.  And this person should be in prison for the |
| 13:11:16 | 15 | rest of his life.  Thank you, Your Honor. |
| 13:11:44 | 16 | THE COURT:  Clearly I did not need to be |
| 13:11:58 | 17 | reminded by all counsel who spoke, and I don't mean this |
| 13:12:04 | 18 | unkindly to anyone, of that which was made very clear |
| 13:12:08 | 19 | through two trials involving the defendants in this |
| 13:12:16 | 20 | indictment who went to trial.  And I have said often |
| 13:12:30 | 21 | from this bench and other venues that most judges, this |
| 13:12:36 | 22 | one included, take no pleasure in imposing sentences. |
| 13:12:50 | 23 | But the impact which this defendant had on the lives of |
| 13:12:54 | 24 | so many others, both directly and indirectly, drives me |
| 13:13:00 | 25 | to a conclusion from which I can't escape.  This case |

Exhibit A, p. 27

13:13:06  1   has given me significant opportunity to reflect on the

13:13:12  2   law, vis-à-vis the influence for evil one person can

13:13:20  3   have on so many others.

13:13:26  4          While you, Mr. Wheeler, alone did not create

13:13:32  5   an atmosphere of disrespect for the law, you perpetuated

13:13:40  6   and enlarged upon a culture within the Outlaw Motorcycle

13:13:46  7   Clubs which venerated disdain for the rule of law, and

13:13:52  8   replaced it with its antithesis, a rule of crime, fear,

13:14:04  9   and violence.  Your clubs and a few like them turn what

13:14:12  10  was and is a legitimate purpose for clubs, brotherhood

13:14:20  11  based on a commonality of interest in motorcycling, into

13:14:26  12  that which is cast appall over the cycling word, at

13:14:30  13  least in the eyes of those outside that world.

13:14:42  14         I understand from counsel their view that

13:14:46  15  your participation in an attempt to bring -- or among

13:14:54  16  rival motorcycle gangs, and that's the operative word,

13:14:58  17  gangs, may be a factor for me to consider.  But those

13:15:08  18  clubs were gangs.  Your efforts to eliminate conflict

13:15:16  19  between those gangs did not mean that you were making an

13:15:24  20  effort to abandon the criminal enterprise which you

13:15:30  21  directed.

13:15:30  22         Likewise, it is clear to me from what I have

13:15:40  23  seen and heard that you, when opportunity was there,

13:15:48  24  were a good husband and father to your wife and son

13:15:54  25  respectively.  But I can find no reason which validly

Exhibit A, p. 28

| | |
|---|---|
| 13:16:12 | 1 |
| 13:16:26 | 2 |
| 13:16:28 | 3 |
| 13:16:30 | 4 |
| 13:16:36 | 5 |
| 13:16:40 | 6 |
| 13:16:42 | 7 |
| 13:16:44 | 8 |
| 13:16:48 | 9 |
| 13:16:52 | 10 |
| 13:16:54 | 11 |
| 13:16:58 | 12 |
| 13:17:06 | 13 |
| 13:17:10 | 14 |
| 13:17:14 | 15 |
| 13:17:24 | 16 |
| 13:17:30 | 17 |
| 13:17:36 | 18 |
| 13:17:44 | 19 |
| 13:17:50 | 20 |
| 13:17:56 | 21 |
| 13:18:06 | 22 |
| 13:18:10 | 23 |
| 13:18:14 | 24 |
| 13:18:16 | 25 |

would give me pause to consider a downward departure.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of this Court that the defendant James L. Wheeler is hereby committed to the custody of the Bureau of Prisons to be imprisoned for life.

Based upon my review of his financial condition as outlined in the presentence report, I find that the defendant does not have the ability to pay a fine, and will waive a fine in this case.  The defendant shall pay the United States a special assessment of $300 which is due and payable immediately.

As I said earlier, I've considered this case both under the guidelines and clearly under Title 18, Section 3553 of United States Code.  I have seriously considered the nature and circumstances of the offenses with which this Defendant was charged and those which a jury, after a very fair trial, an opportunity to be heard, found him guilty.  I've looked at what is just punishment for that -- I can't think of another word -- evil which was created by the atmosphere permeating the Outlaw Motorcycle Clubs under his control.  And that is the appropriate word, "control."

I believe the sentence I have just articulated under the guidelines is clearly the sentence

Exhibit A, p. 29

13:18:22  1    I would and will give under Section 3553, and that is

13:18:32  2    life.   That reflects the seriousness of the crime; it

13:18:40  3    affords protection to the public and prohibits this

13:18:44  4    defendant from further criminal activity.

