IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:03-CR-00739 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | <u>GOVERNMENT'S MOTION FOR LEAVE</u> |
| | ) | <u>TO RESPOND TO DEFENDANT'S</u> |
| JAMES "FRANK" WHEELER, | ) | <u>REPLY IN SUPPORT OF HIS  FIRST</u> |
| | ) | <u>STEP ACT MOTION FOR REDUCTION</u> |
| Defendant. | ) | <u>IN SENTENCE</u> |

Defendant Wheeler filed a reply on May 19, 2020, to the government's supplemental response opposing compassionate release under the First Step Act.  (R. 2283: Def.'s Reply; R. 2282: Govt's Response).  The government's response addressed only procedural law and Wheeler's failure to exhaust administrative remedies.  Nevertheless, the government asked the Court to allow it to address the merits of Wheeler's claims should he exhaust administrative remedies regarding the COVID-19 virus.  (R. 2282: Govt's Response, pg. 7, ¶ 3, PageID 7476).

Now Wheeler argues that his COVID-19 claim is not newly raised but is merely an additional medical reason to grant his original First Step Act motion, and that he does not need to exhaust administrative remedies with the Bureau of Prisons ("BOP") before presenting this issue to the Court.  Courts presented with this issue, however, have held otherwise.  Section 3582(c)(1)(A) is clear that a defendant must give the BOP 30 days to respond to an inmate's request for compassionate release before he can bring a judicial motion.

An inmate cannot revive a pre-COVID request for compassionate release to comply with the 30-day requirement.  For example, an inmate housed at the BOP's Federal Medical Center

("FMC") Carswell had asked the warden 15 months ago to grant compassionate relief based on medical circumstances, but the BOP denied her request because her medical records did not indicate that she met the medical criteria: "a life expectancy of eighteen months or less" or an end-of-life "trajectory."  Nearly a year later, she moved the district court for a sentence reduction based on her prior cancer diagnosis, adding as a fact that she is at high risk of contracting COVID-19 while in custody.  United States v. Mogavero, 2020 WL 1853754, No. 2:15CR74 (D. Nev. April 13, 2020).  Mogavero acknowledged that her BOP providers have not given her an end-of-life trajectory, so she argued that there was a grave risk that, should the virus infiltrate Carswell, it may amount to a swift death sentence for her considering her severely compromised health.  Id. at *3 (internal quotation marks omitted).  The court determined that her earlier request was based on medical information that appeared to be outdated, and that it did not mention COVID-19 concerns, which were central to her newly-filed judicial motion.  Id. at *2.  Therefore, the court denied her motion.  It wrote:  "Mogavero's motion is based on cancer plus COVID-19 exposure risks—and not merely her cancer diagnosis—*but this new calculus was not presented to the warden*.  Mogavero has thus failed to properly exhaust the administrative process with the warden before submitting this motion, and this deficiency alone justifies denying her motion."  Id. at *2 (emphasis added).  The court explained why exhaustion through the BOP was paramount.

> Exhaustion would have served a key purpose in this case in particular.  The BOP is uniquely suited to understand Mogavero's current health and circumstances relative to the rest of the prison population and identify extraordinary and compelling reasons for her release.  It would have access to her most up-to-date medical information to do so, and *it would know the particular COVID-19 risks that she faces because it is aware of the protocols being implemented at the medical facility she is housed at.*

Id., n. 19 (emphasis added).  The BOP did not have the opportunity to review her request in conjunction with the directives it has taken to protect inmates from the COVID-19 virus.

2

Similarly, the district court in the Eastern District of Michigan held that there was no evidence the inmate had exhausted his administrative remedies requirement when his previous motion for compassionate release did not mention the COVID-19 concerns.  United States v. Walls, 2020 WL 1934963, No. 92-CR-80236 (E.D. Mich. April 22, 2020).  The court held, "Even if the defendant had exhausted the administrative remedies in earlier years, that filing predated both the COVID-19 crisis and the new directives under which the Bureau of Prisons is now operating in response to the pandemic.  It did not address the combination of the COVID-19 pandemic and his various ailments."  Id. at *3.  The court held that any previous motion for compassionate release which did not mention the COVID-19 concerns does not satisfy 18 U.S.C. § 3582(c)(1)(A)'s requirements because ""[p]roper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden."  Id. at *3, quoting Mogavero, 2020 WL 1853754 at *2.

The Walls court concluded that because the defendant's claim for relief in his latest motion is premised in part upon the health risks posed to him due to COVID-19, the defendant must first exhaust the channels specifically created within the BOP and required by § 3582(c)(1)(A).  Id.  See also United States v. Valdes, 2020 WL 2475792, No. 15CR2822, *2-*3 (S.D. Calif. May 18, 2020) (Defendant has not met his exhaustion requirement because his latest request to the BOP does not present all the same factual bases for the compassionate-release request to the warden as he presented to the court).

