# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 3:03-CR-739 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE JAMES G. CARR |
| vs. | : | |
| | : | **RENEWED MOTION FOR SENTENCE** |
| JAMES LEE WHEELER, | : | **REDUCTION UNDER 18 U.S.C.** |
| | : | **§ 3582(c)(1)(A)(i) FOR** |
| Defendant. | : | **COMPASSIONATE RELEASE DUE TO** |
| | : | **COVID-19 CIRCUMSTANCES** |

The defendant, James Lee Wheler, by and through counsel, previously filed a motion for compassionate release. Dkt. 2278; Dkt. 2281. This Court dismissed his petition because he failed to exhaust administrative remedies. Dkt. 2288. Now that he has fully exhausted his administrative remedies, he renews his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

          Respectfully submitted,

          STEPHEN C. NEWMAN
          Federal Public Defender
          Ohio Bar: 0051928

          */s/ Jeffrey B. Lazarus*
          JEFFREY B. LAZARUS
          Assistant Federal Public Defender
          Ohio Bar: 0079525
          1660 West Second Street, Suite #750
          Cleveland, OH 44113
          (216)522-4856 Fax:(216)522-4321
          E-mail: jeffrey_lazarus@fd.org

          Attorney for James Wheeler

**MEMORANDUM IN SUPPORT**

**I.     Introduction and Procedural History**

The instant motion renews Mr. Wheeler's request for compassionate release now that he has fully exhausted his administrative remedies. Portions of the instant motion mirrors his previously-filed supplemental motion for sentence reduction. Dkt. 2281.

On April 8, 2003, the grand jury returned an indictment charging James Wheeler and 37 other co-defendants with offenses related to racketeering (RICO) violations, a drug conspiracy, and firearms offenses. Dkt. 1, PageID 1-102. Specifically, James Wheeler was charged with four counts, specifically in Count 1, racketeering, in violation of 18 U.S.C. § 1962(c); Count 2, RICO conspiracy, in violation of 18 U.S.C. § 1962(d); Count 3, drug trafficking conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and Count 4, conspiracy to carry or use firearms in relation to drug trafficking or crimes of violence, in violation of 18 U.S.C. § 924(o). The case was assigned to the Honorable David Katz.

During the pendency of the case, the government filed an enhancement information pursuant to 21 U.S.C. § 851, claiming his two Indiana convictions, from 1972, for felony drug possession were each prior felony drug convictions, which increased Mr. Wheeler's statutory penalties. Dkt. 916, Information, PageID 301-05. Mr. Wheeler exercised his right to trial.

Prior to trial, during trial, and after trial, a main point of contention by Mr. Wheeler was the fact that he had been charged and convicted of RICO violations in the Middle District of Florida in 2002. In that case, on January 30, 2004, Mr. Wheeler received a sentence from the Florida federal court for 199 months. PSR at ¶ 103. In the instant case, he filed various motions to dismiss the instant charges due to Double Jeopardy violations. Dkt. 973, Motion to Dismiss; Dkt. 1101,

Amended Motion to Dismiss; Dkt. 1110, Supplement to Motion. These motions were ultimately denied by the Court. Dkt. 1482, PageID 2721-28.

The jury found Mr. Wheeler guilty on Counts 1, 2 and 3; a Special Verdict form indicated the drug quantities to be 5 kilograms or more of cocaine and 100 kilograms but less than 1000 kilograms of marijuana. Dkt. 1161, Verdict, PageID 1806-07. Mr. Wheeler was found not guilty of Count 4. Dkt. 1161, PageID 1806.

The sentencing hearing was held on December 20, 2004. The sentencing transcript is not accessible on the court's online docket (ECF), and was attached to his previous sentence reduction motion, Dkt. 2281-1, PageID 7378-7410, and will be incorporated by reference. In accordance with the presentence report's findings, the district court found that, under the sentencing guidelines, Mr. Wheeler was a total offense level 36, Criminal History Category II, which corresponded to a guideline range of 210 to 262 months. Dkt. 2281-1, PageID 7389. The government, however, made objections to the presentence report's calculations. Specifically, the government sought for Mr. Wheeler to be deemed a career offender based on: 1) the 1972 Indiana drug possession conviction, and 2) the Florida federal RICO conviction. *Id.* at 7383. With the career offender designation, the government sought for Mr. Wheeler's sentencing guideline range to be 360 months to life, at total offense level 41, Criminal History Category VI. *Id.* The Court agreed with the government's conclusion that he was a career offender based on these two convictions, and concluded his guideline range was 360 months to life. *Id.* at 7396.

