IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 3:03-CR-00739 |
| | ) | |
| Plaintiff, | ) | Judge James G. Carr |
| | ) | |
| v. | ) | Government's Response in Opposition to |
| | ) | Defendant's Renewed First Step Act Motion |
| JAMES LEE "FRANK" WHEELER, | ) | under 18 U.S.C. § 3582(c)(1)(A) for |
| | ) | <u>Compassionate Release due to COVID-19</u> |
| Defendant. | ) | |

Wheeler filed a *pro se* motion for compassionate release based on extraordinary and compelling grounds on March 26, 2020, raising the amended definition of a prior "serious" felony drug conviction under 21 U.S.C § 841(b)(l)(a), citing Section 401 of the First Step Act of 2018.  (R. 2278: Mot., PageID 7301-38).  On May 5, 2020, the Federal Public Defenders Office supplemented Wheeler's *pro se* motion, adding a claim that the COVID-19 virus supported Wheeler's alleged medical claims for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  (R. 2281: Suppl., PageID 7349-7377).

After multiple filings from both parties, this Court denied with prejudice Wheeler's motion for First Step Act relief based on the changed definition of crimes that qualified for a sentence enhancement under § 851(a).  (R. 2288: Order, PageID 7739-40).  The Court, however, denied without prejudice his motion for compassionate release based on COVID-19, allowing him to resubmit once he exhausted his available administrative remedies.  (<u>Id.</u>, PageID 7740).

On August 6, 2020, Wheeler submitted a renewed motion for a sentence reduction (R. 2290 Renewed Mot., 7742-7823), with documentation that he had exhausted his administrative remedies (<u>Id.</u>, Ex. A, PageID 7762-74).  The government now renews its response in opposition.

Statement of the Case

In 1997, the FBI and state law enforcement agencies began an investigation into the Green region of the Outlaw Motorcycle Club ["OMC"], which consists of chapters in Dayton, Ohio; Fort Wayne, Indiana; Louisville, Kentucky; Indianapolis, Indiana; and Oklahoma City, Oklahoma. The investigation lead  a grand jury in the Northern District of Ohio to return a 40 count indictment in 2003 charging the defendants with various federal offenses, including Racketeer Influenced and Corrupt Organizations Act ["RICO"], drug trafficking, and firearms offenses.

Wheeler was formerly the head of the Indianapolis chapter and Green region of the OMC.  He later served as president of the entire international OMC organization.  Wheeler was charged in Count 1 with racketeering (RICO), in violation of 18 U.S.C. § 1962(c); Count 2 with RICO conspiracy, in violation of 18 U.S.C. § 1962(d); Count 3 with drug trafficking conspiracy, in violation of 21 U.S.C. § § 841(a)(1) and 846; and Count 4 with conspiracy to carry or use firearms in relation to drug trafficking or crimes of violence, in violation of 18 U.S.C. § 924(o). On March 5, 2004, the government filed a 21 U.S.C. § 851(a) information for a sentencing enhancement based upon two prior felony drug convictions, pursuant to 21 U.S.C. § 841(b)(1)(A).  (R. 916: Information).

 The jury found Wheeler guilty on Counts 1, 2 and 3 (substantive RICO, RICO conspiracy, and conspiracy to possess with intent to distribute narcotics), with a Special Verdict as to the drug quantities of 5 kilograms or more of cocaine, and 100 kilograms but less than 1000 kilograms of marijuana, and a Special Verdict as to Racketeering Acts committed: 1A, 12, 13, 14, & 15.  He was found not guilty of Count 4, the conspiracy to carry or use firearms during and in relation to drug trafficking or in crimes of violence. (R. 1161: Verdict).

 On January 5, 2005, Wheeler was sentenced to life imprisonment on the substantive

RICO and drug conspiracy counts, to run concurrently, and to 20 years imprisonment on the RICO conspiracy count, to run consecutively.  He appealed.

The Sixth Circuit found that the Ohio prosecution on RICO charges involved an overlap in the time period, participants and charges as in Wheeler's earlier Florida prosecution.  It held that Wheeler's subsequent prosecution in Ohio for substantive RICO and RICO conspiracy offenses violated the Double Jeopardy Clause.  The appellate court reversed Wheeler's convictions and sentences for the substantive RICO and RICO conspiracy offenses, but affirmed Wheeler's conviction and sentence for the drug conspiracy.  United States v. Wheeler, 535 F.3d 446 (6th Cir. 2008).  The U.S. Supreme Court denied Wheeler's petition for a writ of certiorari on April 20, 2009.  Wheeler v. United States, 129 S. Ct. 2030 (2009).  On June 19, 2009, he was resentenced on Count 3 to life imprisonment.  (R. 2070: Amended Jmt., PageID 4333-34).

