Andrew Geltzer



August 31, 2020

To the Honorable Judge Carr,

I hope you're well and staying healthy.  My name is Andrew Geltzer and I'm a member of the Outlaws Motorcycle Club and a legal investigator.  I work exclusively on cases involving the club and I've reviewed both of Mr. Wheeler's cases (Florida and Ohio) repeatedly and in great detail.  I've read the most recent response from the government in regards to Mr. Wheeler's request for compassionate release and I'd like to offer some clarification for the court.

Once again, the government has shown that it will stop at nothing to keep members of the Outlaws Motorcycle Club in prison for life.  Yes, there were violent acts committed, but those acts were often against willing participants of the conspiracy or rival motorcycle clubs.  Most of those acts were typical bar brawls, and often those acts were *initiated* by the alleged victim-turn-government witness or rival club member.  All of those acts occurred more than twenty years ago and none of them involved Mr. Wheeler personally nor did he sanction or even encourage their actualization.  Some of

Exhibit A, p. 1

those crimes were exclusively attributable to a single individual[1] acting far outside the club (or the enterprise).

For example, the government references a murder committed by Glen Carlisle and Al Lawson.  This was a bar fight and there was evidence presented to the jury that the victim was in fact the aggressor.  Mr. Carlisle shot the victim in the buttocks while a member of *another* club shot the victim in the chest.  But when the government was done with their characterization, the bar fight between mutual combatants became an example of the Outlaws Motorcycle Club furthering the goals of the enterprise (to be feared and intimidated) by wreaking havoc on innocent citizens.  Now, nearly twenty years later, the government is still holding Mr. Wheeler responsible for that shooting despite that he wasn't present, wasn't even aware the guys were going to a bar that night, didn't know anything about what happened until well after the fact, and was not charged in relation to this crime.   This was a bar fight unrelated to the Outlaws Motorcycle Club but for two of the participants being members of the club.

Also, during that period of time, drug *use* was as much a factor as drug sales.  To be frank, these guys were using drugs and running wild, but their crimes never extended outside their own circle.  There were no innocent victims, only willing participants, whether it be fellow drug users who were caught stealing or rival motorcycle clubs who often (as the government fails to mention) threw the first salvo

---

[1] We're seeing something similar in today's environment where citizens are blaming all police departments for the actions of a few police officers.

<u>Exhibit A, p. 2</u>

and gave as much as they got.  This doesn't excuse ANY of the behavior, but if the court wants to consider the underlying conduct, it should be provided with an unbiased description, not the heavy-handed exaggeration of the government.

Also, the government claims they can't fathom how the Outlaws Motorcycle Club can say that Mr. Wheeler will have no involvement with the Outlaws Motorcycle Club when clearly, he has *some* involvement, evidenced just by that statement.  What that statement means is simply that Mr. Wheeler has known many members of the Outlaws for over forty years and while the club does not condone the conduct for which Mr. Wheeler was convicted, they have not abandoned their friendship with him and their support of his family.  The Outlaws Motorcycle Club is *itself* a family.  As such, the club intends to ensure that its members do not visit Mr. Wheeler or associate with him in any way.  Mr. Wheeler must still serve his remaining time, but he will be doing so in an environment that's safe for his health.  This is not a get-out-of-jail-free card.

As for the environment in which he'll be living, the government also claimed that the BOP didn't approve his home plan.  Mr. Wheeler will be living with his older sister in an immaculate, two-bedroom ranch home in rural Indiana.  Family members living nearby will be able to assist Mr. Wheeler with his health issues and they will be able to do so in a safe and sanitized environment using the practices they've developed over the last eight months to keep all of their family members safe from Covid-19.  When the time comes for the BOP to properly review his home plan, there is no doubt that they will approve.

<u>Exhibit A, p. 3</u>

The government also criticized the letters that were submitted on Mr. Wheeler's behalf, describing them as form letters. Many people in our country are not especially literate. Writing does not come easy to these folks, so many of them took it upon themselves to simply cut and paste what others have written and then sign their names. This does not in any way diminish the sentiment in those letters or challenge the credibility of the signers, any more than signing a petition would. These people all stand behind what's written in those letters even if they themselves did not craft the language.

The government also mentioned that one of Mr. Wheeler's codefendants is still in jail. But what Mr. Wheeler wrote in his motion was that all of his codefendants who are *associated with the Outlaws* have been released. The sole defendant remaining in prison has nothing to do with Mr. Wheeler or the Outlaws Motorcycle Club. It's worth noting that the government didn't refute Mr. Wheeler's claim that none of his codefendants have re-offended since their release. That's a meaningful statistic, and one that Mr. Wheeler hopes the court will consider.

There are only so many ways to state that we don't want Mr. Wheeler to die a slow and uncomfortable death from Covid-19, and at the risk of repeating what was written in the letters on his behalf, at 78 years of age, Mr. Wheeler is not a danger to society. Seventeen years is a long time to spend in prison when you're a senior citizen, and the conduct for which he was sentenced was indeed nothing more than drug sales. (It's worth noting that he was tried in Florida for the same conduct and was sentenced

Exhibit A, p. 4

to 199 months[2] with an emphasis on his drug addiction playing a large role in the crimes for which he was convicted.  By the time he was tried in Ohio, he had been in custody for quite some time and gotten healthy, clean and clear-headed.  The man seated before Judge Katz was a much-improved version of the sickly defendant seen in Florida and it's understandable if Judge Katz attributed less weight to Mr. Wheeler's drug addiction.)

In closing, I'd reiterate that the strongest reason to grant Mr. Wheeler's request for compassionate release is because of the pandemic ravishing our prisons and the predictions that it will be worse in the fall.  Just a few weeks ago, Mr. Wheeler awoke to find one of his cellmates had died during the night just feet from where Mr. Wheeler slept.  The inmate had been having breathing issues, but Mr. Wheeler has no way of knowing if Covid-19 was in fact the cause of death (and it may not have been Covid-19 that caused his death).  Regardless, prison conditions make social distancing impossible.

I thank you for your consideration.

Andrew Geltzer

*Andrew Geltzer*

▌ The government had requested a sentence of 235 months.  (*See* Florida sentencing transcript, attached, pg.66, line 15.)

<u>Exhibit A, p. 5</u>



Exhibit A, p. 6