13:18:54  5              Unless there is an objection to the form of

13:18:56  6    the sentence -- I realize that the defendant objects to

13:19:00  7    the sentence itself -- I will order that the sentence be

13:19:04  8    imposed as stated and recommend that the Bureau of

13:19:12  9    Prisons designate the defendant to a federal facility in

13:19:14  10   the state of Florida so as to be available to his family

13:19:22  11   for visits.

13:19:26  12             Any objection to the form of the sentence?

13:19:28  13             MR. DOUGHTEN:  No, Your Honor.

13:19:30  14             MR. WILSON:  No, Your Honor.

13:19:30  15             THE COURT:  Then I'll order it imposed as

13:19:34  16   stated and that it be imposed immediately.

13:19:42  17             Mr. Wheeler, you can appeal your conviction

13:19:48  18   if you believe that the jury's finding of guilty was

13:19:52  19   somehow violative of your rights and/or of the law, or

13:20:02  20   if you believe there is a fundamental defect in your

13:20:06  21   case.   You also have a right under the statutes to

13:20:14  22   appeal your sentence under certain circumstances,

13:20:18  23   particularly if you feel that the sentence was contrary

13:20:22  24   to law.

13:20:26  25             At the request of your counsel and with your

13:20:28  1  approval previously stated on the record, I'm going to

13:20:34  2  accept their withdrawal at this juncture as your counsel

13:20:40  3  for purposes of appeal and will appoint Mr. Gary Crim of

13:20:50  4  Dayton, Ohio as counsel for you on appeal.  An appeal

13:21:00  5  is commenced by the filing of a notice of appeal with

13:21:06  6  the clerk of courts on the first floor of this

13:21:12  7  courthouse within ten days after your sentence has been

13:21:16  8  reduced to a judgment on the record.  For the purposes

13:21:24  9  of filing the notice of appeal, because it happens to be

13:21:28  10  during this holiday season, should Mr. Crim not be

13:21:32  11  available to file that notice, present counsel are

13:21:38  12  authorized to file it on his behalf.

13:21:46  13          I'll order that my statement of reasons for

13:21:52  14  sentencing be provided to the Bureau of Prisons and to

13:21:56  15  the probation officer in this district.

13:22:02  16          Is there anything further from the

13:22:04  17  government.

13:22:04  18          MS. DUSTIN:  Yes, Your Honor.  The

13:22:06  19  government would request the judgment commitment order

13:22:08  20  in this case not be filed until after the forfeiture

13:22:10  21  hearing.

13:22:12  22          THE COURT:  That request is granted, of

13:22:14  23  course, and that forfeiture hearing has been set, I

13:22:24  24  believe, for next week.

13:22:30  25          MR. HELMICK:  Next Tuesday at 2:00 p.m.

Exhibit A, p. 31

13:22:32  1          THE COURT:  That's the 28th of December.   I

13:22:42  2  will withhold filing that until after the forfeiture

13:22:44  3  hearing has been concluded.  And, of course, counsel

13:22:48  4  will continue through at least that forfeiture hearing.

13:22:54  5          MR. HELMICK:  Your Honor, may I ask the

13:22:56  6  Court do a separate judgment entry with regard to Mr.

13:22:58  7  Crim's appointment for purposes of the appeal?  I know,

13:23:02  8  knowing Gary, he would be anxious to come and meet Mr.

13:23:06  9  Wheeler, as time permits, sooner.   Is it possible for

13:23:10  10  us to do that separate from the judgment of sentencing?

13:23:14  11          THE COURT:  Yes.  We'll do that

13:23:16  12  immediately.  You understand ordinarily the Court of

13:23:20  13  Appeals makes those appointments.  But because of the

13:23:24  14  request made, I will make that appointment.   And if it

13:23:28  15  is necessary, the Court of Appeals will consider that

13:23:32  16  appointment as well.

13:23:36  17          Other than that, is there anything further

13:23:38  18  with regard to the sentence or anything else before we

13:23:42  19  adjourn?

13:23:42  20          MS. DUSTIN:  No, Your Honor.

13:23:44  21          MR. HELMICK:  No, Your Honor.

13:23:44  22          THE COURT:  Thank you.   That concludes this

13:23:46  23  hearing.

13:24:14  24          The Court was mistaken and did, in fact,

13:24:18  25  have and has reviewed in full the presentence report of

13:24:28    1    December 8, 2004, but mistakenly pulled from the file at

13:24:36    2    the beginning of this hearing the August, 2004 report.

13:24:48    3                 (Adjourned at 1:24 p.m.)

           4                         - - -

           5                  **C E R T I F I C A T E**

           6

           7       I certify that the foregoing is a correct transcript

           8    from the record of proceedings in the above-entitled

           9    matter.

          10

          11    _____              _____

          12    Tracy L. Spore, RMR, CRR                  Date

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25