Wheeler nevertheless argues that this court may ignore the exhaustion requirement in light of the crisis presented by the coronavirus pandemic.  That is incorrect.  While judicially created exhaustion requirements may sometimes be excused, it is well settled that a court may not ignore a statutory command such as that presented in Section 3582(c)(1)(A).

The Supreme Court recently reaffirmed that principle in Ross v. Blake, 136 S. Ct. 1850 (2016), in which the Court rejected a judicially created "special circumstances" exception to the exhaustion requirement stated in the Prison Litigation Reform Act of 1995 (PLRA). That Act mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). Rejecting the "freewheeling approach" adopted by some courts of appeals, under which some prisoners were permitted to pursue litigation even when they had failed to exhaust available administrative remedies, Ross, 136 S. Ct. at 1855, the Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, id. at 1856. The Court stated:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. See McKart v. United States, 395 U.S. 185, 193 (1969) ("The doctrine of exhaustion of administrative remedies . . . is, like most judicial doctrines, subject to numerous exceptions"). But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.

Id. at 1857.

That rule plainly applies to the statutory text here. Section 3582(c)(1)(A) unambiguously permits a motion to the court only "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[1] Wheeler cannot waive the administrative process in the present pending motion.

---

[1] Unlike the exhaustion provision in Ross, which required only exhaustion of "available" administrative remedies, 136 S. Ct. at 1858, the compassionate release statute contains no such exception.

Based on the foregoing caselaw, Wheeler is not entitled to graft a COVID-19 claim onto his pending First Step Act motion because he has failed to properly exhaust that issue administratively with the BOP.  The BOP has not had the opportunity to review Wheeler's medical claims in conjunction with the protocols it has established to protect inmates from the COVID-19 virus within its institutions.  The government reiterates that Wheeler should present this claim first to the BOP, and wait until the BOP has either decided the issue, or 30 days have elapsed without a BOP resolution, before bringing the COVID-19 claims before this Court.  Moreover, he will not be unduly prejudiced because other inmates are in the same procedural posture, i.e., seeking judicial relief from the courts based on COVID-19 prior to requesting administrative relief with the BOP.

In its previous responses, the government addressed only the procedural aspects of Wheeler's claims, and not their merits.  In its first response where Wheeler claimed that his prior felony drug conviction no longer counted as an enhancement under the First Step Act, the government argued that that provision was not retroactive.  In its second response, the government explained that Wheeler had not filed a COVID-19 medical request with the BOP or otherwise exhausted his administrative remedies before raising that issue with this Court.

Accordingly, the government requests that this Court: (1) deny Wheeler's motion under the First Step Act because its revised definition of a prior felony drug conviction for enhancement purposes is not retroactive prior to December 21, 2018; and (2) order Wheeler to present his COVID-19 request for compassionate release to the BOP and exhaust his First Step Act administrative remedies before presenting this issue judicially to the Court.

If, however, the Court finds that Wheeler does not need to administratively present his COVID-19 claim to the BOP, this Court should have more substantive information before considering the merits of Wheeler's claims.  The government will then need time to locate and

5

provide the Court and opposing counsel relevant documents that are not available online, such as Wheeler's presentence report and sentencing hearing transcript, as well as obtain a declaration from a BOP representative on Wheeler's medical status.  Therefore, the government would request leave to file a surreply discussing Wheeler's medical claims, the 18 U.S.C. § 3553(a) sentencing factors, and whether Wheeler would present a danger if granted compassionate release, as preserved in its prior response.  (R. 2282: Govt's Response, pg. 7, ¶ 3, PageID 7476).

          Respectfully submitted,

          JUSTIN E. HERDMAN
          United States Attorney

By:   /s/ Ava R. Dustin
      Ava R. Dustin (OH: 0059765)
      Assistant United States Attorney
      Four Seagate, Suite 308
      Toledo, OH 43604
      (419) 259-6376
      (419) 259-6360 (facsimile)
      Ava.Rotell.Dustin@usdoj.gov

### CERTIFICATE OF SERVICE

    I hereby certify that on this __22nd__ day of May, 2020, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

Jeffrey B. Lazarus
Assistant Federal Public Defender
1660 West Second Street, Suite 750
Cleveland, OH 44113
   Attorney for Defendant James Lee "Frank" Wheeler

          /s/   Ava R. Dustin
          Ava R. Dustin
          Assistant U.S. Attorney