The government also claimed that under the § 851 notice, Mr. Wheeler was subject to a mandatory statutory life sentence. *Id.* at 7390. The Court seemed to agree, initially indicating "because the enhancements and notifications with regard to prior criminal activity were afforded

to the defendant under Section 851 of Title 21, it would therefore appear that a sentencing of life is mandatory." *Id.* at 7397. The Court then indicated:

> I also believe that it is clear to this judge that even if Mr. Wheeler were a guideline of 36 and a criminal history of two, this Court would sentence Mr. Wheeler to 262 months on Counts 1 and 3 to be served consecutively, and 20 years consecutively on Count 2. That's a total of in excess of 63 years.

*Id.* at 7397.

Defense counsel, in arguing for a favorable sentence, asked the Court to "consider some of the health problems [Mr. Wheeler] has experienced more recently at his current age of 62 years." *Id.* at 7398. The district court, detailed the facts surrounding the offense and that Mr. Wheeler was a good husband and father, but found no reason to downward depart from the guideline range. *Id.* at 7404. The district court imposed a sentence of life imprisonment on Count 1 and Count 3, which was to run consecutively to a sentence of 20 years on Count 2. Dkt. 1684, PageID 3240.

On August 1, 2008, the Sixth Circuit reversed Mr. Wheeler's convictions on Count 1 and Count 2, finding "the indictment for the substantive RICO and RICO conspiracy offenses violated the Double Jeopardy clause because of an earlier prosecution." Dkt. 1973, PageID 3890, *see also United States v. Wheeler*, 535 F.3d 446 (6th Cir. 2008). The Sixth Circuit affirmed the life sentence on Count 3. *Id.* Upon remand, on June 19, 2009, Judge Katz reimposed the life sentence on Count 3; Judge Katz found Mr. Wheeler's appearance was not required in reimposing the life sentence. Dkt. 2070, PageID 4333.

In the years since that time Mr. Wheeler has filed several motions to seek relief from his life sentence. He filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. Dkt. 2132. In this petition, he challenged his life sentence and the validity of the § 851 filing resulting in his life sentence. Dkt. 2132, PageID 6691-96. In their response, the government indicated that Mr. Wheeler was not given a mandatory life sentence but was given a life sentence under the

4

guidelines. Dkt. 2153, PageID 6950-51. The district court agreed, finding that Mr. Wheeler's only § 851 enhancement was his 1972 Indiana conviction for possession of drugs. Dkt. 2155, PageID 2155.

In 2014, Mr. Wheeler filed a motion for relief under one of the retroactive sentencing guidelines amendments. Dkt. 2223. While Mr. Wheeler had demonstrated U.S.S.G. Amendment 782 would have reduced his total offense level by two, from 41 to 39, his range still remained 360 months to life, and therefore the Court denied his motion. Dkt. 2227.

On March 26, 2020, Mr. Wheeler filed a pro se motion requesting this Court grant him a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 2278. In this motion, Mr. Wheeler provides several exhibits, including his medical records from the institution, his rehabilitative efforts, and his requests to the Warden. Dkt. 2278, PageID 7320-39. These will be discussed in greater detail *infra*. With the assistance of counsel, Mr. Wheeler filed a supplement to his motion. Dkt. 2282. The government filed a response, arguing that Mr. Wheeler failed to exhaust his administrative remedies. Dkt. 2282. On July 28, 2020, this Court dismissed the motion without prejudice, providing Mr. Wheeler an opportunity to fully exhaust his administrative remedies. Dkt. 2288.

## II. Mr. Wheeler has fully exhausted his administrative remedies

Upon the government's response alleging that Mr. Wheeler had not fully exhausted his administrative remedies, Mr. Wheeler took steps to exhaust. He has now fully exhausted, and the documents detailing his exhaustion efforts are attached as Exhibit A. On June 8, 2020, Mr. Wheeler made a new request of the Warden for sentence reduction. Ex. A, pp. 1-2. His request of the Warden included the BP-8 form for inmates to fill out and raised issues related to COVID-19 and his health issues. On June 16, 2020, the Warden denied Mr. Wheeler's request for sentence

5

reduction. Ex. A, pp. 3-4. Included in the Warden's response was the BOP's internal checklist of factors to consider. Ex. A, pp. 5-6. While finding him ineligible, the response did indicate that Mr. Wheeler has had "excellent institutional conduct," and that he has a PATTERN Risk Score of "minimum." Ex. A, pp. 5-6

After receiving the denial by the Warden, Mr. Wheeler filed an administrative appeal to the Warden. This written appeal was submitted on the BP-9 form, and also included four pages of responses to the denial. Ex. A, pp. 7-11. The Warden denied his administrative appeal on June 30, 2020. Ex. A, pp. 12-13.