On April 20, 2010, Wheeler filed an initial motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, raising three claims of ineffective assistance.  (R. 2123: § 2255 Motion, PageID 4143-77).  The District Court denied the motion on July 26, 2010.  (R. 2155: Mem. Op., PageID 4433-39).  First, it held that Wheeler was unable to demonstrate either error or prejudice in his first claim of ineffective assistance of counsel regarding double jeopardy and the separate conspiracies charged in Florida and Ohio.  Second, it found no evidence that Wheeler was prejudiced by a "spillover effect" for being joined with RICO defendants.  Third, the Court held that the life sentence it imposed was not the result of the 21 U.S.C. § 851 information the government filed to enhance his sentence.  It wrote, "Instead of applying a statutory limit to determine Wheeler's sentence, this Court relied upon the U.S. Sentencing Guidelines and 18 U.S.C. § 3553(a) factors."  (R. 2155: Mem. Op., PageID 4438).  The opinion continued:

Finally, this Court determined that Wheeler's guideline range for a criminal

offense level of 41 and criminal history category VI corresponded to a sentencing range of 360 months to life.  This Judge imposed a sentence of life imprisonment which while at the high end of the range, is within Wheeler's range under the Sentencing Guidelines.

(Id., PageID 4439).  Thus, the Court found "no validity to the final claim of ineffective assistance of counsel."  (Id.).  Wheeler appealed the denial of his § 2255 motion, but the Sixth Circuit denied him a certificate of appealability.  Wheeler v. United States, No. 10-3929 (6th Cir. May 27, 2011) (unpublished).

On August 25, 2014, Wheeler filed a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2), citing the Sentencing Guideline amended drug table, but neglecting to specify which amended Guideline applied.  (R. 2223: § 3582 Motion, Page ID 7092-107).  The District Court denied the § 3582(c)(2) motion to reduce sentence on October 16, 2014.  (R. 2227: Mem. Op. and Order, PageID 7132-36).

Wheeler timely appealed the denial of his § 3582(c)(2) motion on October 29, 2014.  On January 11, 2016, the Sixth Circuit affirmed the district court's order denying Wheeler's motion. It held that he was not eligible for a sentence reduction under § 3582(c)(2) because first, his applicable guideline range was not lowered as a result of Amendment 782; second, that a § 3582(c)(2) motion is limited to correcting only the aspects of a defendant's sentence affected by the guideline amendment and does not authorize a full resentencing; and third, that the District Court did not err in denying Wheeler's motion without considering his untimely reply. United States v. Wheeler, No. 14-4117, Doc. 23: Order (6th Cir. 2016) (unpublished).

On March 19, 2019, Wheeler filed an application for a second or successive 28 U.S.C. § 2255 motion.  He claimed he told counsel to file a motion to dismiss Counts 1 and 2 on double jeopardy grounds before trial commenced.  Instead, counsel filed the motion prior to trial, but asked the court to defer consideration until after the trial concluded.  The Sixth Circuit held that

4

Wheeler did not make a prima facie showing that his application for a successive § 2255 motion relied on either: (1) "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the [prisoner] guilty of the offense"; or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  Therefore, it denied his application for a second or successive § 2255 motion.  In re: James L. Wheeler, No. 19-3217 (6th Cir. Oct. 15, 2019) (unpublished).

Five months later, on March 26, 2020, Wheeler filed a motion for compassionate release based on extraordinary and compelling grounds under the First Step Act of 2018, and asked for the assignment of counsel.  (R. 2278: Mot., PageID 7301-38).  The government filed a response in opposition, explaining that Wheeler was ineligible for relief because first, Section 401 of the First Step Act did not apply to defendants who committed their offenses and were sentenced prior to its effective date of December 21, 2018.  (R. 2279: Resp., PageID 7340-47).  Second, the District Court held that the life sentence it imposed was not the result of the § 851(a) information notifying the Court of Wheeler's prior felony drug convictions.  (Id., PageID 7346).  Third, Wheeler had made no allegations that he was suffering from serious health conditions.  (Id.).