Since Mr. Wheeler has now fully exhausted his administrative remedies, and because 30 days have passed since he submitted his request to the Warden, he has fully exhausted. This Court may now address the merits of his request for sentence reduction.

### III. Mr. Wheeler is a medically-vulnerable inmate who suffers from multiple health issues that place him at high-risk for complications if he contracts COVID-19

This Court is well aware of the specifics related to the COVID-19 pandemic, as they were detailed in Mr. Wheeler's opening motion, and they need not be repeated in full. As of August 5, 2020, there are 1,807 active cases of COVID-19 among the BOP inmates, and 751 staff members; to date 108 BOP inmates have died as a result of COVID-19.[1] The rates of rising COVID-19 infections in the BOP are significantly higher than the rest of the United States population and the rest of the world:

---

[1] *https://www.bop.gov/coronavirus/* (updating daily)



The BOP facility where Mr. Wheeler is currently incarcerated, FCI Terre Haute, is on total lockdown due to the pandemic and quarantine procedures. As of right now, FCI Terre Haute, reports one active positive case of COVID-19, but given the testing deficiencies, it cannot be said that this number is accurate. Several institutions have quickly been overrun with infections due to the BOP's inability to adequately address the necessary interventions.

Much like many of the inmates who have died in the BOP from COVID-19, Mr. Wheeler presents a number of health issues that place him at high risk. The Centers for Disease Control (CDC) has identified a number of factors that place a person at high-risk if they contract COVID-19. One of these is age, and being 77 years old, Mr. Wheeler is at high risk by his age alone.[2] The CDC further provides medical conditions that place a person at high risk if they contract COVID-19.[3]

---

[2] *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html*

[3] *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html*

7

Defense counsel has received all of Mr. Wheeler's medical records from the BOP, which consists of 195 pages; the most relevant records are attached to this motion as Exhibit B. A list of all the health issues Mr. Wheeler suffers from is attached as Ex. B, pp. 1-5. A list of all the medications he takes covers five pages of the records. Ex. B, pp. 6-10. More specifically, Mr. Wheeler suffers from heart issues and is being treated for an aortic aneurysm, and a heart murmur. In 2019, Mr. Wheeler has a mass on his kidneys, and was given an ultrasound. The ultrasound discovered the aortic aneurysm. Ex. B, pp. 11-12. In 2014, Mr. Wheeler was prescribed anticoagulants for his heart, and is seen every year by a specialist for his aortic aneurysm. Ex. B, pp. 13-14. An ultrasound in May of 2020 was done and showed the aneurysm still remains. Ex. B, p. 15. The CDC lists heart conditions like Mr. Wheeler's as a pre-existing condition that makes him particularly susceptible to fatal problems from COVID-19.

Furthermore, the prison is treating Mr. Wheeler for diabetes, and is receiving prescriptions for metformin. Ex. B, pp. 2, 9, 17. Diabetes is a condition that places people at high-risk for COVID-19. *See supra* Note 3. In fact, other federal courts have granted compassionate release motions for inmates who suffer from diabetes.[4]

---

[4] *United States v. Mattingly*, 6:15-CR-00005, 2020 WL 2499707 (W.D. Va. May 14, 2020); *United States v. Lopez*, 1:18-CR-02846, 2020 WL 2489746 (D. N.M. May 14, 2020); *United States v. Barber*, 6:18-CR-446, 2020 WL 2404679 (D. Or. May 12, 2020); *United States v. Rivernider*, 3:10-CR-222, 2020 WL 2393959 (D. Conn. May 12, 2020); *United States v. Hunt*, 2:18-CR-20037, 2020 WL 2395222 (E.D. Mich. May 12, 2020); *United States v. Ramirez*, 1:17-CR-10328, 2020 WL 2402858 (D. Mass. May 12, 2020); *United States v. Al-Jumail*, 2:12-CR-20272, 2020 WL 2395224 (E.D. Mich. May 12, 2020); *United States v. Simpson*, 3:11-CR-832, 2020 WL 2323055 (N.D. Cal. May 11, 2020); *United States v. Reddy*, 2:13-CR-20358, 2020 WL 2320093 (E.D. Mich. May 11, 2020); *United States v. Connell*, 18-CR-281, 2020 WL 2315858 (N.D. Cal. May 8, 2020); *United States v. Amarrah*, 5:17-CR-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020); *United States v. Quintero*, 6:08-CR-06007, 2020 WL 2175171 (W.D. N.Y. May 6, 2020); *United States v. Howard*, 4:15-CR-018, 2020 WL 2200855 (E.D. N.C. May 6, 2020); *United States v. Pabon*, 2:17-CR-165, 2020 WL 2112265 (E.D. Penn. May 4, 2020); *United States v. Lacy*, 3:15-CR-30038, 2020 WL 2093363 (C.D. Ill. May 1, 2020); *United States v. Ardila*, 3:03-CR-00264, 2020 WL 2097736 (D. Conn. May 1, 2020).