On May 5, 2020, the Federal Public Defenders Office supplemented Wheeler's *pro se* motion, adding a claim that the COVID-19 virus supported Wheeler's alleged medical claims for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  (R. 2281: Suppl. Mot., PageID 7349-7377). The government responded that Wheeler had not shown that he had exhausted his administrative remedies through the Bureau of Prisons ("BOP"), and because he was procedurally barred from raising the COVID-19 issues, it would not address those issues on the merits. However, it asked the Court to allow it to address the issue of compassionate release based on medical issues if Wheeler did exhaust his remedies.  (R. 2282: Govt's Response of

5/15/2020, PageID 7470-79).   Wheeler filed a reply to the government's response on May 19,

2020, (R. 2283: Reply, PageID 7480-87), to which the government filed a second supplemental

response on June 5, 2020.  (R. 2285: Response, PageID 7494-7510).

On July 28, 2020, this Court issued an order holding that Wheeler is not eligible for relief

based on the First Step Act's amendment to 21 U.S.C. § 841(b)(1) because the Act shall only

apply to offenses committed before its date of enactment if the sentence had not been imposed as

of December 21, 2018.  Moreover, this Court wrote that Wheeler's sentence was not enhanced

pursuant to § 851(a), but upon the Sentencing Guidelines and the 18 U.S.C. § 3553(a) sentencing

factors in imposing a sentence at the high end of the range.  (Id., PageID 7739).  It therefore

denied this claim with prejudice.  Nevertheless, it denied Wheeler's motion for compassionate

release based on COVID-19 without prejudice to reapply once he has exhausted his

administrative remedies.  (Id., PageID 7740).

On August 6, 2020, Wheeler submitted a renewed motion for a sentence reduction (R.

2290 Renewed Mot., 7742-7823), with documentation that he had exhausted his administrative

remedies (Id., Ex. A, PageID 7762-74).  The government renews it opposition, set forth below.

<u>Argument</u>

In his renewed motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) for

compassionate release due to COVID-19 circumstances, Wheeler makes several arguments.

First, he states that he has now exhausted his administrative remedies in that the BOP has denied

his request.  Second, he claims that he is medically vulnerable for complications if he contracts

COVID-19.  Third, he states that he meets the legal standards for compassionate release.  Fourth,

he maintains that he is no longer a danger to society and his health conditions warrant a

reduction due to the COVID-19 pandemic.  Fifth, he asks this Court to revisit its holding that the

First Step Act of 2018 amendments do not apply to his pre-2018 case, and consider applying

6

them anyway under the instant motion for relief.  Finally, he asks the Court to evaluate the attached letters of support and his release plan, claiming they demonstrate he has significant contacts in the community, notwithstanding the statement that he will have no contact with his codefendants or members of the Outlaw Motorcycle Club.  (R. 2290: Renewed Mot., PageID 7746-61).

### I.       <u>Wheeler has fully exhausted his administrative remedies.</u>

The government agrees that Wheeler has submitted verification that he has exhausted his administrative remedies.  He attached a copy of his request to the BOP dated June 8, 2020.  (R. 2290, Ex. A, PageID 7762).  The BOP denied his request on June 16, 2020.  (<u>Id.</u>, PageID 7764-65).

The BOP's review contains several notable entries.  Under the first box asking, "Has no public safety factors?" the BOP circled "No."  It further circled the descriptions, "Greatest Severity" and "Specific Length".  (<u>Id.</u>, Ex. A, Page 5: PageID 7766).  Under the box asking, "Who has not been determined by the Bureau, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence …" is circled "No."  (<u>Id.</u>).  Another box asks, "Who has been determined by the Bureau to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention."  Again, the answer circled is "No." [1] (<u>Id.</u>).

Wheeler highlights a favorable notation, the box stating that his PATTERN score for inmates who have anything above a minimum score not receiving treatment under this

---

[1]  The questions and answers are in the form of a double negative.  In other words, Yes, there is a public safety factor; Yes, the BOP determined that Wheeler has a history of violence; and Yes, there is a substantial risk of engaging in criminal conduct or endangering a person or the public if released.

memorandum, was marked "minimum."  (Id., Ex. A, Page 6, PageID 7767).  Unfavorably,

Wheeler was found *not* to have a demonstrated and verifiable re-entry plan that will prevent

recidivism and maximize public safety, including a verification that the conditions under which

he would be confined under release would present a lower risk of contracting COVID-19 than he

would face in his BOP facility.  (Id.).  Ultimately, the BOP assessed that Wheeler was ineligible

for home detention.  (Id.; see also id., Ex. A, Pages 12-13, PageID 7773-74).