He also suffers from high blood pressure, for which he is prescribed hydrochlorothiazide; this is another risk factor for COVID-19. Ex. B, pp. 1, 8, 16. A number of federal courts have granted compassionate release motions for inmates who suffered from high blood pressure.[5]

Additionally, Mr. Wheeler is being treated for emphysema, for which he is prescribed several inhalers (cromolyn and albuterol). Ex. B, pp. 1, 6-7. Respiratory conditions are another ailment that places him at greater risk if he contracts COVID-19. A number of federal courts have granted compassionate releases to inmates who suffer from similar respiratory issues, like asthma or chronic obstructive pulmonary disorder (COPD).[6] It should also be noted that Mr. Wheeler

---

[5] *United States v. Handy*, 3:10-CR-128, 2020 WL 2487371 (D. Conn. May 14, 2020); *United States v. Mattingly*, 6:15-CR-05, 2020 WL 2499707 (W.D. Va. May 14, 2020); *United States v. Lopez*, 1:18-CR-2846, 2020 WL 2489746 (D. N.M. May 14, 2020); *United States v. Gutman*, 1:19-CR-69, 2020 WL 2467435 (D. Md. May 13, 2020); *United States v. Sedge*, 1:16-CR-537, 2020 WL 2475071 (E.D. N.Y. May 13, 2020); *United States v. Barber*, 6:18-CR-446, 2020 WL 2404679 (D. Or. May 12, 2020); *United States v. Rivernider*, 3:10-CR-222, 2020 WL 2393959 (D. Conn. May 12, 2020); *United States v. Ramirez*, 1:17-CR-10328, 2020 WL 2402858 (D. Mass. May 12, 2020); *United States v. Ullings*, 1:10-CR-406, 2020 WL 2394096 (N.D. Ga. May 12, 2020); *United States v. Valencia*, 1:15-CR-163, 2020 WL 2319323 (S.D. N.Y. May 11, 2020); *United States v. Foreman*, 3:19-CR-62, 2020 WL 2315908 (D. Conn. May 11, 2020); *United States v. Reddy*, 2:13-CR-20358, 2020 WL 2320093 (E.D. Mich. May 11, 2020); *United States v. Pena*, 1:15-CR-551, 2020 WL 2301199 (S.D. N.Y. May 8, 2020); *United States v. Connell*, 18-CR-281, 2020 WL 2315858 (N.D. Cal. May 8, 2020); *United States v. Vo*, 15-CR-310, 2020 WL 2300101 (N.D. Cal. May 7, 2020).

[6] *United States v. Lowrell Neal*, Case No. 5:15-CR-339, Dkt. 594 (N.D. Ohio, June 2, 2020) (Judge Gwin granting reduction to inmate suffering from asthma and sickle beta thalassemia); *United States v. Williams*, 3:17-CR-121, 2020 WL 1974372 (D. Conn. Apr. 24, 2020) (granting compassionate release to a defendant with asthma, hypertension, a history of kidney issues, and other medical conditions); *United States v. Gorai*, 2:18-CR-220, 2020 WL 1975372 (D. Nev. Apr. 24, 2020) (granting compassionate release to a 34-year-old defendant with asthma as the only listed medical condition); *United States v. Park*, 16-CR-473, 2020 WL 1970603 (S.D. N.Y. Apr. 24, 2020) (granting compassionate release to a 44-year-old defendant with asthma); *United States v. Tillman*, 1:07-CR-00197, 2020 WL 1950835 (W.D. Mich. Apr. 23, 2020) (granting compassionate release to a defendant with asthma and diabetes); *United States v. Coker*, 3:14-CR-085, 2020 WL 1877800, at *4 (E.D. Tenn. Apr. 15, 2020) (finding "the defendant's combination of medical conditions, particularly her COPD and extensive need for oxygen therapy, to be extraordinary and compelling reasons justifying a sentence reduction."); *United States v. Miller*, 16-CR-20222, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) (granting compassionate release

previously had colon cancer. Ex. B, p. 2. His most recent colonoscopy found he had fifteen polyps in his colon. Ex. B, p. 17.