More than 30 days have elapsed since the BOP's June 30, 2020 administrative denial,

giving this Court jurisdiction over Wheeler's renewed motion under the First Step Act.

## II.      Wheeler's Medical Records Do No Indicate Extraordinary and Compelling Reasons Exist to Justify Compassionate Release.

Wheeler states that he suffers from heart issues, a heart murmur and is being treated for

an aortic aneurysm.  He also is being treated for diabetes, high blood pressure and emphysema.

(R. 2290: Renewed Mot., PageID 774950).  Wheeler says that he has developed tremendous

anxiety and depression over the fear of contracting COVID-19.  (Id., PageID 7751).  Wheeler

was 62 years old at his initial sentencing, and 66 years old when the Court amended his sentence

on June 19, 2009.  He is now 77 years old.

U.S. Sentencing Guideline ("U.S.S.G.") § 1B1.13 concerns reductions in a term of

imprisonment under 18 U.S.C. § 3582(c)(1)(a).  It states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> > (B)  the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

  (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

  (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.  Wheeler is more than 70 years old.  However, he has not served at least 30 years in prison for the offense of conviction.  Accordingly, to allow a reduction of sentence for medical condition, he must meet the "extraordinary and compelling reasons" requirement of § 1B1.13(1)(A).

  Application Note 1 to U.S.S.G. § 1B1.13 sets forth the "extraordinary and compelling reasons" that may justify compassionate release for medical conditions.  The note provides:

  1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [i.e., not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

  (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,
    (II) suffering from a serious functional or cognitive impairment, or
    (III) experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, app. n. 1.

  Wheeler attached recent medical records to his Renewed Motion.  (R. 2290: Ex. B, Pages 1-17, PageID 7775-91).  These medical records do not indicate, nor does Wheeler allege, that he

suffers from a terminal illness.  The report of April 7, 2020, shows that his hypertension was in the good range.  He was unaware he had emphysema, and in regard to pulmonary issues, stated he gets around well.  He had some irritation in his ears from hearing aids, but antibiotic ointment healed his right side.  A chest x-ray from June 2017 showed a calcified nodule in his left lung, but Wheeler denied any chest pain or shortness of breath on exertion.  (Id., Ex. B, Pages 15-17, PageID 7789-91).  The assessment of April 26, 2020, shows that Wheeler's diabetes and his A1C had risen, but he was not currently on medication.  Regarding the abdominal aortic aneurysm, on May 19, 2020, a repeat ultrasound was performed and the finding was that the aneurysm was grossly unchanged.  (Id., PageID 7789).  Wheeler regularly takes folic acid and calcium with Vitamin D for bone density.  (Id., Page 7790).  He had a colonoscopy last summer and had about 15 polyps, and the gastrointestinal doctor recommended a follow-up in less than three years. (Id., PageID 7791).

As the Court can see, none of these medical conditions support an extraordinary and compelling reason why Wheeler should be granted compassionate release.  He does not allege that he is non-ambulatory, nor that he cannot self-perform the activities of daily living.  His various ailments are, as Wheeler himself conceded in his earlier BOP proposed release plan, physical deteriorations "primarily owing to age related matters, for which there is no treatment." (R. 2278-7: Mot. for Compassionate Release, PageID 7334).

Turning to the COVID-19 pandemic issue, Wheeler states that the BOP facility where he is incarcerated, FCI Terre Haute, is on total lockdown due to the pandemic and quarantine procedures.  (R. 2290: Renewed Mot., PageID 7748).  It is true that all BOP facilities are on lockdown, not just Terre Haute. The BOP has recognized that the COVID-19 pandemic is dangerous.  It has taken significant measures, including lockdown, in an effort to protect the health of the inmates in its charge.  In BOP's words, "maintaining safety and security of [BOP]

10

institutions is [BOP's] highest priority."  See Updates to BOP COVID-19 Action Plan: Inmate

Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_

covid19_update.jsp.  As of August 26, 2020, there were 352 FCI Terre Haute inmates had

completed COVID-19 tests, and only 14  tested positive.

      This Court has the discretion whether or not to grant Wheeler compassionate release on

the basis of medical issues. For all of these foregoing reasons, Wheeler has failed to demonstrate

that his medical condition is so grave that, even considering the COVID-19 pandemic, he

qualifies for early release.