Since the begin of pandemic Mr. Wheeler has developed tremendous anxiety and depression over the fear of contracting COVID-19. Given his past and current health issues, he is gravely afraid of what might happen to him if he contracts COVID-19. He is greatly concerned about the institution's inability to keep him separated from others, but further that if he does get sick, that the institution lacks the ability to properly meet his medical needs. He therefore requests this Court permit him to be released on home confinement. Given these circumstances, Mr. Wheeler requests this Court grant him a compassionate release as permitted by 18 U.S.C. § 3582(c)(1)(A). These circumstances demonstrate extraordinary and compelling circumstances to justify a reduction in his custodial sentence.

### IV.     Legal Standards for Seeking Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)

Prior to 2018, a district court could only receive a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), known as a "compassionate release" upon a motion from the Warden of the prison where the defendant was being held. The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(l)(A) to allow district courts to modify sentences of imprisonment upon motion by the defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or 30 days from the receipt of such

---

where the defendant had a history of COPD, among other conditions); *United States v. McCarthy*, 3:17-CR-0230, 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (granting compassionate release to a defendant with COPD as the disease "substantially increase[s] his risk of severe illness if he contracts COVID-19."); *United States v. Gonzalez*, 2:18-CR-0232, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020) (granting compassionate release to a woman who suffered from COPD after having served 2 months of a 10-month term).

a request by the warden of the defendant's facility, whichever is earlier." § 603(b), 132 Stat.5 194, 5239 (codified at 18 U.S.C.§ 3582(c)(l)(A)).

Section 3582(c)(1)(A)(i) authorizes the modification of a sentence of imprisonment if "extraordinary and compelling reasons warrant such reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," as set out in United States Sentencing Guideline § 1B1.13. This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment, after consideration of the factors set forth in section 3553(a) to the extent they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction[.]" Pursuant to the requirement of 28 U.S.C. § 994(t), as authorized by 28 U.S.C. § 994(a)(2)(C), the Sentencing Commission promulgated a policy statement that sets out the criteria for a reduction in sentencing, which, as set forth in U.S.S.G. § 1B1.13 includes, in relevant part:

(1)(A)  extraordinary and compelling reasons warrant the reduction;

(2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)  the reduction is consistent with this policy statement.

Further, the application note, 1B1.13, Application Note 1(A) provided insight into what constitutes "extraordinary and compelling reasons," which include the defendant's medical condition, and further detailed as:

(ii)  The defendant is:

(I)  suffering from a serious physical or medical condition,

(II)  suffering from a serious functional or cognitive impairment, or

11

> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Following the passage of the First Step Act of 2018, a number of other federal district courts have granted sentence reductions under § 3582(c)(1)(A).

COVID-19 is a game-changer, which warrants consideration for a sentence reduction for Mr. Wheeler. The plethora of cases listed above, in footnotes four through six, are all cases in which federal courts found the circumstances in the BOP due to COVID-19 and the inmate's own personal health issues constituted extraordinary and compelling reasons to grant a sentence reduction. Mr. Wheeler presents a multitude of health issues and asks this Court to find his health condition is significant enough, and the risk posed to him by COVID-19 is significant enough, to warrant a reduction in sentence.

**V.    Mr. Wheeler is no longer a danger to society and his health condition warrants a reduction in light of the COVID-19 pandemic and the poor conditions in the BOP**

The government's response to Mr. Wheeler's original motion, Dkt. 2285, claims that Mr. Wheeler remains a risk to society. It cannot be denied that in 2003, when Mr. Wheeler stood trial, he was a danger to society, for which he was sentenced to life in prison. That, however, was seventeen years ago. The government relies on his prior offenses, retelling the facts of prior offenses from 1981, 1983, and 1994. Dkt. 2285, PageID 7504-05. The government has not presented any evidence that he is ask to society <u>today</u>. In fact, he is not a risk, and over the last seventeen years of incarceration, he has demonstrated good behavior and signs towards full rehabilitation. Even though he has languished under a life sentence and been housed at institutions containing dangerous inmates, Mr. Wheeler has still maintained positive conduct. In support of

this, the attached documents by the BOP make clear that Mr. Wheeler has had "excellent institutional conduct," and that he has a PATTERN Risk Score of "minimum." Ex. A, pp. 5-6

Let us not forget that the instant offense of conviction does not involve any acts of violence. Mr. Wheeler's conviction in Counts One through Three involve drug trafficking and RICO violations related to drug trafficking. As detailed in the presentence report, Dkt. 2285, pp. 9-14, the manner and means of the RICO conspiracy, as well as the overt acts, all concern drug trafficking conduct. Regarding the count involving firearms in relation to a crime of violence or drug trafficking crime, Mr. Wheeler was acquitted (Count Four).