### III.    Wheeler is a danger to society and his health condition does not warrant a reduction in sentence based on COVID-19 and BOP conditions.

      Wheeler concedes that he was a danger to society when he stood trial, for which he was

sentenced to life in prison.  (R. 2290: Renewed Mot., PageID 7753).  But he complains that the

government relies on old offenses and does not present any new evidence that he is a danger to

society today.  (Id.).  Quite simply, having been imprisoned in BOP custody for the past 15

years, there *should* be no new evidence of Wheeler's danger to society.  To be certain, that is one

of the purposes of and the result of incarceration.  Nevertheless, the Court must consider

Wheeler's history and characteristics before granting a reduction in sentence.

      Wheeler boldly asserts that the instant offense of conviction "does not involve any acts of

violence."  (Id., PageID 7754).  This is an unfathomable claim.  The trials for Wheeler and his

cohorts were replete with evidence of violence and intimidation.  The Outlaw Motorcycle Club,

also known as the Outlaws, or American Outlaw Association, is one of the "Big Four" biker

clubs in the United States (the others are Hells Angels, the Pagans and the Bandidos).  They are

classified as a violent gang by the U.S. Department of Justice.  According to the DOJ website,

the Outlaws are the dominant Outlaw Motorcycle Gang in the Great Lakes region. The Outlaws

are involved in the production, transportation and distribution of methamphetamine, the transportation and distribution of cocaine, marijuana and, to a lesser extent, ecstasy. The Outlaws engage in various criminal activities including arson, assault, explosives, extortion, fraud, homicide, intimidation, kidnapping, money laundering, prostitution, robbery, theft and weapons violations.[2]

Wheeler rose through the ranks of the OMC to become the head of the Indianapolis chapter and Green region of the OMC.  He then succeeded Harry "Taco" Bowman as OMC's international president.  As leader, Wheeler set the tone for the club, ruling with an iron fist. Wheeler and his Green region members engaged in a variety of RICO predicate acts including the sale of controlled substances, the unlawful use of communications facilities to further controlled substances violations, interstate travel in aid of racketeering, the interstate transportation and sale of stolen motor vehicles and stolen property, conspiring to collect debts by extortionate means, murder, attempted murder, robbery and arson.  (PSR ¶ 47).[3]

OMC leaders, including Wheeler, were particularly concerned with deterring club members and associates, to include wives and girlfriends, from cooperation with law enforcement.  In fact, the OMC manufactured and distributed t-shirts, bearing the logo "Snitches are a Dying Breed."  Wheeler's threats and intimidation also extended to his own club members. The OMC regularly informed its members that persons cooperating with law enforcement would be hurt or killed.  To further insulate and protect the OMC from penetration by government

---

[2]  See DOJ website for Outlaw Motorcycle Gangs, https://www.justice.gov/criminal-ocgs/gallery/outlaw-motorcycle-gangs-omgs?page=1

[3]  Wheeler's Presentence Report is not available electronically, and will be filed seperately under seal.

informants, Wheeler obtained the services of a longtime friend, Jack Lee.  (At trial, Lee was acquitted of all charges).  For many years, at Wheeler and other OMC leader's direction, Lee administered voice stress analyzer tests to OMC members and associates.  These tests were designed to determine whether the members and associates were cooperating with law enforcement.  Lee specifically asked test recipients whether they were cooperating with law enforcement, and whether they had ever provided information to law enforcement.  Members and associates who failed the test were either suspended or removed from the OMC.  Lee was paid for his services, and traveled throughout the country administering the tests for Wheeler and other bosses.  The witnesses testified that the purpose of the tests, along with to determine who was cooperating, was to intimidate members and associates from approaching or cooperating with law enforcement.  (PSR ¶ 64).

Wheeler was clearly the leader of this enterprise which included "enforcers" who intimidated and physically enforced the club's rules. At Wheeler's sentencing, the Honorable David A.  Katz described Wheeler's leadership role:

> [I]it would be an absolutely impossible conclusion for me and an offense to my common sense, after sitting through 11 weeks of trial, to conclude that Mr. Wheeler was anything but a leader, and at that, an ironfisted leader. . . .

> [L]istening to these members of the OMC in these chapters, it reminds me of my childhood, and the old cowboy movies. These folks remind me of people like the Hole in the Wall Gang or other gangs of outlaws in the west as depicted in those class B movies.  But they took it too far; they took this seriously and imposed it on our society.  I cannot for the life of me find how anyone, having sat through the trial, could conclude Mr. Wheeler was other than a leader.