Nonetheless, district judges within the Northern District of Ohio have granted sentence reductions for inmates whose offense and criminal history is arguably more serious than Mr. Wheeler's. Chief Judge Patricia Gaughan recently granted a compassionate release motion for a defendant who had been deemed a career offender and was convicted of two counts of possession of a firearm in furtherance of drug trafficking crime (§ 924(c)). *See United States v. McClellan*, Case No. 1:92-CR-268, Dkt. 221 (N.D. Ohio, June 3, 2020). Judge Solomon Oliver reduced the sentence of an inmate convicted of "multiple counts of armed bank robbery and firearms charges" (§ 924(c)) for which he originally received a total sentence of 627 months. *United States v. Sparrow*, Case No. 5:98-CR-126, Dkt. 122 (N.D. Ohio, June 18, 2020).

Further, other federal judges have granted sentence reductions for defendants convicted of offenses of violence and offenses involving a firearm. *See e.g., United States v. Copeland*, Case No. 2:05-CR-135, Dkt. 662 (D.S.C. March 24, 2020) (granting a sentence reduction for defendant who had been found to be an Armed Career Criminal and sentenced to life in prison due to his prior drug convictions); *United States v. Brown*, 2:18-CR-360, Dkt. 35 (N.D. Ala. May 22, 2020) (granting compassionate release of defendant convicted of use of a firearm in connection with drug

13

trafficking); *United States v. Parker*, Case No. 2:98-CR-749, 2020 WL 2572525, at *14 (C.D. Cal. May 21, 2020) (granting compassionate release, notwithstanding defendant's "leadership of a drug distribution network his abuse of a position of trust, and his submitting a false tax return," and fact that offense involved weapon); *United States v. Pena*, Case No. 15-CR-551, 2020 WL 2301199, at *1 (S.D.N.Y. May 8, 2020) (granting compassionate release of defendant who helped to organize an armed robbery); *United States v. Almontes*, Case No. 3:05-CR-58, 2020 WL 1812713, at *1 (D. Conn. Apr. 9, 2020) (granting compassionate release of defendant with drug and Section 924(c) conviction, who had been deemed a career offender based on prior assault and robbery convictions); *United States v. McCarthy*, 2020 WL 1698732, at *1 (D. Conn. Apr. 8, 2020) (granting compassionate release of defendant convicted of armed bank robbery); *United States v. Williams*, Case No. 3:04-CR-95, Dkt. 91 (N.D. Fla. Apr. 1, 2020) (finding compassionate release appropriate for defendant convicted of armed bank robbery and brandishing a firearm during a crime of violence who had a prior criminal history including "six prior convictions for armed bank robbery and three prior convictions for bank robbery"); *United States v. Rodriguez*, Case No. 2:03-CR-271, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020) (granting compassionate release of defendant whose "criminal history involve[d] a series of convictions for drug dealing" and case involved firearms offenses); *United States v. Scott*, Case No. 7:98-CR-79, Dkt. 317 (E.D.N.C. Feb. 4, 2020) (granting compassionate release of defendant serving a lengthy sentence for Hobbs Act robbery and multiple counts of using and carrying a sawed-off shotgun and other firearms during and in relation to crimes of violence); *United States v. Mitchell*, Case No. 4:09-CR-26 (N.D. Fla. Feb. 3, 2020) (granting compassionate release of defendant who pled guilty to possessing a firearm in furtherance of drug distribution offense and was sentenced as an armed career criminal); *United States v. Peterson*, Case No. 7:12-CR-15, Dkt. 63 (E.D.N.C. June 4, 2019) (granting

14

compassionate release of defendant whose offenses included discharging a firearm in the furtherance of a drug trafficking offense).

Thus, while Mr. Wheeler's offense is concerning and he was sentenced to life in prison seventeen years ago, as it stands today, he is no longer a danger to society. Given his health issues and the circumstances of the pandemic in the BOP, this Court should grant him a reduction.

**VI.  Changes to Mr. Wheeler's statutory and guideline range since his original sentence**

Since Mr. Wheeler was sentenced, a number of changes to the law have occurred, both the statutory range and sentencing guidelines range to which he was subjected. Through these changes to the law, it cannot be denied that if Mr. Wheeler was convicted of the same charges today, under current law, he would not be facing the same statutory penalties or same guideline range. More specifically, Mr. Wheeler's statutory range was 20 years to life under 21 U.S.C. §§ 841(b)(1)(A), 846 and 851. He was also found to be a career offender, which placed his total offense level at 41, Criminal History Category VI, and a sentencing guideline range of 360 months to life. Dkt. 2281-1, PageID 7396. Mr. Wheeler would be subject to lesser penalties if convicted today, and he asks this Court to consider this fact for the instant motion for relief.