(R. 2281-1: Ex. A: Sent. Trans. of 12/20/2004 at TR 11-12 PageID 7388.  Reiterating that Wheeler led not just the Green region, Judge Katz said, "It is clear to me that Mr. Wheeler was established and held himself out as the leader of at least the Green Region, but surely from everything that was brought forth at trial, of the international organization known as the Outlaw

13

Motorcycle Club." (Id. at TR 19, PageID 7396).  Judge Katz continued, "While you, Mr. Wheeler, alone did not create an atmosphere of disrespect for the law, you perpetuated and enlarged upon a culture within the Outlaw Motorcycle Clubs which venerated disdain for the rule of law, and replaced it with its antithesis, a rule of crime, fear, and violence." (Id. at TR 28, PageID 7406).  Reviewing Wheeler's Guideline range, Judge Katz said, "[T]the sentence is going to be tantamount to life.  I want to make that very clear." (Id. at TR 12, PageID 7389).

The investigation into OMC revealed multiple violent acts, including murder, committed by OMC members to further the affairs of the enterprise.  (R: N/A: PSR ¶ 46).  In his capacity as a national vice president of the Outlaws, Wheeler sanctioned the bombing of a rival gang's Chicago clubhouse.  (PSR ¶ 108).  Member Jason Fowler murdered Charles Hurst to collect a drug debt.  United States v. Fowler, 535 F.3d 408, 418 (2008).  Enforcer David Mays was named in Racketeering Act 24 with intentionally killing his girlfriend, Shannon Turner, in 1997, in furtherance of the conspiracy.  (R. 1: Indictment, PageID 20).  Her body has never been found, and Mays was found not to have committed the predicate act.  The case remains open in the State of Indiana.  Mays attempted to kill David Farley at the rival Iron Horseman clubhouse in Anderson, Indiana.  (Id., PageID 20).  Mays and other OMC members bombed the rival Sons of Silence clubhouse in Indianapolis, Indiana.  (Id., PageID 80).  Codefendant Rex Deitz and another OMC member used shotguns to fire into the Iron Horseman's clubhouse, seriously wounding someone inside. (Id., PageID 79-80).  Codefendants Al Lawson and Glen Carlisle committed acts of violence to perpetuate the club's image, which included the 2001 shooting death of a young black man who disrespected the OMC at Spanky's Dollhouse in Dayton, Ohio. (Id., PageID 20).   Other members assaulted an individual with a firearm in Indianapolis.  (Id., PageID 81).  Codefendant Dominic Mangine, Sr., kidnapped a person believing that person had stolen motorcycle parts, and another person advised the victim that the only reason he had not

14

been killed was because his young daughter had answered the door with the victim.  (Id., PageID 82).  OMC member Darrell Horton threatened to kill a witness to an altercation between Horton's wife and a female employee at the Las Vegas lounge in Indianapolis if the witness tried to intervene, and threatened to kill the employee if she called the police.  (Id., PageID 83-84).  OMC member Thomas Cain (who was acquitted at trial) and other member pulled guns and pointed them at a probate (probationary member) and threatened to kill him and his family if the probate was a "snitch."  (Id., PageID 84).  Also, relevant to this Court's full understanding of the scope of intimidation, some government trial witnesses were placed in the WITSEC program for their protection due to the fear of retaliation.

Although some of these acts fell under the RICO convictions which were ultimately reversed (only respect to Wheeler) on double jeopardy grounds, and others fell under the drug trafficking conspiracy which was upheld, this Court may still consider all the evidence attributed to the RICO violations.  Wheeler may posit that drug trafficking is not a violent crime by definition, but that is not the way he and the OMC practiced it, and not according to Judge Katz's findings.  Regardless, evidence was presented and the jury found Wheeler guilty beyond a reasonable doubt of the RICO and the drug trafficking conspiracies.  Even though the RICO convictions were reversed because the Ohio RICO conspiracy overlapped the Florida RICO conspiracy, the violent criminal conduct did, in fact, occur.