The fact that Mr. Wheeler's statutory and guideline ranges have been lowered is an appropriate consideration for this Court in determining whether a compassionate release is warranted under 18 U.S.C. § 3582(c)(1)(A). *See e.g., United States v. Maumau*, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020) (granting a compassionate release, and reducing defendant's 55-year sentence to time served as defendant would not receive the same sentence due to recent changes in law under 18 U.S.C. § 924(c)); *United States v. Young*. 2020 WL 1047815 (M.D.Tenn. March 4, 2020) (finding extraordinary and compelling circumstances in defendant's health issues and the disparity between his sentence and the sentence he would receive under current law); *United States*

*v. O'Bryan*, 2020 WL 869475, *1 (D.Kan. February 21, 2020) (granting reduction because of the § 924(c) sentence stacking, as defendant's 25-year sentence would now be ten); *United States v. Urkevich*, 2019 WL 6037391, *2 (D.Neb. November 14, 2019) (granting reduction because of the § 924(c) sentence stacking, as defendant's 848-month sentence would be 368 months today); *United States v. Brown*, 411 F. Supp. 3d 446, 453 (S.D. Iowa 2019) ("a district court assessing a compassionate release motion may [ ] consider the resulting sentencing disparity when assessing if there are "extraordinary and compelling reasons" supporting release.").

While Mr. Wheeler was subject to a statutory range of 20 years to life at the time of his offense, today his offense would instead carry a statutory term of ten years to life. Both then, and now, his offense was under 21 U.S.C. § 841(b)(1)(A), but the statutory ranges have been altered by the First Step Act, passed in December of 2018. Section 401(a)(2) of the First Step Act, 132 Stat. 5194, 5220, altered the mandatory minimum penalties set forth in 21 U.S.C. § 841(b)(1)(A). One thing the statute did was change the twenty-year mandatory minimum to fifteen years for a conviction under § 841(b)(1)(A) with one qualifying prior conviction under § 851.

Secondly, the First Step Act changed what qualifies as a conviction that can enhance the statutory range. Prior to the First Step Act, under § 841(b)(1)(A) a sentence of ten years to life could be escalated to twenty years to life if the defendant had a previous conviction for a "felony drug offense." 21 U.S.C. 841(b)(1)(A). This is how Mr. Wheeler's statutory range was escalated from 10-to-life to 20-to-life – due to his 1972 Indiana conviction for possession of drugs. PSR at ¶ 92. Section 401(a) of the First Step Act removed the term "felony drug offense" and replaced it with "serious drug felony" 132 Stat. at 5220. The term "serious drug felony," as defined by 18 U.S.C. § 924(e)(2)(A)(ii) is limited to drug offenses involving the "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." In other words, under

the First Step Act, only drug trafficking convictions can enhance a defendant's statutory range beyond the 10 years to life term under the current version of 21 U.S.C. § 841(b)(1)(A). Mr. Wheeler's statutory range was enhanced to 20 years to life because of his Indiana drug possession offense. PSR at ¶ 92. Because this offense if for drug possession, not trafficking, it would not qualify under today's laws as a "serious drug felony" and thus could not enhance Mr. Wheeler's statutory range. Thus, under current law, he would only be subject to a ten-year mandatory minimum under today's law. Mr. Wheeler asks this Court to consider this fact in determining whether he should receive a sentence reduction.

Mr. Wheeler's sentencing guideline range would also be significantly reduced if today's guidelines were applied. The presentence report initially found that Mr. Wheeler's criminal history score placed in Criminal History Category II. Dkt. 2281-1, PageID 7389; PSR at ¶ 111. At the sentencing hearing, however, the government sought to impose the career offender enhancement on Mr. Wheeler. Dkt. 2281-1, PageID 7383. The government claimed Mr. Wheeler's two predicate offenses to qualify him as a career offender were: 1) the 1972 Indiana drug possession conviction, PSR ¶ 92; and 2) the Florida federal RICO conviction, PSR ¶ 103. *Id.* The Court agreed, and in doing so, raised Mr. Wheeler's base offense level from 36 to 37, and also increased his Criminal History Category from II to VI, as required by U.S.S.G. § 4B1.1(b). Dkt. 2281-1, PageID 7396-97.