The Sixth Circuit described the double jeopardy issue as "both indictments involve schemes to further the OMC enterprise *through violence*, narcotics trafficking, extortion, obstruction of justice, and dealing in stolen vehicles."  United States v. Wheeler, 535 F.3d 466, 454 (6th Cir. 2008) (emphasis added).   At Wheeler's initial sentencing, Judge Katz said, "While you, Mr. Wheeler, alone did not create an atmosphere of disrespect for the law, you perpetuated and enlarged upon a culture within the Outlaw Motorcycle Clubs which venerated disdain for the

15

rule of law, and replaced it with its antithesis, a rule of crime, fear, and violence." (R. 2281-1: Ex. A:  Sent. Trans. at TR 28, PageID 7405).  These acts of violence and intimidation remained as relevant conduct when Judge Katz re-imposed Wheeler's life sentence on Count 3, following remand.  (No resentencing hearing was held following the remand because the Court simply amended the Judgment and Commitment Order.)

As described in the government's Second Supplemental Response (R. 2285: PageID 7507), Judge Katz said, "This case had given it significant opportunity to reflect on the law, vis-à-vis the influence for evil one person can have on so many others." (R. 2281-1: Ex. A: Sent. Trans. at TR 27-28, PageID 7404-05).  Judge Katz added that he seriously considered the nature and circumstances of the offenses, and "looked at what is just punishment for that – I can't think of another word – evil which was created by the atmosphere permeating the Outlaw Motorcycle Clubs under his control.  And that is the appropriate word, 'control.'" (Id. at TR 29, PageID 7406).  The Court determined that a life sentence "reflects the seriousness of the crime; it affords protection to the public and prohibits this defendant from any further criminal activity." (Id. at TR 30, PageID 7407).

This Court should not disregard Wheeler's history of violence and sanctioning violence. In United States v. Penaloza, 648 F. App'x 508 (6th Cir. 2016), the defendants were convicted of various racketeering and drug-distribution conspiracies relating to their membership in a gang. Codefendant Frank Cisneros was a longstanding member of the Holland Latin Kings with a record of leadership positions and significant involvement in drug trafficking and violence.  Id. at 527.  After serving prison time, he voluntarily rejoined his brothers, getting himself involved in the business of the gang both in drugs and in the violence that was attendant thereto.  Id. Cisneros eventually withdrew from the gang two years before the indictment.  Id.  The sentencing court discussed the competing factors.  It said that Cisneros's subsequent change was

16

"impressive, " but 'this Court can't say, Oh, we'll just forget about this history.'" Id. (Sixth Circuit quoting the district court).  Cisneros's sentence was affirmed.  Id. at 530.

Similarly, this Court should not "just forget" about Wheeler's history of violence and intimidation, and sanctioning violence and intimidation from OMC members, simply due to the passage of his time in prison.  This Court must consider Wheeler's history and characteristics, among other 18 U.S.C. § 3553(a) sentencing factors when determining if Wheeler remains a threat to society if released now.  Based upon his history of violence and intimidation, this Court should not grant Wheeler a compassionate release because he was and remains a threat to society.

## IV.    This Court should not apply the First Step Act's subsequent changes to Wheeler's statutory and guideline range.

Wheeler next suggests that this Court consider the changes to the law that have occurred since he was originally sentenced in 2005 and resentenced in 2009.  (R. 2290: Renewed Mot., PageID 7756-60).  He points out that under the current guidelines, his range would be lower, and his § 851(a) information of a prior felony drug conviction would no longer meet the new definition under the First Step Act.  He argues, "The fact that he would likely not receive the same sentence today is a valid consideration."  (Id., PageID 7760).  This is a wholly inappropriate consideration.  In United States v. Saldana, 807 F. App'x 816, 2020 WL 1486892 (10th Cir. Mar. 26, 2020) (not precedential), the panel held that compassionate release is not available based on a change in sentencing law that would produce a lower sentence today.  The panel stated: "neither the § 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling reason' warranting a sentence reduction."

Congress specifically passed Section 401 of the First Step Act of 2018 stating that its

17

amendments were *not* retroactive to sentences imposed before December 21, 2018.  It was within Congress's power to grant retroactivity to sentences imposed earlier if it so wanted, but chose not to.  Indeed, this Court specifically held that Wheeler is not eligible for First Step Act relief based on the amendment to 21 U.S.C. § 841(b), because he was sentenced on June 19, 2009.  (R. 2288: Order, PageID 7739-40).  Wheeler is, in effect, trying to use a back door method to achieve what Congress did not authorize and what this Court has already denied with prejudice.  For these reasons, this claim should be rejected.