While the Court found his 1972 Indiana drug possession conviction was a qualifying career offender predicate, this conclusion was in error. A defendant is only a career offender if they have two prior convictions for a "controlled substance offense," as defined by U.S.S.G. § 4B1.2(b). *See* U.S.S.G. § 4B1.1. A "controlled substance offense" is limited to drug trafficking offenses, not drug possession offenses, as the Guidelines define the term as:

17

>an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Therefore, the Court erred in finding Mr. Wheeler's 1972 Indiana drug possession offense qualified as a career offender predicate. If resentenced today, the career offender guideline would not be applied. As such, Mr. Wheeler's base offense would be determined by U.S.S.G. § 2D1.1. Mr. Wheeler's offense involving 87 kilograms of cocaine and the corresponding amounts of marijuana and valium as set forth in the presentence report, PSR ¶ 57, equates to a converted drug weight of 17,400 kilograms. Under the current sentencing guidelines, this equals a base offense level of 34. U.S.S.G. § 2D1.1(c)(3) (converted drug weight between 10,000 kg and 30,000). With his four-level enhancement for his role, his total offense level would be 38. Applying his Criminal History Category II (since he would no longer be a career offender), the corresponding guideline range would be 262 to 327 months.

In total, under the current guidelines, Mr. Wheeler's range would no longer be 360 months to life, but be 262 to 327 months. Also he was sentenced in December of 2004, only a few months before *United States v. Booker*, 543 U.S. 220 (2005), was issued when the guidelines were mandatory; today sentencing courts consider varying downward from the now-discretionary guidelines. While the changes to the law, as set forth above, are significant, none of them provide independent grounds for relief in which Mr. Wheeler could obtain relief from his life sentence. These statutory and guidelines changes are not retroactive. This Court, however, has the power to consider these changes to the law in determining whether a sentence reduction is warranted under 18 U.S.C. § 3582(c)(1)(A). The compassionate release statute provides this Court with significant discretion to consider whatever may be relevant to Mr. Wheeler's continued incarceration.

The fact that he would likely not receive the same sentence today is a valid consideration, especially in conjunction with Mr. Wheeler's personal health issues and the COVID-19 pandemic that is greatly affecting our nation's prisons. In looking at the totality of these issues, there exists extraordinary and compelling reason to grant a compassionate release and permit the 77-year-old James Wheeler to serve the remainder of his sentence on home confinement.

**VII.    Mr. Wheeler's Letters of Support and Release Plan**

If this Court granted Mr. Wheeler the requested relief, he would go to live with his sister in East Blufton, Indiana, as a condition of his home confinement. *See also* Exhibit A, p. 2. If released, his primary objective would be to obtain the necessary medical care he needs to ensure his health and safety. Once he was stable, he would seek to find his own independent living arrangement where he could maintain his home confinement status.

To further demonstrate Mr. Wheeler's release plan efforts, he attaches to this motion Exhibit C, which consists of 32 pages of letters of support for Mr. Wheeler. Each of these letter demonstrate that Mr. Wheeler has significant contacts in the community, who are dedicated to assisting him with his transition back to the community. The first letter is by Matt Frank, the regional spokesman for the Outlaws Motorcycle Club. Ex. C, p. 1. Mr. Frank explains that Mr. Wheeler will not have any contact with his co-defendants or members of the Outlaws Motorcycle Club. He further that makes clear that all 36 of Mr. Wheeler's co-defendants have been released from prison and that none of them have violated their supervised release terms. Ex. C, p. 1. The remaining letters are all from friends of Mr. Wheeler who detail that he is no longer a threat to the community, that he has significant health issues, and a fear that COVID-19 will have serious consequences on Mr. Wheeler's health condition if he contracts the virus. All these letters request

leniency and that this Court reduce his life sentence. Ex. C, pp. 1-32. Mr. Wheeler asks this Court to consider these letters in evaluating his motion for compassionate release.

## VIII. Conclusion

For the foregoing reasons, James Wheeler requests this Court grant him a compassionate release as permitted by 18 U.S.C. § 3582(c)(1)(A). These circumstances demonstrate extraordinary and compelling circumstances to justify a reduction in his custodial sentence. He asks this Court to reduce his sentence to time served and that he immediately be placed on supervised release, with the condition he be placed on home confinement through the remainder of his custodial term.

    Respectfully submitted,

    STEPHEN C. NEWMAN
    Federal Public Defender
    Ohio Bar: 0051928

    */s/ Jeffrey B. Lazarus*
    JEFFREY B. LAZARUS
    Assistant Federal Public Defender
    Ohio Bar: 0079525
    1660 West Second Street, Suite #750
    Cleveland, OH 44113
    (216)522-4856   Fax:(216)522-4321
    E-mail: jeffrey_lazarus@fd.org

    Attorney for James Wheeler