**V.**     **Wheeler's letters in support of compassionate release.**

Finally, Wheeler has submitted letters in support of granting him compassionate release. (R. 2290:  Renewed Mot., Ex. C, PageID 7792-7823).  He states that all 36 of his codefendants have been released from prison.  (R. 2290: Renewed Mot., PageID 7760).  Jason Fowler remains incarcerated.  The others have been released because they have served their prison terms. Wheeler, in contrast, has not served his prison term.

A life sentence is not imposed without careful consideration.  Five years after Wheeler's original sentence, the Sixth Circuit remanded the case for resentencing, after reversing the RICO convictions on Counts 1 and 2.  Judge Katz did not reduce the original life sentence on Count 3. He had a clear memory of the defendant, the trial and the evidence, and did not find that Wheeler deserved a lesser sentence by the mere passage of time.  Judge Katz re-imposed a life sentence for Count 3, the drug trafficking conspiracy.  (R. 2070: Amended Jmt. of 6/19/2009, PageID 4333-34).  Moreover, Wheeler was not a youngster when he was sentenced to a life term of imprisonment—he was already 62 years old.  It could not have escaped Judge Katz's notice that a "life" sentence would necessarily mean that the defendant would eventually die in prison.

The letters in support Wheeler offers read like a form sent out to friends and colleagues with talking points, *Defendant is 77 years old, he has spent 17 years in prison, he is not a danger*

18

*to society*.  (R. 2290:  Renewed Mot., Ex. C, PageID 7792-7823).  Some writers contend that Wheeler does not deserve to die in prison, he is older and does not deserve to die in a cage, it is cruel to let him die in prison, with the worldwide pandemic his sentence could turn into a death sentence, let him spend his final years with his loving sister.  (Id.).  The regional spokesman for the Outlaw Motorcycle Club, Matt Frank, writes that the club wants to see Wheeler at home with his sister and safe from the COVID-19 virus.  (Id., Ex. C, Page 1, PageID 7792).  Stating that Wheeler will not associate with any OMC members nor with any of his former codefendants, he closes his letter by assuring the Court "we will make certain Wheeler has a safe and healthy home with his sister and abides by the restrictions of the court."  (Id.).  A noble sentiment, but difficult to imagine how the OMC would make certain Wheeler abides by the Court's restrictions while simultaneously pledging that Wheeler will not associate with the OMC.

Regardless of the supporting letters, Wheeler's home confinement plan to live with his sister has been found lacking.  The BOP denied Wheeler's administrative request for release to home confinement to his sister because the inmate does not have "a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his BOP facility."  (Id., Ex. A, Page 6, PageID 7767).  Compassionate release is neither indicated nor appropriate in this case.

<u>Conclusion</u>

In summary, Wheeler's medical condition is not extraordinary and compelling enough to warrant compassionate release, even considering the COVID-19 pandemic.  Wheeler is a 77 year man who has several comorbidities often associated with the elderly population and which conditions are well controlled.  All in all, Wheeler's health is stable and he is easily able to care for himself within the confines of a BOP facility that has relatively few positive COVID-19

cases.  Next, the Court should reject suggestions that it consider First Step Act amendments to reduce his sentence because Congress specifically provided that the Act was not retroactive to sentences imposed before December 21, 2018.  Finally, Wheeler remains a danger to society based on his history of violence and intimidation, even though his forced removal from society through incarceration means there is no updated evidence of current criminal conduct.  In the words of the late Hon. David Katz, Wheeler was an "iron fisted" leader who created an atmosphere of "evil."  Ultimately, the Hon. Katz pronounced a just punishment, life imprisonment, for Wheeler who perpetuated a culture of crime, fear, and violence within the OMC.  And that sentence should remain intact.

For all of the above reasons, this Court should deny Wheeler's renewed motion for a reduction in sentence/compassionate release under 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/  Ava R. Dustin
        Ava R. Dustin (OH: 0059765)
        Assistant United States Attorney
        Four Seagate, Suite 308
        Toledo, OH 43604
        (419) 259-6376
        (419) 259-6360 (facsimile)
        Ava.Rotell.Dustin@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>28th</u> day of August, 2020, a copy of the foregoing document

was filed electronically.  Notice of this filing will be sent to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.


Jeffrey B. Lazarus
Assistant Federal Public Defender
1660 West Second Street, Suite 750
Cleveland, OH 44113
    Attorney for Defendant James Lee "Frank" Wheeler


/s/  Ava R. Dustin        
Ava R. Dustin
Assistant U.S. Attorney
